## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

TATI ABU KING *and* TONI HEATH JOHNSON,

        *Plaintiffs,*

    *v.*

JOHN O'BANNON, *in his official capacity as Chairman of the State Board of Elections for the Commonwealth of Virginia*; ROSALYN R. DANCE, *in her official capacity as Vice Chair of the State Board of Elections for the Commonwealth of Virginia*; GEORGIA ALVIS-LONG, *in her official capacity as Secretary of the State Board of Elections for the Commonwealth of Virginia*; DONALD W. MERRICKS, *in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia*; MATTHEW WEINSTEIN, *in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia*; SUSAN BEALS, *in her official capacity as Commissioner of the Department of Elections for the Commonwealth of Virginia*; ERIC SPICER, *in his official capacity as the General Registrar of Fairfax County, Virginia*; and SANDY C. ELSWICK, *in her official capacity as the General Registrar of Smyth County, Virginia,*

        *Defendants.*

Case No. 3:23-cv-00408 (JAG)

## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs Tati Abu King and Toni Heath Johnson ("Plaintiffs") submit this statement of undisputed material facts.

---

[1] Exhibits cited herein are attached to the concurrently filed Declaration of Brittany Amadi In Support of Plaintiffs' Motion for Summary Judgment.

**Plaintiffs**

1.      Plaintiff Tati Abu King is a resident of Virginia over the age of 18.  King Decl. ¶ 2.

2.      Plaintiff Tati Abu King is a U.S. citizen.  King Decl. ¶ 2.

3.      Plaintiff Tati Abu King is mentally competent.  King Decl. ¶ 1.

4.      For a period prior to June 13, 2017, Plaintiff Tati Abu King was ineligible to vote on the basis of felony conviction.  Ex.L (Grant Order dated June 13, 2017); *see* King Decl. ¶ 2.

5.      Plaintiff Tati Abu King's voting rights were restored on June 13, 2017.  Ex.L (Grant Order dated June 13, 2017).

6.      In 2018, Plaintiff Tati Abu King was convicted of possession of a controlled substance with intent to distribute, under Va. Code § 18.2-248.  King Decl. ¶ 2.

7.      From 2018 through the present, Plaintiff Tati Abu King has been prohibited from registering to vote and from casting a ballot in the Commonwealth of Virginia under color of Article II § 1 of the Virginia Constitution because of his felony conviction for possession of a controlled substance with intent to distribute.  King Decl. ¶ 2.

8.      Plaintiff Tati Abu King would register to vote in Virginia if eligible to do so.  King Decl. ¶ 4.

9.      Plaintiff Toni Heath Johnson is a resident of Virginia over the age of 18.  Johnson Decl. ¶ 2.

10.     Plaintiff Toni Heath Johnson is a U.S. citizen.  Johnson Decl. ¶ 2.

11.     Plaintiff Toni Heath Johnson is mentally competent.  Johnson Decl. ¶ 3.

12.     Plaintiff Toni Heath Johnson is not registered to vote in another state and does not plan to vote in another state.  Johnson Decl. ¶ 3.

13.     For a period prior to 2021, Plaintiff Toni Heath Johnson was ineligible to vote on the basis of felony convictions.  *See* Johnson Decl. ¶ 2.

14.     Plaintiff Toni Heath Johnson's voting rights were restored before 2021.  Johnson Decl. ¶ 2.

15.     In 2021, Plaintiff Toni Heath Johnson was convicted of possession with intent to distribute a controlled substance, under Va. Code § 18.2-248.  Johnson Decl. ¶ 2.

16.     In 2021, Plaintiff Toni Heath Johnson was convicted of distribution of a controlled substance, under Va. Code § 18.2-248.  Johnson Decl. ¶ 2.

17.     In 2021, Plaintiff Toni Heath Johnson was convicted of neglect of a child in relation to the controlled substance offenses just described, for presence of a teen-aged minor in the vicinity of such substances, under Va. Code § 18.2-371.  Johnson Decl. ¶ 2.

18.     From 2021 through the present, Toni Heath Johnson has been prohibited from registering to vote and from casting a ballot in the Commonwealth of Virginia under color of Article II § 1 of the Virginia Constitution because of her 2021 felony convictions.  Johnson Decl. ¶ 2.

