**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| TATI ABU KING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:23-cv-408-JAG |
| | ) | |
| JOHN O'BANNON, in his official capacity | ) | |
| as Chairman of the State Board of Elections | ) | |
| for the Commonwealth of Virginia, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION**
**TO EXCLUDE THE TESTIMONY OF DR. EDWARD AYERS**

Charles J. Cooper *(Pro Hac Vice)*
Haley N. Proctor (VSB #84272)
John D. Ramer *(Pro Hac Vice)*
Bradley L. Larson (*Pro Hac Vice*)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Not a D.C. Bar Member; practice limited to
matters in federal forums.

*Counsel for Defendants John O'Bannon,*
*Rosalyn R. Dance, Georgia Alvis-Long,*
*Christopher P. Stolle, J. Chapman Petersen,*
*Susan Beals, Eric Spicer, and Sandy C.*
*Elswick*

Jason S. Miyares
    *Attorney General*

Kevin M. Gallagher (VSB #87548)
    *Solicitor General*

Thomas J. Sanford (VSB #95965)
    *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
TSanford@oag.state.va.us

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.      Dr. Ayers's report is not relevant ................................................................1

    II.     Dr. Ayers's methodology is not reliable ....................................................3

         A.     Dr. Ayers failed to apply the proper methodology ........................3

         B.     The errors in Dr. Ayers's report demonstrate a disqualifying lack of methodological rigor ................................................................6

CONCLUSION ................................................................................................................... 8

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. South Carolina State Conf. NAACP*,
    602 U.S. 1 (2024)....................................................................................................3

*Boumediene v. Bush*,
    553 U.S. 723 (2008)...............................................................................................2

*Bresler v. Wilmington Tr. Co.*,
    855 F.3d 178 (4th Cir. 2017) .................................................................................3

*Brown v. Burlington N. Santa Fe Ry. Co.*,
    765 F.3d 765 (7th Cir. 2014) .............................................................................1, 6

*Burkhart v. Washington Metro. Area Transit Auth.*,
    112 F.3d 1207 (D.C. Cir. 1997)..........................................................................2, 3

*Dart v. Kitchens Bros. Mfg. Co.*,
    253 Fed. Appx. 395 (5th Cir. 2007).......................................................................6

*Daubert v. Merrell Dow Pharms. Inc.*,
    509 U.S. 579 (1993)............................................................................................1, 3

*EEOC v. Freeman*,
    778 F.3d 463 (4th Cir. 2015) .................................................................................3

*Hunter v. Underwood*,
    471 U.S. 222 (1985).............................................................................................2, 3

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II)*,
    892 F.3d 624 (4th Cir. 2006) .............................................................................3, 5

*Nease v. Ford Motor Co.*,
    848 F.3d 219 (4th Cir. 2017) .................................................................................1

*SunTrust Banks, Inc. v. Robertson*,
    No. 2:09-cv-197, 2010 WL 11566593 (E.D. Va. Aug. 12, 2010) ...........................2

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
    No. 3:21-cv-252, 2022 WL 3005990 (E.D. Va. July 28, 2022)........................1, 2, 3

*Westberry v. Gislaved Gummi AB*,
    178 F.3d 257 (4th Cir. 1999) .................................................................................3

**Other Authorities**

Congressional Globe, 41st Cong., 2nd Sess., Jan. 10, 1870 ....................................................5, 6, 7

Fed. R. Evid. 702...........................................................................................................................1

29 Wright & Miller, *Fed. Prac. & Proc. Evid*. § 6265.2 & nn.2–3 (2d ed. 2023) .........................1

## INTRODUCTION

Plaintiffs' defense of Dr. Edward Ayers's report only demonstrates the report's irrelevance and unreliability. His conclusions are purely legal, as proven by Plaintiffs' choice to liken his report to an amicus brief. Dr. Ayers could have moved to file an amicus brief, but he cannot use an expert-witness report to smuggle in legal conclusions. Moreover, his method purporting to establish those legal conclusions is fatally flawed for two reasons. First, he failed to follow his normal methodology, and Plaintiffs' *post hoc* justifications cannot excuse that fact. Second, his report contains numerous factual errors that undermine his reliability as an expert witness. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014). The Court should exclude Dr. Ayers's opinion in its entirety, or at a minimum exclude his legal opinions. See *Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21-cv-252, 2022 WL 3005990, at *5 & n.12 (E.D. Va. July 28, 2022) (Gibney, J.) (excluding legal opinions expressed in expert-witness reports).

## ARGUMENT

### I.    Dr. Ayers's report is not relevant

For an expert-witness report to be admissible, it must be relevant within the meaning of the Federal Rules of Evidence. See Fed. R. Evid. 702. A "[r]elevant" expert report "helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 591 (1993)); 29 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 6265.2 & nn.2–3 (2d ed. 2023). The report will not be "relevant" if it attempts to establish immaterial facts or asserts legal conclusions. *Synopsys, Inc.*, 2022 WL 3005990, at *5.

