IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TATI ABU KING, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 3:23-cv-408-JAG |
| | ) |
| JOHN O'BANNON, in his official capacity | ) |
| as Chairman of the State Board of Elections | ) |
| for the Commonwealth of Virginia, et al., | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO EXCLUDE THE TESTIMONY OF PROFESSOR CARISSA BYRNE HESSICK**

Charles J. Cooper *(Pro Hac Vice)*
Haley N. Proctor (VSB #84272)
John D. Ramer *(Pro Hac Vice)*
Bradley L. Larson (*Pro Hac Vice*)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Not a D.C. Bar Member; practice limited to matters in federal forums.

*Counsel for Defendants John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, Susan Beals, Eric Spicer, and Sandy C. Elswick*

Jason S. Miyares
  *Attorney General*

Kevin M. Gallagher (VSB #87548)
  *Solicitor General*

Thomas J. Sanford (VSB #95965)
  *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
TSanford@oag.state.va.us

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.     Professor Hessick's opinions are inadmissible legal conclusions ............................. 2

    II.    Professor Hessick's haphazard methodology is unreliable in both theory and practice ........................................................................................................................ 6

    III.   Professor Hessick's deliberate omission of material that contradicts her opinion undermines the reliability of her conclusions ................................................ 9

CONCLUSION ...................................................................................................................... 11

CERTIFICATE OF SERVICE .............................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brasko v. First Nat'l Bank of Pa.*,
  700 F. Supp. 3d 354 (D. Md. 2023) .................................................................................6

*Rich ex rel. C.W. v. Dennison Plumbing & Heating*,
  No. 1:23-cv-705-SAG, 2025 WL 43181 (D. Md. Jan. 7, 2025) .........................................6

*King v. Youngkin*,
  122 F.4th 539 (4th Cir. 2024) ............................................................................................3

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  626 F. Supp. 3d 814 (D. Md. 2022) ...............................................................................3, 4

*New Prime Inc. v. Oliveira*,
  586 U.S. 105 (2019) ..........................................................................................................2

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022) ..............................................................................................................3

*SunTrust Banks, Inc. v. Robertson*,
  No. 2:09-cv-197, 2010 WL 11566593 (E.D. Va. Aug. 12, 2010). ............................4, 5, 6

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
  No. 3:21-cv-252, 2022 WL 3005990 (E.D. Va. July 28, 2022) .....................................5, 6

*United States v. Cortez*,
  205 F. Supp. 3d 768 (E.D. Va. 2016) .......................................................................2, 3, 6

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) ..........................................................................................3, 4

*Widespread Electronic Sales, LLC v. Upstate Breaker Wholesale Supply Inc.*,
  2022 WL 18028285 (N.D. Tex. Dec. 29, 2022) ................................................................5

**Other Authorities**

Carissa Byrne Hessick & Joseph E. Kennedy, *Criminal Clear Statement Rules*, 97
  Wash. U. L. Rev. 351 (2019)) ...........................................................................................8

# INTRODUCTION

It is difficult to conceive of opinions that are more clearly legal conclusions than those offered by Professor Hessick. She interprets a federal statute and a State Constitution to develop a legal test; interprets felonies in Virginia's modern-day statutes; and then attempts to classify her interpretation of those felonies under the legal test she has devised. That testimony is as legal as it gets, and it is inadmissible as expert testimony under Rule 702.

Even if Professor Hessick's legal conclusions are not excluded in full, her haphazard classification of felonies in modern-day statutes is so unreliable as to be inadmissible. Professor Hessick has never performed this type of analysis before, and it shows. She was unable to classify *hundreds* of crimes under Virginia law alone and failed to explain how she arrived at the classifications that she did make.