19.     Plaintiff Toni Heath Johnson would register to vote in Virginia if eligible to do so. Johnson Decl. ¶ 4.

20.     None of the felony offenses for which Plaintiffs King and Johnson are currently disenfranchised were recognized as "felonies at common law" in 1870.  Ex. A Defendants' Second Supplemental Response to ROG No. 2 (July 1, 2025); *see* Ex. C (Hessick Report, Exhibit D); *see* Ex. C ¶ 36 (Hessick Report).

21.     Plaintiffs King and Johnson seek to register to vote, but they are barred from doing so under Article II § 1 of the Virginia Constitution, and fear prosecution if they were to attempt to register or to vote.  King Decl. ¶¶ 2, 4; Johnson Decl. ¶¶ 2, 4; Va. Const. art. II, § 1; *see* Va. Code §§ 24.2-653, 24.2-1004.

22.    At least 100 disenfranchised Virginians reside in Virginia.  Ex. G Defendants'
Response to RFA No. 4 (February 26, 2025).

**Historical Background**

23.    The first Military Reconstruction Act was passed on March 2, 1867.  Pub. L. 39-
152.  It is named "An Act to Provide for the More Efficient Government of the Rebel States" and
established procedures for the readmission of congressional representatives to Congress from the
former Confederate states, including Virginia.  *Id.*

24.    Section 5 of the first Military Reconstruction Act specifically mandated that
Virginia enact a constitution that complied with its requirements, including by guaranteeing the
franchise to all qualified voters, with a prohibition against state constitutional provisions
disenfranchising any adult man except "for felony at common law."  It reads as follows:

> *And be it further enacted*, That when the people of any one of said
> rebel States shall have formed a constitution of government in
> conformity with the Constitution of the United States in all respects,
> framed by a convention of delegates elected by the male citizens of
> said State, twenty-one years old and upward, of whatever race,
> color, or previous condition, who have been resident in said State
> for one year previous to the day of such election, except such as may
> be disfranchised for participation in the rebellion or for felony at
> common law, and when such constitution shall provide that the
> elective franchise shall be enjoyed by all such persons as have the
> qualifications herein stated for electors of delegates, and when such
> constitution shall be ratified by a majority of the persons voting on
> the question of ratification who are qualified as electors for
> delegates, and when such constitution shall have been submitted to
> Congress for examination and approval, and Congress shall have
> approved the same, and when said State, by a vote of its legislature
> elected under said constitution, shall have adopted the amendment
> to the Constitution of the United States, proposed by the Thirty-
> ninth Congress, and known as article fourteen and when said article
> shall have become a part of the Constitution of the United States,
> said State shall be declared entitled to representation in Congress,
> and senators and representatives shall be admitted therefrom on their
> taking the oath prescribed by law, and then and thereafter the
> preceding sections of this act shall be inoperative in said State:

4

> *Provided*, That no person excluded from the privilege of holding office by said proposed amendment to the Constitution of the United States, shall be eligible to election as a member of the convention to frame a constitution for any of said rebel States, nor shall any person vote for members of such convention.

Pub. L. 39-152 § 5.

25.     On December 6, 1869, President Ulysses S. Grant informed Congress that Virginia's 1869 Constitution complied with the first Military Reconstruction Act.  *See* Ex. J CONGRESSIONAL GLOBE, 41st Cong., 2nd Sess. 325 (1870) (Stewart).

26.     Virginia's 1869 Constitution was ratified on July 6, 1869 and granted Black men the right to vote.  Ex. B ¶ 41 (Ayers Report).

27.     Article III Section 1 of Virginia's 1869 Constitution disenfranchised, *inter alia*, "[p]ersons convicted of bribery in any election, embezzlement of public funds, treason or felony." It reads, in relevant part:

> Every male citizen of the United States, twenty-one years old, who shall have been a resident of this State twelve months, and of the county, city or town in which he shall offer to vote three months next preceding any election, shall be entitled to vote upon all questions submitted to the people at such election:
>
> Provided, That no officer, soldier, seaman or marine of the United States Army or Navy shall be considered a resident of this State by reason of being stationed therein: And provided also, That the following persons shall be excluded from voting.
>
> 1st. Idiots and lunatics.
>
> 2nd. Persons convicted of bribery in any election, embezzlement of public funds, treason or felony.
>
> 3rd. No person who, while a citizen of this State, has, since the adoption of this Constitution, fought a duel with a deadly weapon, sent or accepted a challenge to fight a duel with a deadly weapon, either within or beyond the boundaries of this State, or knowingly conveyed a challenge, or aided or assisted in any manner in fighting a duel, shall be allowed to vote or hold any office of honor, profit or trust, under this Constitution.