Dr. Ayers's report will not help this Court "understand the evidence or . . . determine a fact in issue." Fed. R. Evid. 702(a). At its core, Dr. Ayers's report "resembles a legal brief," *Synopsys, Inc.*, 2022 WL 3005990, at *5, arguing that "felony" means "felony at common law." See Report

1

of Dr. Ayers (Ayers Report) at ¶ 34 (ECF No. 146-1). But legal arguments made by putative expert witnesses are not relevant, because "[e]ach courtroom comes equipped with a 'legal expert,' called a judge." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997); *SunTrust Banks, Inc. v. Robertson*, No. 2:09-cv-197, 2010 WL 11566593, at *5 (E.D. Va. Aug. 12, 2010); *Synopsys, Inc.*, 2022 WL 3005990, at *5 n.12 (excluding parts of a report because the witness purported to "interpret[] the parties' Reseller Agreement").

Plaintiffs' attempt to analogize Dr. Ayers's report to an amicus brief only proves that it is inadmissible. See Pls.' Opp. to Mot. to Exclude Ayers Testimony (Pls.' Ayers Opp.) at 6 (ECF No. 163) ("[T]he Supreme Court has routinely cited amicus briefs from historians, including when interpreting statutes."); *Boumediene v. Bush*, 553 U.S. 723, 746 (2008) (citing amicus brief of "Legal Historians"). Defendants agree that Dr. Ayers's report is much like an amicus brief because it makes legal arguments that support one side's interpretation of a legal text. That fact, however, does not somehow make it any less of an impermissible legal opinion. When historians file amicus briefs, they are not submitting evidence to the court; they are submitting legal arguments about history that informs a legal interpretation.

Plaintiffs cite a lone Supreme Court case where the Court relied on historians to determine a legislature's intent. See Pls.' Ayers Opp. 5–6 (citing *Hunter v. Underwood*, 471 U.S. 222 (1985)). But that case does not help them for two reasons. First, the opinions of the historians in that case "were offered and received without objection" in the lower court, and there was no challenge to them in the Supreme Court. *Hunter*, 471 U.S. at 228–29. The issues the Court confronted in *Hunter* had nothing to do with the permissibility of historians giving their opinion on legal matters. Second, *Hunter* involved the question of whether the Alabama legislature subjectively intended to discriminate against minorities when adopting its Constitution's disenfranchisement clause in

1901. *Id.* at 223–24. The experts in that case were not attempting to interpret the meaning of any legal documents; they were opining on the subjective motivation of the legislature with respect to discriminatory intent. *Id.* at 228-29. For that reason, the district court's determination on intent was subject to clear-error review, *id.* at 225, just like in all cases concerning the discriminatory intent of the legislature. See *Alexander v. South Carolina State Conf. NAACP*, 602 U.S. 1, 18 (2024). No such fact-bound discriminatory-intent claim was brought by Plaintiffs in this case. Instead, the sole dispute is about the meaning of a statute and a state constitution, which is a task fit for the "legal expert called a judge." *Burkhart*, 112 F.3d at 1213 (cleaned up).

## II.    Dr. Ayers's methodology is not reliable

"[U]nder [Rule 702,] the trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The Court must ensure that the expert has applied the same reliable methods in his report as he would outside of the courtroom, even though the Court is not tasked with determining at this stage whether the expert's ultimate conclusions are correct. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II)*, 892 F.3d 624, 631 (4th Cir. 2006). Dr. Ayers's report should be excluded on reliability grounds for two reasons. First, in his report he failed to follow his professed methodology. Second, he made the kind of objective errors that betray a lack of reliability.

### A.    Dr. Ayers failed to apply the proper methodology

A valid methodology is what helps a court separate a disinterested expert witness from a partisan one. See *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017). Thus, an expert's methodology must be "reliable" for his report to be admissible. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999); *Synopsys, Inc.*, 2022 WL 3005990, at *4; *EEOC v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015) (Agee, J., concurring) (collecting cases). Dr. Ayers's methodology to determine "that Congress understood the phrase 'or felony' at the end of Article

III Section 1 of Virginia's 1869 Constitution to comply with the requirements of the Reconstruction Act, including the requirement that disenfranchisement not extend beyond conviction for felonies at common law and participation in the rebellion" was wholly unreliable. Ayers Report ¶ 43.