Finally, Professor Hessick's decision to omit discussion of material contrary to her opinion that she admittedly reviewed independently undermines the reliability of her opinion. The meaning of the term "felony" in Virginia's 1869 Constitution is at the center of the legal dispute in this case. Wharton's 1868 Treatise on Criminal Law—on which Professor Hessick thoroughly relied and described as a particularly influential treatise of the time—explained that, in Virginia, "felony" was understood to include not only common-law felonies, but also those crimes made felonies by statute. Despite this evidence, which goes to the heart of this case, Professor Hessick opined that the term "felony" in Virginia's 1869 Constitution would have been understood to mean common-law felonies. She cited no authority to support this proposition and did not even acknowledge the passage from Wharton that says the contrary, despite quoting material from precisely the same page. The Court should exclude Professor Hessick's opinion entirely.

1

# ARGUMENT

### I.  Professor Hessick's opinions are inadmissible legal conclusions

As Defendants have previously explained, Professor Hessick offers three separate legal conclusions. See Defs.' Memo in Supp. of Mot. to Exclude Hessick Testimony (Defs.' Hessick Mem.) at 4 (ECF No. 144). First, she interprets the phrase "felonies at common law" in the Virginia Readmission Act. *Ibid.* Second, she interprets the phrase "felony" in the 1869 Virginia Constitution. *Ibid.* And third, she interprets the modern-day Virginia statutes codifying felonies to determine whether they fall within her interpretation of the Readmission Act's phrase "felonies at common law." *Ibid.* From start to finish, these are legal conclusions, and they are inadmissible under Rule 702. "Simply put, an expert telling a judge how to interpret a rule or statute does nothing more than give an attorney a redundant means of presenting legal argument to the Court." *United States v. Cortez*, 205 F. Supp. 3d 768, 776 (E.D. Va. 2016).

Plaintiffs' arguments to the contrary are meritless. First, with respect to Professor Hessick's legal conclusion concerning the phrase "felonies at common law" in the Virginia Readmission Act, Plaintiffs assert that Professor Hessick is not *interpreting* the Readmission Act but rather merely saying how it "was understood at a particular time (1870)." Pls.' Opp. to Mot. to Exclude Hessick Testimony (Pls.' Hessick Opp.) at 6 (ECF No. 164). As Defendants explained in their opening memorandum, this is a distinction without a difference because interpreting a statute *is* the practice of determining how the statue "was understood at a particular time." See Defs.' Hessick Mem. 9; see also *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) ("It's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute." (cleaned up)).

In a similar vein, Plaintiffs contend that Professor Hessick is not interpreting the Readmission Act or the 1869 Virginia Constitution but merely opining on how "members of

2

Congress would have understood" the terms of those enactments. Pls.' Hessick Opp. 16 (emphasis omitted). But Plaintiffs' summary-judgment briefing gives the game away. In their view, how Congress "would have understood" the relevant terms *is* the interpretation Plaintiffs ask the Court to adopt. See, *e.g.*, Mem. in Supp. of Pls.' Mot. for Summ. J. at 14 (ECF No. 152) (citing Professor Hessick's report to demonstrate the proper interpretation under "[w]ell-worn statutory construction principles"). After all, why else would what "members of Congress" thought even be relevant unless Plaintiffs believed that this supported their *interpretation of* the Readmission Act and 1869 Virginia Constitution? But the "meaning of a statute and regulations is a subject for the court, not for testimonial experts." *Cortez*, 205 F. Supp. 3d at 776 (cleaned up).

Plaintiffs next assert that the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), allows this kind of legal testimony. See Pls.' Hessick Opp. 8. But the Fourth Circuit has implicitly rejected that argument in this very case. In the interlocutory appeal here, the Fourth Circuit determined that "interpreting and applying" the Readmission Act "represents a familiar judicial exercise, one for which there is a superabundance of tools that federal judges employ every day." *King v. Youngkin*, 122 F.4th 539, 547 (4th Cir. 2024) (quotation marks omitted). And in support of its reasoning, the Fourth Circuit cited the Supreme Court's decision in *Bruen*. Thus, contrary to Plaintiffs' argument, *Bruen* did not open the door for the admission of legal conclusions under Rule 702.