1869 Va. Const. art. 3 § 1.

28.     On January 26, 1870, President Ulysses S. Grant signed "An Act to Admit the State of Virginia to Representation in the Congress of the United States," known as the Virginia Readmission Act.  41 Cong. Ch. 10, 16 Stat. 62.  The Virginia Readmission Act reads as follows:

Whereas the people of Virginia have framed and adopted a constitution of State government which is republican; and whereas the legislature of Virginia elected under said constitution have ratified the fourteenth and fifteenth amendments to the Constitution of the United States; and whereas the performance of these several acts in good faith was a condition precedent to the representation of the State in Congress: Therefore,

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the said State of Virginia is entitled to representation in the Congress of the United States: *Provided*, That before any member of the legislature of said State shall take or resume his seat, or any officer of said State shall enter upon the duties of his office, he shall take, and subscribe, and file in the office of the secretary of state of Virginia, for permanent preservation, an oath in the form following: "I,————, do solemnly swear that I have never taken an oath as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, and afterward engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof, so help me God"; or such person shall in like manner take, subscribe, and file the following oath: "I,————, do solemnly swear that I have, by act of Congress of the United States, been relieved from the disabilities imposed upon me by the fourteenth amendment of the Constitution of the United States, so help me God"; which oaths shall be taken before and certified by any officer lawfully authorized to administer oaths. And any person who shall knowingly swear falsely in taking either of such oaths shall be deemed guilty of perjury, and shall be punished therefor by imprisonment not less than one year, and not more than ten years, and shall be fined not less than one thousand dollars, and not more than ten thousand dollars. And in all trials for any violation of this act the certificate of the taking of either of said oaths, with proof of the signature of the party accused, shall be taken and held

as conclusive evidence that such oath was regularly and lawfully administered by competent authority: *And provided further*, That every such person who shall neglect for the period of thirty days next after the passage of this act to take, subscribe, and file such oath as aforesaid, shall be deemed and taken, to all intents and purposes, to have vacated his office: *And provided further*, That the State of Virginia is admitted to representation in Congress as one of the States of the Union upon the following fundamental conditions: First, That the Constitution of Virginia shall never be so amended or changed as to deprive any citizen or class of citizens of the right to vote by the Constitution herein recognized, except as a punishment for such crimes as are now felonies at common law, whereof they shall have been duly convicted under laws equally applicable to all the inhabitants of said State: *Provided*, That any alteration of said Constitution, prospective in its effects, may be made in regard to the time and place of residence of voters. Second, That it shall never be lawful for the said State to deprive any citizen of the United States, on account of his race, color, or previous condition of servitude, of the right to hold office under the constitution and laws of said State, or upon any such ground to require of him any other qualifications for office than such as are required of all other citizens. Third, That the constitution of Virginia shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the school rights and privileges secured by the constitution of said State.

*Id.*

29.     Between 1866 and 1870, Congress passed a series of six Readmission Acts to readmit the congressional representatives of the former Confederate states to Congress. All except the act readmitting Tennessee (including the Virginia Readmission Act) contain a "fundamental condition" of readmission that prohibits the covered state from amending its constitution to disenfranchise otherwise eligible voters except as punishment for those convicted "for such crimes as are now felonies at common law." 40 Cong. Ch. 69, 15 Stat. 72 (1868) (readmitting Arkansas); 40 Cong. Ch. 70, 51 Stat. 73 (1868) (readmitting North Carolina, South Carolina, Louisiana, Georgia, Alabama, and Florida); 41 Cong. Ch. 10, 16 Stat. 62 (1870) (readmitting Virginia); 41

Cong. Ch. 19, 16 Stat. 67 (1870) (readmitting Mississippi); 41 Cong. Ch. 39, 16 Stat. 80 (1870) (readmitting Texas). *Cf.* 39 Pub. Res. 73, 14 Stat. 364 (1866) (readmitting Tennessee).