To draw this conclusion, Dr. Ayers had to define the term "felony" in "Article III Section 1 of Virginia's 1869 Constitution." Ayers Report ¶ 43. His report asserted that "felony" meant "felony at common law." *Ibid.*; Transcript of Deposition of Edward Ayers (Ayers Dep. Tr.) at 141:23–142:2 (ECF No. 146-2) (same). But when drawing this conclusion, he did not follow his usual methods for determining the meaning of a historical term. Usually, Dr. Ayers looks to understand a term by first examining a dictionary and then, if necessary, consulting legal sources. Ayers Dep. Tr. 138:21–139:12. Here, however, Dr. Ayers ignored the sources on which he traditionally relies and instead looked to the legislative history of a statute passed by a different sovereign a year later—the Virginia Readmission Act. The choice to ignore the typical indicia of meaning that Dr. Ayers consults and instead examine congressional debates that did not even involve a congressman using the term "felony" was a sharp departure from his normal practice.

Plaintiffs try to downplay Dr. Ayers's departure from his normal methods by arguing that his report was not even "attempting 'to interpret[] the word "felony."'" Pls.' Ayers Opp. 9. Instead, they claim that he was explaining how—"based on the historical record—'Congress understood the phrase "or felony."'" *Ibid*. But the actual meaning of "felony" is surely the most useful datapoint in determining what Congress would have thought "felony" meant; at a bare minimum, the actual meaning is more useful than congressional debates that do not even utter the word "felony." Plaintiffs' excuse that Dr. Ayers only uses a dictionary when he was "'not sure of the meaning' of a term" does not make the interpretive process in his report any less suspect. *Ibid*. The

implication of their argument is that Dr. Ayers already knew the meaning of "felony" in 1869, so there was no reason for him to go through his usual process. But if that were the case, he would not have needed to examine the congressional debates surrounding the Virginia Readmission Act to define the term.

Dr. Ayers's treatment of the Virginia Readmission Act's legislative history also calls the reliability of his methodology into doubt. In his report, Dr. Ayers only included statements from legislators that supported his conclusion that Virginia was in full compliance with the Military Reconstruction Acts. See Ayers Report ¶ 43 & nn. 46–47 (quoting statements of Senators Stewart and Axtell). Yet in those same pages of the Congressional Globe, multiple Senators expressed doubts about whether Virginia had fully complied with the Military Reconstruction Acts and whether it even needed to fully comply. See Congressional Globe, 41st Cong., 2nd Sess., Jan. 10, 1870, p. 328–30 (Statements of Senators Howard, Pomeroy, and Edmunds) (debating whether Virginia complied with the requirements to properly ratify the Fifteenth Amendment). Dr. Ayers certainly knew that there was a robust debate concerning whether Virginia complied with the Military Reconstruction Acts. He also knew that some Senators, such as Senator Howard, did not believe that full compliance was required and would have been satisfied with "substantial compliance." *Ibid.* Dr. Ayers's omission of relevant portions of these debates, which undermine his conclusion, is a classic reason to reject his report. See *In re Lipitor*, 892 F.3d at 631.

Plaintiffs' attempts to excuse Dr. Ayers's cherry-picking miss the mark. First, they point out that his report quoted senators who "opposed" the Virginia Readmission Act, so he could not have been cherry-picking his sources. Pls.' Ayers Opp. 10. But the problem was not that Dr. Ayers only included statements from Senators who supported passage of the Act; the problem was that Dr. Ayers omitted statements from Senators who voted for the Act yet did not believe that Virginia

was in full compliance with the Military Readmission Acts. Thus, his conclusion "that Congress understood the phrase 'or felony' at the end of Article III Section 1 of Virginia's 1869 Constitution to comply with the requirements of the Reconstruction Act" was derived from only one side of the debate. Ayers Report ¶ 43. The fact that "the deposition transcript makes clear that Professor Ayers is well-informed regarding the entire debate," and more specifically was familiar with "Senator Howard's statement that full compliance was not required for approval of the Virginia Constitution," is simply an admission that Dr. Ayers was cherry-picking sources that support his position and ignoring those that do not. Pls.' Ayers Opp. 10. Conceding that Dr. Ayers was "well-informed" about the "entire debate" means that he chose to include only the parts that allegedly help Plaintiffs. *Ibid.*

### B. The errors in Dr. Ayers's report demonstrate a disqualifying lack of methodological rigor

In addition to applying a methodology that he would never apply in his academic work, Dr. Ayers's report makes a series of objective errors. Some of these errors are plainly material to his conclusions; others simply bespeak a lack of rigor which calls his methods into doubt. See *Brown*, 765 F.3d at 773; *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed. Appx. 395, 399 (5th Cir. 2007).