Plaintiffs' attempt to cast Professor Hessick's analysis as some sort of expert "model" similarly fails. Pls.' Hessick Opp. 9 (citing *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 626 F. Supp. 3d 814, 830 (D. Md. 2022); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999)). The examples Plaintiffs cite could not be farther afield from the type of pure legal analysis offered by Professor Hessick. In one case, the expert created an "Autoregressive

3

Integrated Moving Average" or "ARIMA model—a technique widely used by economists—based on historical observations of tax revenue and macroeconomic data." *In re Marriott*, 626 F. Supp. 3d at 826, 830. In the other, the expert used the process of "differential diagnosis," which "consists of a testable hypothesis, has been peer reviewed, contains standards for controlling its operation, is generally accepted, and is used outside of the judicial context." *Westberry*, 178 F.3d at 263 (quotation marks omitted). Professor Hessick's "model" is nothing like that: it has not been peer reviewed, it contains no standards for controlling its operation, and it (so far as Defendants are aware) has been used by no one in any other context, let alone outside of the judicial context.

Plaintiffs' last maneuver is to recast Professor Hessick as a historian. Pls.' Hessick Opp. 9–10. This argument fails for several reasons. First, and most obviously, Professor Hessick is not a historian. Defs.' Hessick Mem. 9. Plaintiffs respond that it "defies belief" to suggest that Professor Hessick is not qualified to offer anything but a legal opinion. Pls.' Hessick Opp. 9–10 (emphasis omitted). In support of their argument, Plaintiffs recite a list of "prominent legal historians." *Id.* at 10.[1] But *legal* history is still a *legal* question, which is why the court in *SunTrust Banks, Inc. v. Robertson* excluded "opinions regarding the legal history of Virginia's trust law." No. 2:09-cv-197, 2010 WL 11566593, at *5 (E.D. Va. Aug. 12, 2010). The court specifically rejected the "hollow distinction" between an opinion "on legal history" and an opinion "on the current state of the law," since the purpose of the testimony was "to assist the Court in determining what law to apply," which "duplicates the judge's role in the case." *Id.* at *6. Plaintiffs have no

---

[1] Plaintiffs assert that the professors listed and an unidentified group of "others" frequently "author expert reports and historical amicus briefs." Pls.' Hessick Opp. 10. But in support of this assertion, Plaintiffs only cite an amicus brief and conspicuously fail to offer any example of any testimony by these professors being accepted under Rule 702—let alone being accepted *to interpret a statute*. If anything, Plaintiffs' comparison of Professor Hessick's testimony to an amicus brief confirms that she is making a legal argument.

4

answer to *SunTrust Banks* other than to say that Professor Hessick's opinions are more "robust" than the opinion in that case. See Pls.' Hessick Opp. 7. But legal conclusions—no matter how "robust"—are still legal conclusions.

Plaintiffs' own authority does more to undermine their argument than help it. For example, Plaintiffs cite *Widespread Electronic Sales, LLC v. Upstate Breaker Wholesale Supply Inc.*, 2022 WL 18028285, at *14–16 (N.D. Tex. Dec. 29, 2022), for the proposition that the court admitted the "opinions of [a] law professor on the 'history and development of the group registration copyright.'" Pls.' Hessick Opp. 10. But that decision *excluded* several of the expert's opinions for "invad[ing] the province of the Court" by opining on "a matter of law." *Widespread Electronic Sales, LLC.*, 2022 WL 18028285 at *15; see also *ibid.* (noting that the expert "cites directly to" a Supreme Court decision in support of his opinion, which "is the province of the court"). And the court allowed the expert to opine on "the history and development of the group registration copyright" only because the expert had "*first-hand knowledge* of the concerns of the copyright office during the development of the group registration" since he "was the Register of Copyrights" for the United States when it was developed. *Id.* at *15–16. Needless to say, Professor Hessick does not have "first-hand knowledge," *ibid.*, of what individual Members of Congress subjectively thought 150 years ago.