30.    The "fundamental condition" of the Virginia Readmission Act was intended to protect Black suffrage by precluding the use of seemingly race-neutral constitutional amendments to suppress the Black vote. Ex. B ¶ 54 (Ayers Report). The "fundamental condition" was intended to prevent former Confederate states from manipulating their state criminal codes to disenfranchise Black people. *Id.* ¶ 16 (Ayers Report). "Black Codes" were a part of this manipulation of criminal law. *Id.* ¶ 26 (Ayers Report).

31.    At the time Congress passed the Readmission Acts, the phrase "felonies at common law" referred to a discrete and narrow set of crimes. Ex. C ¶ 9 (Hessick Report).

32.    In 1870, "felonies at common law" included the following crimes:

> Arson (primarily in reference to homes or barns);
> Burglary;
> Escape and rescue from a prison or jail;
> Homicide, including murder, manslaughter, killing in the act of self-defense, and killing by misadventure;
> Larceny;
> Mayhem (causing a debilitating injury that impairs the victim's ability to fight or defend oneself);
> Rape, including statutory rape of a minor under the age of 12;
> Suicide
> Robbery; and
> Sodomy (a crime that, at the time, was described as including acts of bestiality).

Ex. A Defendants' Second Supplemental Response to ROG No. 2 (July 1, 2025); Ex. C ¶ 31 (Hessick Report).

33.    Leading up to and during 1870, scholars and courts uniformly recognized a distinction between statutory felonies and "felonies at common law." Ex. C ¶ 42 (Hessick Report).

34.    Controlled substances offenses (e.g., possession, distribution) were not felonies at common law or even codified as statutory crimes in Virginia in 1870. Ex. C ¶ 36 (Hessick Report). The offenses for which Plaintiffs have been convicted, therefore, were not felonies at common law in 1870. *See id.* ¶¶ 31, 36.

35.    Of the more than 1,100 offenses currently codified as felonies under Virginia law, only the 96 offenses identified would have been recognized as "felonies at common law" in 1870. Ex. C (Hessick Report, Exhibit D).

36.    At least 858 offenses currently codified as felonies under Virginia law would not have been recognized as "felonies at common law" in 1870. Ex. C ¶¶ 40-41 (Hessick Report). Of those 858 offenses currently codified as felonies under Virginia law that would not have been recognized as "felonies at common law" in 1870, three felonies related to carrying a concealed weapon and approximately 80 narcotics-related felonies are included. Ex. C (Hessick Report, Exhibit D at 1-2, 6, 8-9, 11, 13-14, 16-17, 19, 25, 28-29, 31, 35, 37).

37.    After Congress passed the Virginia Readmission Act, Black Virginians began to vote, helping to elect Black legislators and altering the electoral landscape. Ex. B ¶ 59 (Ayers Report).

38.    On November 7, 1876, the Commonwealth of Virginia amended its constitution. Ex. B ¶ 61 (Ayers Report). The 1876 amendments modified Article III, Section 1, the disenfranchisement provision, by requiring a poll tax and adding petit larceny to the list of crimes giving rise to disenfranchisement. *Id.* (Ayers Report). The addition of petit larceny was influenced by the intent to suppress the Black vote. *Id.* (Ayers Report).

39.     The total number of Virginia voters declined by about 10 percent after ratification of the 1876 amendment.  Ex. B ¶ 64 (Ayers Report).  The 1876 amendment resulted in a corresponding decline in the number of Black men elected to local offices.  *Id* (Ayers Report).

40.     A constitutional convention was held from 1901 to 1902 to amend Virginia's Constitution.  Ex. B ¶ 70 (Ayers Report).  One explicit purpose of the 1901 to 1902 convention was to disenfranchise Black voters.  *Id.* ¶ 68 (Ayers Report).

41.     The 1901-1902 convention resulted in amendments to the Virginia Constitution that eliminated the clauses of Virginia's 1869 Constitution that abolished and prohibited slavery; repudiated secession; declared that acts of Congress and treaties made under the authority of the Constitution of the United States were the supreme law of the land; and specified "[t]hat all citizens of the State are hereby declared to possess equal civil and political rights and public privileges." Ex. B ¶ 70 (Ayers Report); *compare* 1869 Va. Const. art. I, *with* 1902 Va. Const.  These modifications constituted a deliberate repudiation of the Black franchise.  *Id.* ¶¶ 68, 71 (Ayers Report).