The most relevant error in the report is Dr. Ayers's assertion that "Virginia has complied in all respects with the reconstruction acts." Ayers Report ¶ 43 (quoting Congressional Globe, 41st Cong., 2nd Sess., Jan. 10, 1870, p. 325 (Stewart)). This statement was a crucial part of his reasoning, as he tied the phrase "felonies at common law" from those statutes to the use of "felony" in the Virginia Constitution. *Ibid*. Yet Dr. Ayers admitted in his deposition that Virginia's 1869 Constitution disenfranchised a "broader" class of persons than the Military Reconstruction Acts purportedly allowed, Ayers Dep. Tr. 98:23–99:10, demonstrating that Congress did not view compliance "in all respects" with the Reconstruction Acts as a necessary condition to readmission,

6

Ayers Report ¶ 43 (quoting Congressional Globe, 41st Cong., 2nd Sess., Jan. 10, 1870, p. 325 (Statement of Senator Stewart)).

Plaintiffs once again deflect in their response brief. They frame Dr. Ayers's concession as merely admitting that the disenfranchisement provision of the 1869 Constitution was "more detailed" than the Military Reconstruction Acts and thus "his report was not erroneous, it simply had a different focus." Pls.' Ayers Opp. 11 (quoting Ayers Dep. Tr. 99:7). But Dr. Ayers did not merely concede in his deposition that the 1869 Constitution's disenfranchisement clause was "more detailed," *ibid.*, than the disenfranchisement provision of the Military Reconstruction Acts. When asked to clarify if the 1869 Constitution's disenfranchisement clause was "broader" than the corresponding clause in the Military Reconstruction Acts, he answered "yes." Ayers Dep. Tr. 99:3–10. This concession means that Dr. Ayers was wrong in his report when he stated that "Article III Section 1 of Virginia's 1869 Constitution . . . compl[ied] with the requirements of the Reconstruction Act[s]." Ayers Report ¶ 43.

Other errors, one of which Dr. Ayers himself called "[i]mportant[]," Ayers Report ¶ 44, also show a lack of reliable methods. In his report, Dr. Ayers asserted that "[i]mportantly, Virginia was the last of the former Confederate states to have their congressional representatives gain readmission to Congress," *ibid.*, but that was not true. As Plaintiffs now admit, Texas and Mississippi were readmitted after Virginia. Pls.' Ayers Opp. 11–12. Likewise, Dr. Ayers wrongly claimed that "Arkansas was the first former Confederate state to have its congressional representatives readmitted," Ayers Report ¶ 45, which Plaintiffs now agree is wrong because Tennessee was readmitted two years prior, Pls.' Ayers Opp 12.

Plaintiffs contend that these errors should not count against Dr. Ayers's reliability because his "report acknowledges elsewhere" that "the Mississippi and Texas Readmission Acts were

7

passed later" than the Virginia Readmission Act. Pls.' Ayers Opp. 11–12 (citing Ayers Report ¶ 44 n.9). But the footnote they cite for that proposition simply contains a string citation including each of the Readmission Acts. It does not purport to state the order in which they were passed or correct the earlier misstatement. That Dr. Ayers called the order of readmission "[i]mportant[]" makes the error that much more glaring. Ayers Report ¶ 44. Nor does the fact that Dr. Ayers put the correct year the Tennessee Readmission Act was passed (1866) in a footnote absolve him of the incorrect statement that Arkansas was the first state to be readmitted in 1868. The ability to piece together that an expert witness was wrong through the examination of his citations does not negate the fact that he was wrong in the first place.

## CONCLUSION

For these reasons, the Court should exclude Dr. Ayers's opinion.

Dated: August 21, 2025

Respectfully submitted,

JOHN O'BANNON
ROSALYN R. DANCE
GEORGIA ALVIS-LONG
CHRISTOPHER P. STOLLE
J. CHAPMAN PETERSEN
SUSAN BEALS
ERIC SPICER
SANDY C. ELSWICK

By: ___/s/ Thomas J. Sanford___
    Thomas J. Sanford (VSB #95965)
    *Deputy Attorney General*

    Jason S. Miyares
      *Attorney General*

Charles J. Cooper *(Pro Hac Vice)*
Haley N. Proctor (VSB #84272)
John D. Ramer *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)**
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

    Kevin M. Gallagher (VSB #87548)
      *Solicitor General*

    Office of the Attorney General
    202 North Ninth Street
    Richmond, Virginia 23219
    (804) 786-2071 – Telephone
    (804) 786-1991 – Facsimile
    TSanford@oag.state.va.us

*Not a D.C. Bar Member; practice limited to matters in federal forums.

*Counsel for Defendants John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, Susan Beals, Eric Spicer, and Sandy C. Elswick*

### CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on August 21, 2025, the foregoing memorandum was electronically transmitted to all counsel of record in this matter.


       /s/ *Thomas J. Sanford*
Thomas J. Sanford (VSB #95965)
*Deputy Attorney General*