Finally, Plaintiffs repeatedly try to avoid the application of Rule 702 because this case, if it proceeds past summary judgment, will be a bench trial. See, *e.g.*, Pls.' Hessick Opp. 4. But as Defendants have explained, Defs.' Hessick Mem. 3, although the Rule 702 standard is relaxed for a bench trial, "Rule 702 applies whether the trier of fact is a judge or a jury." *Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21-cv-252, 2022 WL 3005990, at *4 (E.D. Va. July 28, 2022) (Gibney, J.)

5

(quotation marks omitted). *SunTrust*, *Cortez*, and this Court's decision in *Synopsys, Inc.* all excluded legal conclusions under Rule 702 in bench trials. Defs.' Hessick Mem. 6–7.

## II. Professor Hessick's haphazard methodology is unreliable in both theory and practice

As Defendants have previously explained, Professor Hessick's methodology is so unreliable that she could not classify *hundreds* of Virginia crimes under her test. Defs.' Hessick Mem. 12; see also Report of Carissa Hessick (Hessick Report) at ¶ 41 (ECF No. 148-2) ("I was unable to definitively classify 238 current Virginia statutory felonies as either falling within the phrase 'felonies at common law' as the term was used in the Virginia Readmission Act or falling outside of the phrase."). When asked to walk through how she conducted her analysis for one of the statutes that she classified, Professor Hessick could neither explain it during her deposition nor point to any part of her report that did so. Defs.' Hessick Mem. 13–14. For "evidence to be sufficiently reliable" under Rule 702, "it must be derived using scientific or other valid methods and not based on mere belief or speculation." *Rich ex rel. C.W. v. Dennison Plumbing & Heating*, No. 1:23-cv-705-SAG, 2025 WL 43181, at *3 (D. Md. Jan. 7, 2025) (quotation marks omitted). Professor Hessick's analysis—which collapses into *ipse dixit* upon inspection—flunks the test required under Rule 702. See *Brasko v. First Nat'l Bank of Pa.*, 700 F. Supp. 3d 354, 366 (D. Md. 2023) (holding that expert's "'because I say so' approach does not meet the requirements of a reliable methodology").

Plaintiffs dispute that Professor Hessick's haphazard methodology rests on mere *ipse dixit*. Specifically, they defend her opinion by citing a portion of her deposition where she purportedly "explained that her analysis could be replicated by others with expertise in the common law of crimes." Pls.' Hessick Opp. 12. The transcript tells a different story. When first asked, "if someone asked you how they could replicate the analysis you performed here, what would you say," Professor Hessick responded, "I would tell them that they need to find an expert in the common

6

law." Transcript of Deposition of Carissa Hessick (Hessick Dep. Tr.) at 42:3–8 (ECF No. 144-2). Then when asked "if an expert in the common law asked you, 'How can I replicate your analysis?' what would you say," Professor Hessick glibly responded, "I would say, 'If you can't replicate this analysis, you might not be an expert in the – in the common law.'" *Id.* at 42:9–14. This methodology—essentially, "I know it when I see it"—is the antithesis of the type of methodology permissible under Rule 702.

Professor Hessick's inability to explain how someone could replicate her analysis is unsurprising given the subjective standards built into it. For example, she purportedly assessed whether a felony in a modern statute was "substantially similar" to or "substantially exceed[ed]" the bounds of any common-law felony. Hessick Report ¶¶ 39–40. But Professor Hessick offered no adequate explanation of precisely how she determined whether the difference between a modern felony and a common-law felony was "substantial"—because there is no possible explanation other than *ipse dixit*.

Plaintiffs next fault Defendants for "not even attempt[ing] to propose an alternative methodology that an expert conducting this analysis should have employed." Pls.' Hessick Opp. 12. But Defendants do not think there is any "expert" analysis required to resolve this case—hence the reason they did not "engage their own expert" to testify. *Ibid.* Nor do Defendants think some sort of expert "methodology" is needed to read the word "felony" in the 1869 Virginia Constitution and give that word its meaning as originally understood. That Plaintiffs have concocted a legal theory requiring the application of an amorphous legal test and then retained a law professor to apply that legal test under the guise of "expert" testimony does not require Defendants to engage in the same sophistic exercise. Nor does it provide a reason to relax the requirements of Rule 702.