42.     The 1901-1902 convention also amended the felony disenfranchisement provision, so that Section 23 of Virginia's 1902 Constitution stated:

> The following persons shall be excluded from registering and voting:  Idiots, insane persons, and paupers; persons who, prior to the adoption of this Constitution, were disqualified from voting, by conviction of crime, either within or without this State, and whose disabilities shall not have been removed; persons convicted after the adoption of this Constitution, either within or without this State, of treason or of any felony, bribery, petit larceny, obtaining money or property under false pretences, embezzlement, forgery, or perjury; persons who, while citizens of this State, after the adoption of this Constitution, have fought a duel with a deadly weapon, or sent or accepted a challenge to fight such duel, either within or without this State, or knowingly conveyed a challenge, or aided or assisted in any way in the fighting of such duel.

1902 Va. Const. art. II, § 23.

43.    As a result of Virginia's 1902 Constitution and the laws adopted to implement it, voter registration and turnout dropped precipitously.  Ex. B ¶ 77 (Ayers Report).  The small number of remaining Black voters declined by about 90 percent, remaining so until the 1960s in all but a few communities.  *Id.* (Ayers Report).

44.    In 1928, voters ratified a new state constitution that retained the 1902 Constitution's felony disenfranchisement provision, except for the elimination of bribery from the list of felonies that qualified for disenfranchisement.  *Compare* 1902 Va. Const. art. II, § 23., *with* 1928 Va. Const. art. II, § 23.

45.    The most recent change to the felony disenfranchisement provision in the Virginia Constitution was made in 1971 and remains in effect today.  Ex. B ¶ 84 (Ayers Report).  Article II Section 1 (the "Felony Disenfranchisement Provision") reads as follows:

> In elections by the people, the qualifications of voters shall be as follows: Each voter shall be a citizen of the United States, shall be eighteen years of age, shall fulfill the residence requirements set forth in this section, and shall be registered to vote pursuant to this article. No person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority. As prescribed by law, no person adjudicated to be mentally incompetent shall be qualified to vote until his competency has been reestablished.

1971 Va. Const. art. II, § 1.

46.    Governor Mills Edwin Godwin Jr. called the constitutional convention for the 1971 Constitution in 1968 to bring the Constitution into conformance with changes in federal law, such as the Nineteenth Amendment.  Ex. B ¶ 79 (Ayers Report).

11

**Defendants' Enforcement of the Felony Disenfranchisement Provision**

47.     Defendants strictly enforce the Constitution's Felony Disenfranchisement Provision to prohibit any person from voting who has been convicted of any felony codified under Virginia law, federal law, or the law of another state, absent restoration of voting rights.  Ex. E Defendants' Responses to Requests For Admission ("RFA") Nos. 38-69 (June 30, 2025).

48.     To enforce the Constitution's Felony Disenfranchisement Provision, the Virginia Department of Elections ("the Department") receives monthly datasets from the Virginia State Police and the U.S. Attorneys' Offices reporting all recent felony convictions.  Ex. F Decl. of Susan Beals ¶ 4 (Aug. 28, 2023).  The general registrars cancel any existing registration determined to be associated with a person who was convicted of any felony, and the Department maintains a "prohibited table" of people who are currently barred from registering because of prior conviction. Ex. H Defendants' Supplemental Response to Interrogatory No. 1 (June 10, 2025).

49.     The Department's "prohibited table" currently has more than 300,000 records.  Ex. G Defendants' Response to RFA No. 2 (February 26, 2025).

50.     Defendants oversee, manage, and administer the voter registration system and elections in Virginia, including the enforcement of the Felony Disenfranchisement Provision, through a tripartite structure.  The State Board of Elections—including Defendants Bannon, Dance, Alvis Long, and Weinstein—works "through the Department of Elections" to "supervise and coordinate the work of the county and city electoral boards and of the registrars" and ensure "legality . . . in all elections."  Va. Code § 24.2-103.  Members of the Board "make rules and regulations and issue instructions and provide information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws."  *Id.*