7

Next, Plaintiffs concede that Professor Hessick has never classified a State's crimes as she has attempted to do here. Pls.' Hessick Opp. 12. Plaintiffs attempt to soften this problem by citing the same "blog post," *ibid.*, that Defendants have already explained is vastly different from the analysis she is performing in her report, see Defs.' Hessick Mem. 11.[2] Plaintiffs also suggest that "the historical analysis underlying her classification has appeared in her published work" and cite two pages from one law review article where she merely discusses principles of *mens rea* at common law and the Latin maxim *de minimis non curat lex*. Pls.' Hessick Opp. 13 (citing Carissa Byrne Hessick & Joseph E. Kennedy, *Criminal Clear Statement Rules*, 97 Wash. U. L. Rev. 351, 408, 417 (2019)). These fleeting references are nothing like the wide-ranging analysis and classification that Professor Hessick purports to offer here—which, as Defendants explained, "is something Professor Hessick is attempting for the first time in this case." Defs.' Hessick Mem. 12.

Separately, Plaintiffs try to rehabilitate Professor Hessick's failure to offer even the most basic explanation of the source that underpinned her analysis, the Virginia Crimes Code Index. Pls.' Hessick Opp. 13–14. Plaintiffs say Professor Hessick's failure "reflects an ambiguously worded question." *Id.* at 14. But it is unclear what is ambiguous about identifying a source by pinciting the expert's own report and then asking whether she can "explain what that is."[3] Plaintiffs blame Defendants' counsel for "fail[ing] to ask any follow-up questions." Pls.' Hessick Opp. 13–14. But there was nothing to follow up on—Professor Hessick flatly stated she could not explain

---

[2] Plaintiffs try to double-count this analysis by citing an "article" on the same topic in the Atlantic, Pls.' Hessick Opp. 12, but Professor Hessick testified that the article was merely a truncated version of her blog post, Hessick Dep. Tr. 32:18–33:8.

[3] See Hessick Dep. Tr. 50:13–20 ("Q. Returning to your report, which is Exhibit 1, I'd like to go to—it's page 21 in the report, paragraph 38. And you mentioned the Virginia Criminal Sentencing Commission's 2024 Virginia Crimes Code Index. Do you see that? A. Paragraph 38 on page 21. Yes. I see it. Q. And can you explain what that is? A. No.").

8

what the Virginia Crimes Code Index is. In any event, if Plaintiffs believed a follow up question was necessary, they could have asked one.

Finally, Plaintiffs seek to recast the unreliability of Professor Hessick's methodology as a virtue. Plaintiffs concede, as they must, that there are "limitations" to Professor Hessick's analysis. Pls.' Hessick Opp. 12. They maintain, however, that Professor Hessick's acknowledgment of these "limitations" demonstrates her dispassionate objectivity. *Id.* at 13. But an opinion based on an unreliable methodology is inadmissible even if the expert is candid about how unreliable it is. Similarly, Plaintiffs ask the Court to excuse Professor Hessick's inability to explain precisely how she classified particular crimes. *Id.* at 14–15. As Defendants explained, Professor Hessick was unable to detail how she conducted her analysis and admitted that this information was not contained in her report. Defs.' Hessick Mem. 13–14. Plaintiffs say the statute Professor Hessick was asked about was a "complicated" one. Pls.' Hessick Opp. 14. But a proposed methodology that crumbles when it encounters "complicated" questions that will inevitably arise under Plaintiffs' theory is not reliable. The Court should exclude Professor Hessick's haphazard classification of modern-day felonies.