51.     As Commissioner of Elections, Defendant Beals "serve[s] as the principal administrative officer of the Virginia Department of Elections," which receives a "report of all

felony convictions" from Virginia State Police's Central Criminal Records Exchange every month. Ex. F Decl. of Susan Beals ¶¶ 1-2, 4 (Aug. 28, 2023); Ex. H Defendants' Supplemental Response to Interrogatory No. 1 (June 10, 2025); *see also* Defendants' Motion to Dismiss, Dkt. 54 at 12; Va. Code § 24.2-409.  The report contains felony convictions in Virginia general district and circuit courts.  Ex. H Defendants' Supplemental Response to Interrogatory No. 1 (June 10, 2025).  The Department also receives the Secretary of State Report from the U.S. Attorney's Offices for Felony Sentences, which identifies felony convictions in the federal district courts within Virginia.  *Id.* The Department "uses these reports to identify currently registered voters and to populate the 'felon hopper' for each relevant locality" and add them to the "'prohibited table' within the Virginia voter registration system."  Ex. F Decl. of Susan Beals ¶ 5 (Aug. 28, 2023); Va. Code § 24.2-409.  It then "notif[ies] the appropriate general registrar of the felony conviction of any registered voter."  Va. Code § 24.2-409.

52.    On an independent basis, general registrars—including Defendants Spicer and Elswick—use the Department's "relevant information in their locality's 'felon[] hopper'" to "cancel[] voter registrations of felons who reside within their jurisdiction."  *See* Ex. F Decl. of Susan Beals ¶ 6 (Aug. 28, 2023).  If a general registrar determines that a voter's registration should be canceled due to a felony conviction, the Virginia voter registration system records the cancelled voter registration as a "Prohibited Voter—Felony Conviction" and generates a cancellation notice to the voter.  Ex. H Defendants' Supplemental Response to Interrogatory No. 1 (June 10, 2025). If a person convicted of a felony who was not previously registered to vote attempts to register, the voter registration system alerts the general registrar of the match to the "prohibited table," and the general registrar will deny the registration if the individual's voting rights have not been restored.  *Id.*

53.    Absent restoration of voting rights by the Governor or other appropriate authority, the Felony Disenfranchisement Provision is enforced to cancel the voter registration (1) of any otherwise eligible voter who has been convicted of any criminal offense categorized as a felony that is set forth in the Code of Virginia, including all felony offenses codified in Title 18.2 of the Code of Virginia, Ex. E Defendants' Response to RFA No. 38 (June 30, 2025); (2) of any otherwise eligible voter who has been convicted in the United States district courts seated in Virginia of any criminal offense categorized as a felony in the United States Code, including all felony offenses codified in Title 18 of the United States Code. *Id.* Defendants' Response to RFA No. 40 (June 30, 2025); and (3) of any otherwise eligible voter who has been convicted of any criminal offense categorized as a felony in the United States Code, including all felony offenses codified in Title 18 of the United States Code.  *Id.* Defendants' Response to RFA No. 42 (June 30, 2025).

54.    Absent restoration of voting rights by the Governor or other appropriate authority, Defendants admit that they enforce the Felony Disenfranchisement Provision to deny the application for voter registration of any otherwise eligible voter who has been convicted (1) of any criminal offense categorized as a felony that is set forth in the Code of Virginia, including all felony offenses codified in Title 18.2 of the Code of Virginia, Ex. E Defendants' Response to RFA No. 39 (June 30, 2025); (2) in the United States district courts seated in Virginia of any criminal offense categorized as a felony in the United States Code, including all felony offenses codified in Title 18 of the United States Code, *id.* Defendants' Response to RFA No. 41 (June 30, 2025); and (3) of any criminal offense categorized as a felony in the United States Code, including all felony offenses codified in Title 18 of the United States Code, *id.* Defendants' Response to RFA No. 43 (June 30, 2025).

55.     Defendants admit that they enforce the Felony Disenfranchisement Provision to cancel the voter registration of any otherwise eligible voter who has been convicted of any felony offenses codified in Va. Code §§ 18.2-248, 18.2-250, 18.2-248.01, 18.2-255, 18.2-265.3, 18.2-434, 18.2-308, 18.2-308.2:2, 18.2-266, 18.2-193, 18.2-47, 18.2-144, 18.2-371.1.    Ex. E Defendants' Response to RFA Nos. 44, 46, 48, 50, 52, 54, 56, 58, 60, 62, 64, 66, 68 (June 30, 2025).

56.     Defendants admit that they enforce the Felony Disenfranchisement Provision to deny the application for voter registration of any otherwise eligible voter who has been convicted of any felony offenses codified in Va. Code §§ 18.2-248, 18.2-250, 18.2-248.01, 18.2-255, 18.2-265.3, 18.2-434, 18.2-308, 18.2-308.2:2, 18.2-266, 18.2-193, 18.2-47, 18.2-144, 18.2-371.1.  Ex. E Defendants' Response to RFA Nos. 45, 47, 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69 (June 30, 2025).