**III. Professor Hessick's deliberate omission of material that contradicts her opinion undermines the reliability of her conclusions**

This case turns on a straightforward question: the meaning of the term "felony" in Virginia's 1869 Constitution. If "felony" meant all felonies—not just a subset of felonies recognized at common law—then Defendants are entitled to summary judgment. The 1868 Wharton Treatise on Criminal Law, on which Professor Hessick relies extensively and describes as "one of the leading contemporaneous sources on the common law as it was understood in the mid-nineteenth century," Hessick Report ¶ 22, lends direct support to Defendants' argument. Specifically, that treatise states that, "in Virginia," the term "felony" encompassed three separate

9

categories: (1) "all offences, below treason, which occasioned a forfeiture of property at common law," (2) "all [offences] so denominated [as a felony] by statutes," and (3) "all [offences] to which statutes have annexed capital punishment or confinement in the penitentiary," unless the offences punishable by confinement in the penitentiary were "declared misdemeanors by the statutes creating them." See ECF No. 144-3 at § 2.

Professor Hessick read this passage but did not mention it in her report. Instead, she opined (without citation) that Members of Congress "likely would have interpreted the reference to 'felony' to mean a felony at common law, rather than any crime that had been deemed a felony by the Virginia legislature." Hessick Report ¶ 15. Thus, while elsewhere treating Wharton as a leading source that would have informed Congress' understanding of the law, Professor Hessick inexplicably omitted the passage of Wharton that goes directly to the dispositive issue in this case.

Plaintiffs' attempts to explain this away are unconvincing. First, Plaintiffs suggest that Professor Hessick did indeed refer to this passage by including a footnote saying that a "small number of states" were "outliers" in defining "felony." Pls.' Hessick Opp. 16. But this explanation merely underscores the unreliability of Professor Hessick's conclusions. In a case where the meaning of the term "felony" under *Virginia law* is front and center, it is indefensible to resign the discussion *about Virginia* to a footnote's vague reference to other "states" while at the same time opining, without citation, that the term "felony" in *Virginia's* Constitution meant "felonies at common law."

Second, Plaintiffs fall back to the refrain that Professor Hessick is opining on what "members of Congress would have understood" the word "felony" to mean in the 1869 Virginia Constitution. Pls.' Hessick Opp. 16. But that response fails to explain how the 1868 Wharton Treatise could be relevant to understanding what Members of Congress thought regarding all other

10

conclusions in Professor Hessick's report (for which she relies on Wharton extensively) but is somehow irrelevant when it comes to the meaning of the central term in the case. Plaintiffs further contend that this passage of Wharton was discussing the "statutory" definition of the term "felony" in Virginia and not the term "felony" in Virginia's 1869 Constitution. Pls.' Hessick Opp. 16. But when interpreting what a term like "felony" meant in Virginia's 1869 Constitution, a good place to start, and likely end, would be the longstanding statutory definition that was acknowledged in one of the leading legal treatises of the time. At the very least, this definition would be a better source than nothing at all—which is what Professor Hessick offered in support of her own interpretation of the 1869 Constitution. The Court could exclude Professor Hessick's opinion as unreliable on this basis alone.

## CONCLUSION

For these reasons, the Court should exclude Professor Hessick's opinion.

Dated: August 21, 2025

Respectfully submitted,

JOHN O'BANNON
ROSALYN R. DANCE
GEORGIA ALVIS-LONG
CHRISTOPHER P. STOLLE
J. CHAPMAN PETERSEN
SUSAN BEALS
ERIC SPICER
SANDY C. ELSWICK

By: ___/s/ Thomas J. Sanford___
    Thomas J. Sanford (VSB #95965)
    *Deputy Attorney General*

Jason S. Miyares
  *Attorney General*

Kevin M. Gallagher (VSB #87548)
  *Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
TSanford@oag.state.va.us

Charles J. Cooper *(Pro Hac Vice)*
Haley N. Proctor (VSB #84272)
John D. Ramer *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)**
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Not a D.C. Bar Member; practice limited to matters in federal forums.

*Counsel for Defendants John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, Susan Beals, Eric Spicer, and Sandy C. Elswick*

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on August 21, 2025, the foregoing memorandum was electronically transmitted to all counsel of record in this matter.

                                         */s/  Thomas J. Sanford*
                                         Thomas J. Sanford (VSB #95965)
                                         *Deputy Attorney General*