57.     In enforcing the Felony Disenfranchisement Provision, Defendants do not make any distinction between "common law" felonies and non-"common law" felonies.    Ex. A Defendants' Second Supplemental Response to Interrogatory No. 2 (July 1, 2025).

### The Impact of Virginia's Unlawful Felony Disenfranchisement Provision

58.     Virginia law criminalizes registering or attempting to register to vote by any person who is disqualified, including people disqualified under the Felony Disenfranchisement Provision. *See* Va. Code §§ 24.2-653, 24.2-1004.

59.     Virginia has a voting-age population of around 6.3 million people.  Ex. I at KING-065.

60.     Voting-age Virginians account for around 2.7% of the voting-age population nationwide.  Ex. I at KING-065.

61.    Voting-age Black Virginians make up approximately one fifth of Virginia's total voting-age population.  *Compare* Ex. I at KING-066, *with id.* at KING-065.

62.    The total disenfranchised population in Virginia in 2024 was approximately 264,292 people.  Ex. I at KING-065.

63.    Virginia disenfranchised approximately 120,606 of its Black citizens in 2024.  Ex. I at KING-066.

64.    In 2024, approximately 46% of Virginia's disenfranchised population was Black. *Compare* Ex. I at KING-066, *with id.* at KING-065.

65.    In 2024, the percentage of Black voters disenfranchised in Virginia was 9.84%.  Ex. I at KING-066.  The percentage of voters disenfranchised out of the total population was 4.18%. *Id.* at KING-065.

66.    Virginia frequently ranks in the top six states when it comes to the disenfranchisement of voting-age Black citizens convicted of felonies.  Ex. I at KING-017; *id.* KING-039; *id.* at KING-066.

67.    In 2020, Virginia disenfranchised approximately 190,605 Black citizens—the second-highest number of Black citizens disenfranchised for felony conviction nationwide.  Ex. I at KING-017.

68.    Most disenfranchised Virginians have completed their prison sentences.  *See* Ex. I at KING-065.

69.    In 2024, Virginia accounted for nearly 16% of all Black citizens disenfranchised post-sentence nationwide.  Ex. I at KING-066.

70.    In 2024, Virginia accounted for over 10% of all individuals disenfranchised post-sentence nationwide.  Ex. I at KING-065.

71.     Among the states covered by Readmission Acts, Virginia has the highest disenfranchisement disparity between Black individuals and the general population.  *See* Ex. I at KING-066.

Dated: July 18, 2025

Respectfully submitted,

_/s/ Brittany Blueitt Amadi_
Brittany Blueitt Amadi (VSB No. 80078)
Medha Gargeya**
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
(202) 663-6000
brittany.amadi@wilmerhale.com

Vishal Agraharkar (VSB No. 93265)
Eden Heilman (VSB No. 93554)
ACLU FOUNDATION OF VIRGINIA
701 E. Franklin Street, Ste. 1412
Richmond, VA 23219
(804) 523-2151
vagraharkar@acluva.org
eheilman@acluva.org

Robert Kingsley Smith*
Jason H. Liss*
Robert Donoghue*
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
robert.smith@wilmerhale.com

Jared Fletcher Davidson*
PROTECT DEMOCRACY PROJECT
3014 Dauphine Street, Suite J
New Orleans, LA 70117
(202) 579-4582
jared.davidson@protectdemocracy.org

Nicholas Werle*
Noelle Higginson*
Brandon Roul*
Dylan S. Reichman**
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
nick.werle@wilmerhale.com

Benjamin L. Berwick*
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Beau C. Tremitiere*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW, Suite 153
Washington, DC 20006
(202) 579-4582
beau.tremitiere@protectdemocracy.org

Nitisha Baronia*
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, St # 3600
San Francisco, CA 94111
(202) 718-6494
nitisha.baronia@wilmerhale.com

**Counsel for Plaintiffs**
*admitted pro hac vice
**pro hac vice application forthcoming

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on July 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically e-mail notification of such filing to all counsel of record.

*/s/ Brittany Blueitt Amadi*
Brittany Blueitt Amadi (VSB No. 80078)
*Counsel for Plaintiff*
