**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| TATI ABU KING *and* TONI HEATH JOHNSON,<br><br>     *Plaintiffs,*<br><br>     *v.*<br><br>JOHN O'BANNON, *in his official capacity as Chairman of the State Board of Elections for the Commonwealth of Virginia*; ROSALYN R. DANCE, *in her official capacity as Vice Chair of the State Board of Elections for the Commonwealth of Virginia*; GEORGIA ALVIS-LONG, *in her official capacity as Secretary of the State Board of Elections for the Commonwealth of Virginia*; DONALD W. MERRICKS, *in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia*; MATTHEW WEINSTEIN, *in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia*; SUSAN BEALS, *in her official capacity as Commissioner of the Department of Elections for the Commonwealth of Virginia*; ERIC SPICER, *in his official capacity as the General Registrar of Fairfax County, Virginia*; and SANDY C. ELSWICK, *in her official capacity as the General Registrar of Smyth County, Virginia*,<br><br>     Defendants. | Case No. 3:23-cv-00408 (JAG) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT AND REGARDING
<u>THE APPROPRIATE EQUITABLE REMEDY</u>**

**REDACTED VERSION
OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...........................................2

    A.    Virginia's Felony Disenfranchisement System ......................................2

        1.    Defendants' Procedures For Blocking And Canceling Voter Registrations For Prior Felony Conviction .......................2

        2.    Virginia Law Provides A Process For Prospective Voters To Appeal Denial Or Cancellation Of Their Registrations ...........7

    B.    Relevant Procedural History .................................................................8

ARGUMENT .......................................................................................................10

I.    THE COURT SHOULD FIND THAT THE FELONIES AT COMMON LAW IN 1870 ARE THE DISCRETE SET OF OFFENSES IDENTIFIED BY PROFESSOR HESSICK....................................10

II.    THE COURT SHOULD ENTER THE PROPOSED ORDER PROHIBITING DEFENDANTS FROM DISENFRANCHISING OTHERWISE ELIGIBLE VOTERS EXCEPT FOR CONVICTION OF AN OFFENSE THAT WOULD HAVE BEEN RECOGNIZED AS A FELONY AT COMMON LAW IN 1870........................................................................................................12

    A.    The Court Should Declare A Violation Of Federal Law And Grant Prospective Injunctive Relief.......................................................12

    B.    Determining Which Present-Day Virginia Offenses May Serve As A Predicate For Disenfranchisement Would Aid Implementation Of The Court's Order ........14

III.    THE RELIEF REQUESTED IS STRAIGHTFORWARD, ADMINISTRABLE, AND ACCOUNTS FOR FUTURE CHANGES IN THE LAW .....................................................17

    A.    The Proposed Remedy Would Require Only Minor Changes To Voter Registration Materials .........................................................18

    B.    Defendants Can Maintain Their Automatic State-Wide Denial And Cancellation Process By Making Minor Changes To Existing Practices ...................20

    C.    The Existing State Law Administrative Appeals Process Could Resolve Disenfranchisement Disputes In The First Instance .............23

CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ..................................................14

*King v. Youngkin*, 122 F.4th 539 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2815
 (2025) ...................................................................................................................12, 13, 14, 15

*Lackey v. Stinnie*, 604 U.S. 192 (2025)......................................................................................10

*Robertshaw v. Commonwealth*, 86 Va. Cir. 426 (Cir. Ct. 2013) ...............................................23

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821 (4th Cir. 2005) ...........................19

*United States v. Bell*, 5 F.3d 64 (4th Cir. 1993).........................................................................15

*United States v. Garcia*, 855 F.3d 615 (4th Cir. 2017)................................................................4

## STATUTES, RULES, AND REGULATIONS

15 Del. C. § 6102 .........................................................................................................................19

Ala. Code §17-3-30.1.............................................................................................................17, 20

Alaska Stat. §15.80.010(10)........................................................................................................17

Del. Const. art. V, §2 ...................................................................................................................18

Md. Code, Elec. Law §3-102(b) ..................................................................................................18

Miss. Code § 23-15-151...............................................................................................................22

Neb. Const. art. VI §2 ..................................................................................................................18

Va. Code §24.2-103 .....................................................................................................................22

Va. Code §24.2-404 ......................................................................................................3, 5, 6, 21

Va. Code §24.2-409 .............................................................................................................3, 21

Va. Code §24.2-411 .......................................................................................................................5

Va. Code §24.2-418 .....................................................................................................................19

Va. Code §24.2-422 ...............................................................................................................7, 23

Va. Code §24.2-427 ..............................................................................................................5, 6, 7

Va. Code §24.2-429 ........................................................................................................20

Va. Code §24.2-430 ..................................................................................................7, 8, 23

Va. Code §24.2-433 .....................................................................................................8, 23

Va. Code §24.2-1016 .....................................................................................................20

Va. Code §46.2-389 ...........................................................................................................23

Wy. Stat. §7-13-105 ...................................................................................................18, 20

## INTRODUCTION

At the October 23, 2025 hearing, the Court indicated its inclination to grant Plaintiffs' motions for class certification and summary judgment and to deny Defendants' *Daubert* and summary judgment motions, and ordered supplemental briefing on the appropriate remedies to order in response to Defendants' ongoing practice of disenfranchising any Virginian convicted of any felony, in violation of the Virginia Readmission Act. *See* Dkt. 182. Plaintiffs respectfully request that the Court enter Plaintiffs' proposed order, Dkt. 151-1, which would provide appropriate declaratory and injunctive relief to protect the voting rights of hundreds of thousands of Virginians who are currently unlawfully disenfranchised.

The Court should declare that the Virginia Readmission Act of 1870, Pub. L. No. 41-10, 16 Stat. 62 (1870), prohibits Defendants' policy and practice of enforcing Article II, Section 1 of the Virginia Constitution (the "Disenfranchisement Provision") to disenfranchise Virginians convicted of any felony, and enjoin Defendants from continuing to indiscriminately strip Virginians of their right to vote. This prospective remedy will provide the Plaintiffs and other members of the class with complete relief, because it would permit any Virginian who was previously disenfranchised in violation of the Virginia Readmission Act to reapply for registration. And while not necessary, the Court's remedial order may also incorporate Professor Carissa B. Hessick's discrete list of offenses that were felonies at common law in 1870, and/or the 96 present-day Virginia offenses that she identified that would have constituted felonies at common law in 1870—indeed, to date, Defendants have not disputed a single entry on either list.

In so ordering, the Court would require no more than for Virginia to join at least eleven other states which similarly limit voter disenfranchisement based on a categorial description of the offense of conviction (*e.g.,* "crime of moral turpitude," "violent crimes"). As in those states, none

of which have specified which federal or out-of-state crimes disqualify a prospective voter, the proposed remedy will be straightforward to implement.  Defendants can readily update their voter registration materials and systems to comply with the Court's remedial order.

The proposed remedy will also require little to no change to county or local procedures. As Defendants' documents confirm, local registrars' role in enforcing the Disenfranchisement Provision is straightforward and would not change: they would continue to compare voter registrants and registered voters to lists of ineligible voters prepared by the Department of Elections.  And in the rare event that a dispute arises, Virginia law already sets out a process to appeal decisions to the Commonwealth's circuit courts, and the Virginia Code authorizes the Department of Elections to promulgate further rules, regulations, and guidance that could be implemented to comply with this Court's remedial order.

<div align="center">

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

</div>

### A.    Virginia's Felony Disenfranchisement System

Article II, Section 1 of Virginia's Constitution disenfranchises any person who has been convicted of any felony, unless the Governor has exercised his discretion to restore the citizen's voting rights.  Va. Const. art. II, § 1.

### 1.    Defendants' Procedures For Blocking And Canceling Voter Registrations For Prior Felony Conviction

The Virginia Department of Elections is charged with administering a statewide computerized voter registration system known as "VERIS."  That system is responsible for maintaining the list of Virginians who are blocked from registering to vote by reason of felony

---

[1] Plaintiffs assume familiarity with, and incorporate by reference, the background laid out in their brief supporting their Motion for Summary Judgment, Dkt. 152.

conviction and providing registrars with the names of registered voters disqualified on that basis. *See* Va. Code. §24.2-404(A)(4) & (6).[2]

The VERIS system contains data regarding convictions in Virginia state courts and federal convictions entered in the Eastern and Western Districts of Virginia. *See* Dkt. 153-8 [Defs. Supp. Resp. to Pltfs. First Interrogatories] ("Supp. Rog 1 Resp.") at 2; *see also* Ex.1 at ELECT_0127. To prepare the list of individuals with felony convictions, each month, the Department receives from the Virginia State Police a data set containing information about new felony convictions in the Commonwealth's courts. *See* Va. Code §24.2-409. The Police and Commissioner of Elections "mutually agree" on the "format" of the list, *id.*, which allows the Department of Elections to exercise substantial discretion in choosing what information to request—such as, for example, requesting that the list only include people convicted of certain felonies. The Department of Elections obtains information on felony convictions entered in the federal courts of the Eastern and Western Districts of Virginia from the relevant U.S. Attorney's Offices. Supp. Rog 1 Resp. at 2; Dkt. 54-2 [Declaration of Susan Beals] ("Beals Decl.") ¶4. Those federal reports include the statute of conviction and a brief description of the offense. *See, e.g.*, Ex.2 at ELECT_0007.[3]

Department of Elections personnel input conviction data received from the Virginia State Police and U.S. Attorney's Offices into VERIS. *See* Ex.1 at ELECT_0131. Records associated with people recently convicted of felonies are then "added to the 'prohibited table,'" a component of VERIS that functions to block new registrations sought by anyone whose information matches a record on the table. Supp. Rog 1 Resp. at 2. The data of recent convictions are also added to a

---

[2] Emphasis added and internal quotation marks, citations, and alterations omitted from all sources cited herein, unless noted.

[3] Citations to Exhibits A through T refer to exhibits to the Declaration of Brittany Blueitt Amadi, filed herewith. Citations to Exhibits 1 through 5 refer to sealed exhibits to the Declaration of Nicholas Werle, filed herewith.

"felon hopper" within VERIS for each locality; this "felon hopper" is then "use[d] … to identify currently registered voters" in a locality so the local registrar can cancel the registrations of people who have new felony convictions and thus appear on the "felon hopper." *Id.* Records remain on the prohibited table until a Virginian is deemed eligible to re-register, either through the discovery of a mistake, the Governor's grant of a discretionary rights restoration order, or if the person's conviction was downgraded. *See* Ex.3 at ELECT_0150. Defendants have not produced an estimate of how many Virginians are listed on the prohibited table because of a federal (as opposed to state) conviction, but U.S. Sentencing Commission data indicates that approximately 95% of all criminal convictions in the Commonwealth in 2024 occurred in Virginia's state courts.[4]

The State Board of Elections is charged with prescribing a standard, state-wide voter registration form, which county registrars use to grant or deny voter applications. Virginia's voter registration forms are either completed electronically or mailed to the Virginia Department of Elections or a local registrar.[5] Item 3 on the Virginia Voter Registration Application asks: "Have you ever been convicted of a felony or judged mentally incapacitated and disqualified to vote?" If the answer is yes, the applicant is asked: "Has your right to vote been restored?" Virginia Voter Registration Application at 1.[6]

---

[4] *Compare* Ex.A [*2024 Annual Report*, Virginia Criminal Sentencing Commission, https://tinyurl.com/muj3r4x9] at 10 (19,798 state criminal sentences), *with* Ex.B [*Statistical Information Packet: Fiscal Year 2024 State of Virginia*, U.S. Sentencing Comm., https://tinyurl.com/yk8purc4] at 3 ("Statistical Info. Packet") (973 federal criminal sentences).

[5] *See* "Register to vote: Virginia," *vote.gov*, https://vote.gov/register/virginia; Ex.C [Virginia Voter Registration Application] at 2 ("How to Mail").

[6] All undated links were last visited on November 6, 2025. The Court may "take judicial notice of" these publicly available documents. *See, e.g.*, *United States v. Garcia*, 855 F.3d 615, 621-622 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

## Virginia Voter Registration Application

Use blue or black ink

*Starred (\*) items are required.  If you do not complete all of the items that are marked with \*, your application may be denied  (See instructions on reverse side).*

**1.** ☐ YES ☐ NO
\* I am a citizen of the United States of America.

\* Full social security number ☐ No SSN was ever issued.

\* Date of birth [M M] / [D D] / [Y Y Y Y]

\* Gender _____

**2.** \* Last name                                                          Jr.  Sr.  II  III  IV  *(Circle if applicable)*

\* First name                        \* Middle name                    ☐ None

\* Residence address *(May not be a P.O. Box)* _____ Apt # _____

\* City/Town                                                              \* ZIP _____

E-mail _____    Phone [N N N]-[N N N]-[N N N N]

**3.** \* Have you ever been convicted of a felony **or** judged mentally incapacitated and disqualified to vote? ........ ☐ YES ☐ NO    If YES, has your right to vote been restored? ........ ☐ YES ☐ NO

Virginia Voter Registration Application at 1.

The Virginia Voter Registration Application does not ask applicants to provide any further information about a prior conviction, including the jurisdiction that entered any conviction. *See id.* The application requires the applicant to "swear/affirm, under felony penalty for making willfully false material statements or entries," that the information they provide is true. *Id.*

Upon receipt, applications are uploaded to VERIS, which registrars across the Commonwealth use to view, correct, approve, or deny applications. *See* Ex.4 at ELECT_0037-51; Va. Code §24.2-404(A). County registrars are also responsible for conducting voter list maintenance, including cancellation of voter registrations following felony convictions. *See, e.g.*, Va. Code §§24.2-411 (office of general registrar), 24.2-427 (requiring each registrar to "promptly cancel the registration of … all persons known by him to be disqualified to vote by reason of a felony conviction").

When registrars process voter registration applications or conduct list maintenance, they rely on VERIS, which generates a notification flagging the identities of Virginians who have a felony conviction and therefore are prohibited from voting under the Virginia Constitution's Disenfranchisement Provision. Specifically, "[i]f a felon who was not previously registered to

5

vote attempts to **register**, [VERIS] alerts the general registrar of the match to the 'prohibited table,' and the general registrar will deny the registration if the individual's voting rights have not been restored." Supp. Rog 1 Resp. at 2; *see also* Beals Decl. ¶¶4-7 (same); Va. Code § 24.2-404(A)(4). If VERIS does not detect a match to a record on the prohibited table and prompt the registrar to deny the application, the registrar is permitted to rely on the prospective voter's response to the criminal history questions to determine whether the applicant is disqualified to vote for felony conviction. *See* Supp. Rog 1 Resp. at 1-3. If the registrar denies the application, VERIS generates a notice of denial to the applicant, which the registrar causes to be sent to the applicant.   Supp. Rog 1 Resp. at 2.

Each registrar also relies on the locality's "felon hopper" in VERIS to perform his statutory duty to "promptly **cancel** the registration of … all persons known by him to be disqualified to vote by reason of a felony conviction."  Va. Code §24.2-427.  Specifically, "registrars access the relevant information" on a dashboard "within [VERIS] and process the cancellation of voter registrations of felons who reside within their jurisdiction.  If the registrar determines that a voter's registration should be canceled due to a felony conviction, the Virginia voter registration system records the cancelled voter registration as a 'Prohibited Voter—Felony Conviction' and generates a cancellation notice to the voter."  Supp. Rog 1 Resp. at 2; *see also* Beals Decl. ¶¶6, 9-10.

Defendants have not identified any steps they take to block or remove the registration of a Virginian who may have been convicted of a felony outside of Virginia.  Specifically, the Department of Elections does not obtain, and VERIS does not store, data on felony convictions entered in any state or federal court outside of Virginia.  *See generally* Supp. Rog 1 Resp. at 2. Moreover, Defendants' explanation of "**all** policies, processes, and procedures for removing any person from any state-wide record of registered voters or prohibiting any person from registering

to vote" reflects that neither registrars nor Department of Elections personnel are instructed to investigate the accuracy of any voter registration applicant's representation on the application form regarding their history of felony conviction and rights restoration. *See id.* at 1-3. In other words, as currently configured, VERIS does not block registration by a voter who may have been convicted in another state or in a federal court seated outside of Virginia. *See* Ex.D [Dep't of Elections Handbook] at 31 ("If the applicant answers 'yes' to a felony conviction … and 'no' to their rights being restored, … [t]he application should be denied based on their submission").

### 2. Virginia Law Provides A Process For Prospective Voters To Appeal Denial Or Cancellation Of Their Registrations

"Within five days after the denial of an application to register, the general registrar shall notify the applicant of the denial … in writing." Va. Code § 24.2-422(A); *see also id.* § 24.2-427(D) (requiring "prompt notice to [a] person of the cancellation of his registration"). As explained above, that notice is generated by VERIS. Rejected applicants and cancelled voters can challenge the decision by lodging a "█████████████████████" with the Virginia State Police. Ex.1 at ELECT_0128. Voters can contest not only whether they have been flagged in error, but also whether their "█████████████████." *Id.* The State Police then reviews the record and, as appropriate, informs the Virginia Department of Elections of any error, and the Department of Elections downgrades or removes the conviction and informs the registrar of the correction. *Id.* at ELECT_0129.

Rejected applicants and cancelled voters also "have the right to appeal" the registrar's denial or cancellation to the relevant local circuit court, which must hear the appeal "as soon as possible." Va. Code §§24.2-422(B), 24.2-430; *see also* Ex.E [Dep't of Elections Handbook, Chapter 8, "List Maintenance"] ("List Maintenance") at ELECT_0022 ("[T]he regular cancellation process under §24.2-427 must be followed. This requires the general registrar to mail notice of

cancellation and the right of appeal to the voter.").  The petitioner may present evidence, and applicants denied by the circuit court may appeal as of right to the Court of Appeals.  Va. Code §§24.2-422(B), 24.2-430; 24.2-433.

**B.    Relevant Procedural History**

Plaintiffs' operative complaint asks the Court to (1) declare that Defendants have violated and threaten continued violation of the Virginia Readmission Act and (2) enjoin Defendants and all those acting in concert from disenfranchising class members under color of state law, except for conviction for an offense that would have been a felony at common law in 1870.  *See* Dkt. 96 ("Compl.") at 43.  Plaintiffs also alleged that the set of common law felonies recognized in 1870 were "murder, manslaughter, arson, burglary, robbery, rape, sodomy, mayhem, and larceny." *Id.* ¶70.[7]  On September 28, 2023, when Defendants moved to dismiss, they did not dispute Plaintiffs' position on the set of offenses that were recognized as felonies at common law in 1870.  *See generally* Dkt. 77 ("Defs. MTD").

After the Court denied that motion in relevant part, Dkt. 89, and the Fourth Circuit affirmed, Dkt. 104, Plaintiffs served an interrogatory seeking Defendants' contention regarding what offenses were recognized as felonies at common law in 1870 and which present-day Virginia statutory offenses they contend would have constituted felonies at common law in 1870.  *See* Ex.F [Defs. Initial Resp. to Pltfs. First Interrogatories] ("First Rog Resp.") at 7.  Defendants refused to disclose their position regarding present-day Virginia offenses but conceded that "common-law felonies included at least murder, manslaughter, arson, burglary, robbery, rape, sodomy, mayhem, and larceny." *Id.* at 7-8.  After the Court granted Plaintiffs' motion to compel a response to

---

[7] Plaintiffs' request for relief and pertinent allegations in the Second Amended Complaint (Dkt. 96) are identical in all relevant respects to the corresponding requests and allegations in their First Amended Complaint (Dkt. 58), which was the subject of Defendants' motion to dismiss.

Plaintiffs' Interrogatory No. 2, Dkt. 138, Defendants served a supplemental response, which asserts that "murder, arson, sodomy, robbery, and larceny were understood as felonies at common law," and further states that "other offenses that emerged in England before the reign of Richard I or were established as part of the common law of Virginia, may also have been understood as felonies at common law." Dkt.153-1 [Defs. Supp. Resp. to Pltfs. First Interrogatories, Dkt. 153-1] ("Supp. Rog 2 Resp.") at 6. Defendants again refused to disclose their position regarding what present-day Virginia offenses would constitute a felony at common law in 1870. *See id.* at 6-7.

During discovery, Plaintiffs disclosed the report of Professor Carissa Hessick, an expert in the history of the common law, that describes the offenses that were recognized as felonies at common law in 1870 and lists 96 present-day Virginia statutory offenses that would have constituted felonies at common law in 1870 ("Hessick List"). Dkt. 153-3 ("Hessick Report") ¶39 & Exhibit D thereto. Defendants did not serve a rebuttal expert report and—as Defendants later conceded—did not retain any historian or other expert to analyze Professor Hessick's methodology or findings. *See* Dkt. 183 ("10/23/25 Tr.") at 8:21-9:22. While Defendants filed a *Daubert* motion to exclude Professor Hessick's opinion, their briefing did not identify any present-day Virginia statutory offense that should be added to or removed from the Hessick List. *See generally* Dkt. 144 [Defs. Mot. To Dismiss Testimony of Prof. Hessick] ("*Daubert* Mot."); Dkt. 169 [Defs. Reply to Mot. To Dismiss Testimony of Prof. Hessick]. Nor did Defendants dispute the Hessick List in their briefing on either of the motions for summary judgment or the motion for class certification, notwithstanding that Plaintiffs' summary judgment motion asked the Court to incorporate the Hessick List into its remedial order, *see* Dkt. 151-1. *See generally* Dkt. 148 ("Defs. MSJ"); Dkt. 161 ("Defs. Opp. to Class Cert."); Dkt. 162 ("Defs. Opp to MSJ"); Dkt. 171 ("Defs. MSJ Reply").

On October 23, 2025, the Court heard argument on the parties' *Daubert*, class certification,

and summary judgment motions.  *See* Dkt. 181.  At the very end of the hearing, defense counsel asserted that "[they] did not concede a list of common law felonies."  10/23/25 Tr. at 58:25-59:1. However, counsel did not identify any offense that Defendants contend was a felony at common law in 1870 nor identify any specific ground for disputing the Hessick List.  *See id.*  The Court then requested supplemental briefing on (A) what crimes are disqualifying felonies at common law and (B) what form an injunction should take in this case.  Dkt. 182.  Following the hearing, Plaintiffs requested that Defendants state their position on "the complete set of offenses [they] contend] were felonies at common law in 1870" and "any present-day Virginia state law felonies [they] contend should be added or removed from [the Hessick List]."  Ex.G.  Defendants refused. *See id.*

## ARGUMENT

I.    **THE COURT SHOULD FIND THAT THE FELONIES AT COMMON LAW IN 1870 ARE THE DISCRETE SET OF OFFENSES IDENTIFIED BY PROFESSOR HESSICK**

The Virginia Readmission Act prohibits Virginia from amending its constitution to disenfranchise any otherwise eligible voter "except as a punishment for such crimes *as are now felonies at common law*," 16 Stat. 62 (1870).  Congress's use of the "legal term of art" "felonies at common law" provides a basis to conclude it "kn[ew] and adopt[ed] the cluster of ideas that were attached," including "the legal tradition and meaning of centuries of practice."  *Lackey v. Stinnie*, 604 U.S. 192, 199-200 (2025).  Professor Hessick, an undisputed expert in the history of the common law of crimes, analyzed a wealth of primary and secondary sources and identified a discrete list of crimes that were understood to be "felonies at common law" in 1870.  *See generally* Hessick Report.  ¶¶13-15, 20-31; *id.* at 52-24 (Materials Considered); *see also* Supplemental Declaration of Carissa Byrne Hessick ("Supp. Hessick Decl.") ¶5.  Professor Hessick accordingly concluded that the following crimes were recognized as felonies at common law in 1870: (1) arson;

(2) burglary; (3) escape and rescue from a prison or jail; (4) homicide, including murder and manslaughter; (5) larceny; (6) mayhem (i.e., causing a debilitating injury); (7) rape (including statutory rape of a minor less than 12); (8) robbery; (9) sodomy (including, at the time, bestiality); (10) suicide; and (11) treason.[8]  *Id.* ¶¶31-32; *see also* Supp. Hessick Decl. at ¶5.

Notably, throughout this litigation, Defendants have consistently conceded a subset of the identified offenses were felonies at common law in 1870, asserting that "common-law felonies included at least murder, manslaughter, arson, burglary, robbery, rape, sodomy, mayhem, and larceny."  First Rog Resp. at 7-8.  *See* Supp. Rog 2 Resp. at 6; Defs. MTD at 15 (same list); Defs. MSJ at 23 (describing same list as "commonly used").[9]  While Defendants have vaguely suggested that there may be additional felonies at common law, they have never identified what those additional crimes might be.  *E.g.*, 10/23/25 Tr. at 58:25-59:1, Supp. Rog 2 Resp. at 6.  Indeed, one of Defendants' cited treatises ***confirms*** Professor Hessick's analysis, as it identifies a discrete set of felonies at common law that aligns with (although is narrower than) those identified by Professor Hessick.  *See* William Clark & William Marshall, *A Treatise on the Law of Crimes* 12 (1900), https://tinyurl.com/3yw5byhx ("The common-law felonies were murder, manslaughter, rape, sodomy, robbery, larceny, arson, burglary, and perhaps mayhem.").

In sum, Defendants have never identified any offense that they assert is missing from Professor Hessick's list of 1870 common-law felonies.  Plaintiffs therefore respectfully request

---

[8] As Professor Hessick explained, in 1870, "the long-standing convention was to distinguish between treason and felony"; however, some references acknowledged that treason "could also be understood as an aggravated form of felony."  Accordingly, Plaintiffs have included "treason" among the crimes considered a "felony at common law" in 1870.  Hessick Report ¶33.  Professor Hessick's report refers to "fifteen common law felonies" because she separately counted the five types of treason.  *See* Hessick Report ¶¶32(i)-(v), 39 n.89.

[9] Defendants omit escape from prison, suicide, and treason.

that the Court conclude that the only convictions for which the Virginia Readmission Act permits

disenfranchisement are for those offenses that would have been recognized as one of the discrete

set of crimes that was a felony at common law in 1870.

II.    **THE COURT SHOULD ENTER THE PROPOSED ORDER PROHIBITING DEFENDANTS FROM DISENFRANCHISING OTHERWISE ELIGIBLE VOTERS EXCEPT FOR CONVICTION OF AN OFFENSE THAT WOULD HAVE BEEN RECOGNIZED AS A FELONY AT COMMON LAW IN 1870**

    A.    **The Court Should Declare A Violation Of Federal Law And Grant Prospective Injunctive Relief**

Plaintiffs' proposed order, Dkt. 151-1, would provide the proposed class complete relief

and provide an administrable basis for Defendants to discharge their statutory duties in compliance

with federal law.  As written, Plaintiff's proposed order would impose precisely the kind of

straightforward "declaratory" and "injunctive relief against state officers" that the Fourth Circuit

ruled "the court may issue [here] upon finding the state regulatory actions preempted." *King v.

Youngkin*, 122 F.4th 539, 543-45 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2815 (2025).

*First*, the Court should declare that "Defendants have violated and threaten continued

violation of the Virginia Readmission Act" by enforcing Article II, Section 1 of the Virginia

Constitution.  Dkt. 151-1 at 1.  This declaration follows directly from the conclusion that the

Commonwealth was prohibited from amending its Constitution after 1870 to disenfranchise

otherwise eligible voters except insofar as they were convicted of one of the discrete set of crimes

that were felonies at common law in 1870, *see supra* pp.10-11; *see also* Dkt. 152 ("Pltfs. MSJ")

at 7, 13-23.  It is undisputed that Defendants now enforce Virginia's Disenfranchisement Provision

to block or cancel registrations without regard to whether otherwise-eligible voters were convicted

of an offense that would have been recognized as a felony at common law in 1870.  *See, e.g.*, Supp.

Rog 2 Resp. at 1 (admitting that Defendants "do not make any distinction between 'common law'

felonies or non-'common law' felonies in practice"); 10/23/25 Tr. 17:23-24 (admitting that "drug

possession convictions … were not felonies at common law").  Nor is there any dispute that Defendants will continue to implement this unlawful regime absent an order from this Court.

*Second*, the Court should permanently enjoin Defendants and those acting in concert with them "from enforcing" the Disenfranchisement Provision "or any statute, regulation, or policy enacted thereunder, to disenfranchise Plaintiffs, any member of the Class" "or any otherwise-eligible Virginian voter on the basis of any criminal conviction, except for that voter's conviction for an offense that would have been recognized as a felony at common law in 1870." Dkt. 151-1 at 1.  As explained above, the Court's opinion should hold that the full set of offenses that were felonies at common law in 1870 are the discrete set of crimes identified by Professor Hessick. *See supra* pp.10-11.[10]

The proposed order "seeks relief properly characterized as prospective," *King*, 122 F.4th at 543, and is appropriate and necessary to remedy Defendants' continuing violation of federal law.  The proposed order would prohibit Defendants from taking any action that would disenfranchise voters on an unlawful basis, and it specifically defines "'disenfranchising' a voter [to] include[] (i) informing that voter that he or she is ineligible to register to vote or to cast a ballot; (ii) canceling that voter's voter registration; or (iii) taking any action or maintaining a record in any voter registration system that has the effect of preventing that voter from registering to vote, casting a ballot, or having a ballot counted in any local, state, or federal election."  Dkt. 151-1 at 1.  As the Fourth Circuit explained, Plaintiffs here "claim[] federal law immunizes [them] from state regulation, [so] the court may issue an injunction upon finding the state regulatory actions

_____

[10] To add further clarity, the Court could also incorporate the list of common-law felonies identified by Professor Hessick into its remedial order. *See infra* pp.14-17.

13

preempted." *King*, 122 F.4th at 545 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015)).

Notably, the proposed order does not require Defendants to retroactively apply this Court's decision—for example, by reviewing past denials of voter registration applications for compliance with the Virginia Readmission Act. The requested prospective remedy will provide complete relief to Plaintiffs and other class members who were previously disenfranchised unlawfully: The proposed order would ensure that otherwise-eligible Virginians would be able to file new voter registration applications, which could not be denied for prior conviction of an offense that would not have been a felony at common law in 1870.

**B.    Determining Which Present-Day Virginia Offenses May Serve As A Predicate For Disenfranchisement Would Aid Implementation Of The Court's Order**

Although it need not do so to grant complete relief, the Court could ease implementation of its remedy by adopting the Hessick List of 96 present-day Virginia offenses that would have been recognized as criminalizing conduct that would have constituted a felony at common law. *See* Dkt. 151-1 at 3-11 (Exhibit A to proposed order); Hessick Report at ¶¶35-36. Incorporating this list is appropriate because, as the Fourth Circuit held, deciding "if a particular crime was a 'felon[y] at common law,' … fall[s] within the heartland of what federal courts do every day." *King*, 122 F.4th at 547. Plaintiffs contend that these 96 offenses are the full set of present-day Virginia felonies that would have constituted a felony at common law in 1870—i.e., the crimes having elements that "are substantially similar to or fall comfortably within the scope of one of the common law felonies" that existed in 1870. Hessick Report ¶39; *see* Dkt. 151-1 at 3-11.

Defendants have never identified a single Virginia offense that they contend should be added to the Hessick List. *See, e.g.*, Supp. Rog 2 Resp. at 1-6; Defs. MSJ; Defs. Opp. to Class Cert.; Defs. Opp to MSJ; Defs. MSJ Reply; 10/23/25 Tr. at 58:25-59:1. And while Defendants'

*Daubert* motion argued that Professor Hessick's opinion was inadmissible under Rule 702, *see Daubert* Mot. at 1, Defendants admittedly "did not have an expert analyze" Professor Hessick's report to determine whether "it was an appropriate historical analysis," 10/23/25 Tr. 9:8-16. Nor have Defendants ever suggested an alternative methodology. To the extent Defendants still assert that it is impossible to determine whether "a particular crime was a felon[y] at common law," their position is squarely foreclosed by the Fourth Circuit's mandate. *See King*, 122 F.4th at 547; *see United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) ("'[The] mandate rule' … forecloses relitigation of issues expressly or impliedly decided by the appellate court.").

While the vast majority of felony convictions of Virginians are rendered in the Commonwealth's courts, Defendants also enforce the Disenfranchisement Provision to bar voting by people convicted of felonies in Virginia's federal courts, and applicants who self-declare that they have been convicted of a felony and their rights have not been restored. *See supra* pp.3-5; Dep't of Elections Handbook at 31. The proposed order would permit this to continue, but only to the extent someone was convicted of a crime that is a lawful basis for disenfranchisement under the Virginia Readmission Act. As Professor Hessick explained, her "same methodology would apply to felonies contained in the United States Code, or felonies from other modern state criminal codes that may have been used to disenfranchise Virginia residents." Hessick Report ¶11. Accordingly, no special remedial provisions are required to address these cases.

Should the Court elect to adopt a list of disqualifying Virginia offenses and wish to provide election administrators with additional guidance for how to apply the remedial order to federal or out-of-state convictions, the remedial order could include a clause like the following:

> With respect to all convictions other than those rendered in Virginia's state courts, Defendants are enjoined from disenfranchising any otherwise-eligible voter other than for an offense which if committed in this state would constitute one of the felonies included in Exhibit A.

This language is consistent with the approaches taken by other states, such as Alabama, Wyoming, and Delaware. *See infra* pp.17-18.

Indeed, the number of voters falling into this category is likely to be relatively small. As discussed above (*supra* p.4), approximately 95% of all criminal convictions in the Commonwealth in 2024 were obtained in Virginia's state courts. Indeed, there were only 973 sentences imposed for federal convictions in Virginia in 2024. Statistical Info. Packet at 3. Moreover, the vast majority (over 80%) of federal criminal convictions fall into four categories: "Immigration," "Drug Trafficking," "Firearms," and "Fraud/Theft/Embezzlement." Declaration of Jason H. Liss ("Liss Decl.") ¶5 (citing U.S. Sent'g Comm'n, *2023 Sourcebook of Federal Sentencing Statistics* 21 (2024), https://tinyurl.com/yc6k7b8u). "For more than 25 years," these "four crime types have comprised the majority of federal felonies." *Id.* ¶6 (quoting U.S. Sent'g Comm'n, *2023 Annual Report* 14 (2024), https://tinyurl.com/5e9b8rty). Professor Hessick reviewed the criminal statutes falling into those categories, applying the same methodology applied to identify the present-day Virginia offenses that would have constituted a felony at common law in 1870 and identified only five federal offenses that would have constituted a felony at common law in 1870. *See* Supplemental Declaration of Carissa Byrne Hessick ("Hessick Decl.") ¶¶5-11. That is unsurprising; few such offenses existed, let alone were felonies, at common law in 1870. *See* Hessick Report ¶36 ("[D]rug crimes were not even statutory felonies in Virginia when the Readmission Act was passed in 1870.").

Again, making this determination is not necessary to grant complete relief in this case, because the proposed order's text would adequately protect voters' rights. However, determining which Virginia convictions are disqualifying would aid implementation because it would provide the Department of Elections with objective criteria from which to adapt their VERIS system to

16

continue screening registration lists and applications for disqualifying convictions as it does today, to the extent that Defendants seek to maintain that system. *See infra* pp.20-23.

## III. THE RELIEF REQUESTED IS STRAIGHTFORWARD, ADMINISTRABLE, AND ACCOUNTS FOR FUTURE CHANGES IN THE LAW

This proposed order requests relief that is neither novel nor difficult to administer. Virginia is the **only** state that permanently disenfranchises any citizen convicted of any felony and offers no automatic or objective process for restoration of rights. *See* Va. Const. art. II, §1; Dkt. 150-8 [Sentencing Project Report] at JOHNSON-051-054. At least eleven other states have registration systems that require election officials to determine whether (or to what extent) individuals convicted of a crime may be disenfranchised based on their offense of conviction.[11] Alabama and Alaska, for example, disqualify only residents convicted of crimes of "moral turpitude."[12] Mississippi and Tennessee each disqualify only those residents who were convicted of crimes falling within certain listed categories of conduct.[13] Ohio disqualifies voters twice convicted for violating "Ohio's election laws."[14] At least another six states—including Delaware, Florida, Maryland, Missouri, Nebraska, and Wyoming—have systems for automatically restoring voters'

---

[11] *See* Ex.H [Brennan Center for Justice, *Criminal Disenfranchisement Laws Across the United States* (May 13, 2025)].

[12] *See* Ala. Code §17-3-30.1 (listing disqualifying Alabama statutory offenses, with statutory citations"); Alaska Stat. §15.80.010(10) ("'[F]elony involving moral turpitude' includes those crimes that are immoral or wrong in themselves such as murder, manslaughter, assault, sexual assault…").

[13] *See* Ex.J [*Disenfranchising Crimes*, Miss. Sec. State]; Ex.K [*Eligibility To Vote After A Felony Conviction*, Tenn. Sec. State].

[14] Ex.L [*Voter Eligibility & Residency Requirements*, Ohio Sec. State] at 2.

rights, excluding only citizens who were convicted of certain categories of offenses.[15]  Such disqualifying categories include "murder or manslaughter," Ex.I [*Persons Convicted of a Felony*, Del. Elections], "[a]ny felony constituting a sexual offense, or any like offense under the laws of [another jurisdiction]," Del. Const. art. V, §2; "treason," Neb. Const. art. VI §2; and "violent crimes," Wy. Stat. §§7-13-105(b), (e)(ii).

These registration systems have proved workable, and the Commonwealth can easily join its peers through minor changes to its voter registration form and to its process for blocking or removing applicants or voters convicted of a felony.

A.    **The Proposed Remedy Would Require Only Minor Changes To Voter Registration Materials**

The Court's injunction would require only a minor edit to a voter's attestation on the registration application as to whether he or she has "ever been convicted of a felony."  *See supra* p.4.  Following entry of the remedial order, this question would need only a slight modification to read:  "Have you ever been convicted of a **disqualifying** felony or judged mentally incapacitated and disqualified to vote?"  The Commonwealth could then add language on the back of the registration form similar to the following set of instructions:

> Disqualifying felony convictions include an offense in Virginia or elsewhere that constitutes any of the following:  arson; burglary; escape or rescue from a prison or jail; homicide, including murder or manslaughter; larceny; causing another person to suffer a debilitating injury; rape (including statutory rape of a minor less than 12); robbery; sodomy; suicide; and treason.  For further information, visit: [*Department of Elections website address*].

The Department of Elections could maintain at the indicated website guidance on how to determine

---

[15] *See Persons Convicted of a Felony*, Del. Elections (excluding persons convicted of "[m]urder or manslaughter, (except vehicular homicide)"); Ex.M (*Felon Voting Rights*, Fl. Div. Elections (July 10, 2024), https://tinyurl.com/3mvcz9zk); Md. Code, Elec. Law §3-102(b); Ex.N (*Frequently Asked Questions*, Missouri Sec. State, https://tinyurl.com/2cetzxve) ¶ 2.

if a conviction is disqualifying, and it could host any list(s) of disqualifying Virginia offenses that this Court determines constitute felonies at common law under the Virginia Readmission Act. *See supra* pp.14-15. While Plaintiffs do not believe it necessary that the Court order these specific changes and are not asking this Court to do so at this time, it unquestionably has jurisdiction to supervise Defendants' implementation of the necessary administrative steps. *See, e.g.*, *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 825-827 (4th Cir. 2005) (recognizing district courts' equitable power to craft and modify injunctions in institutional reform litigation to ensure compliance); *Cf.* Va. Code §24.2-418(A) (vesting the State Board of Elections with authority to determine registration forms).

Several states maintain nearly identical forms. Alaska, for example, requires applicants to certify that they "have not been convicted of a felony ***involving moral turpitude***," Ex.O [Alaska Voter Registration Application], and includes on its state elections website a list of the disqualifying Alaska felonies, Ex.P [List of Felonies Involving Moral Turpitude maintained on Alaska Divisions of Elections website]. Alabama similarly requires applicants to confirm via signature, "I am not barred from voting by reason of a disqualifying felony conviction," Ex.Q [Alabama Voter Registration Form], and Alabama's voter registration form directs voters via hyperlink to a list of the disqualifying Alabama felony offenses. Ex.R [official list of Crimes Involving Moral Turpitude, maintained on Secretary of State website] ("Alabama List"). Delaware's registration form also provides a set of instructions with high-level descriptions of disqualifying convictions. *See* Ex.S [Delaware Voter Registration Application]; 15 Del. C. § 6102(a)(1) ("'Disqualifying felony' shall mean that type of felony set forth in § 2, article V of the Constitution of this State which permanently disqualifies any person convicted of such felony from voting.").

19

While these other states disqualify otherwise eligible voters on the basis of federal or out-of-state convictions for disqualifying conduct, none maintains a list of specific disqualifying statutory offenses under federal or other out-of-state law.  For example, while Alabama's elections code lists disqualifying state offenses, it includes a catch-all entry for "[a]ny crime as defined by the laws of the United States or by the laws of another state, territory, country, or other jurisdiction, which, if committed in this state, would constitute one of the" above-listed "offenses."  Ala. Code §17-3-30.1(56); *see also* Alabama List.  Wyoming, Delaware, and other states take a similar approach.  *See* Wy. Stat. §7-13-105(e)(ii) ("'Violent felony' means as defined by [a list of statutory offenses], including offenses committed in another state which if committed in this state would constitute a violent felony [there]under.").

Like other states, the Commonwealth has mechanisms to ensure the veracity of such voter attestations.  Virginia's registration form already cautions applicants to affirm the accuracy of their statements under penalty of perjury.  *See* Virginia Voter Registration Application (Item 7); Va. Code §24.2-1016 (criminalizing willfully false statements on an election form).   Beyond that, Virginia's election laws permit election officials or even other voters to challenge a voter's eligibility.  *See* Va. Code §§24.2-429 (allegations to registrar), 24.2-431 (petition to court).  To overcome a challenge, a voter must affirm under penalty of prosecution that she meets all state eligibility criteria, including that she is "not disqualified from voting by the Constitution and laws" of Virginia.  *See* Ex.T [Commonwealth of Va., State Bd. of Elections, Affirmation of Eligibility, Form SBE-651 (rev. July 2010)] at 2 ("Affirmation Form").  These existing processes for ensuring that voters are accurately registered need not change.

**B.    Defendants Can Maintain Their Automatic State-Wide Denial And Cancellation Process By Making Minor Changes To Existing Practices**

While the proposed remedy would alter the criteria for blocking or canceling a registration,

Defendants can implement the Court's remedial injunction with relatively minimal modifications to existing systems. The proposed remedy would also necessitate few, if any, changes to the practices of local registrars.

Defendants need only adapt the VERIS system administered by the Department of Elections. *See* Va. Code. §24.2-404(A)(4). Specifically, to comply with the proposed remedy's requirement to stop blocking and canceling registrations based on convictions for offenses that were not felonies at common law in 1870, the Department of Elections can repopulate the VERIS system's "prohibited table" with data only corresponding to people who were convicted of disqualifying felonies. If the Court grants Plaintiffs' request to determine which Virginia offenses constitute felonies at common law, *see supra* pp.14-15, the Department can repopulate the prohibited table by seeking from the Virginia State Police and the U.S. Attorneys' Offices data on people who have been convicted of the disqualifying offenses. Moving forward, the Department can request that the State Police and U.S. Attorneys' Offices provide conviction data in a form that permits the Department to filter and import to VERIS only those records corresponding to disqualifying convictions; that data is to be shared "in a format mutually agreed upon by the Commissioner of Elections and the Department of State Police." Va. Code §24.2-409; *supra* pp.3-4 (describing VERIS matching).

This would require no change to registrars' registration processing practices. With respect to list maintenance, registrars would continue to receive alerts from the VERIS system and cancel registration records that they verify as matches, just as they do now. *See supra* pp.5-6. VERIS would only flag people convicted of disqualifying offenses in state or federal courts seated in Virginia, but the registrars would continue to complete the same task of verifying matches proposed by VERIS. *See supra* p.5-7. And with respect to registration applications, registrars

could continue to process them as they currently do. VERIS would scan applications for matches against the (repopulated) prohibited table, and registrars would deny applications if they verified a match; where VERIS did not block a registration, registrars would continue to rely on the applicant's disclosure of any disqualifying conviction on the application form. *See supra* p.7.

In practice, the Department of Elections can determine how election administrators will handle convictions under any newly enacted Virginia felonies or convictions obtained in other states that are not easily mapped to the Virginia offenses contained in any lists of disqualifying offenses that the Court may adopt. That is for two reasons. First, the Department of Elections administers VERIS, so the Department will initially determine which citizens have convictions that permit them to be added to the prohibited table and "felon hoppers," which inform registrars what registrations to reject or cancel. *see supra* p.4. Second, the Department is charged to "supervise and coordinate the work … of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections." Va. Code § 24.2-103(A). As part of this duty, the Department may "make rules and regulations and issue instructions and provide information … to the … registrars" regarding the Department's view on what convictions registrars should treat as disqualifying, because doing so would "promote the proper administration of election laws." *Id.*[16] The existing election laws—and the process that election officials undertake every day in states like Alaska, Alabama, and Delaware—therefore provide registrars with the tools and guidance to ensure that they can efficiently implement the Court's remedial order.

---

[16] Virginia would not be an outlier in that regard; Mississippi, for example, provides the Attorney General with the discretion to interpret whether new crimes can serve as the basis for disenfranchisement. Miss. Code § 23-15-151.

22

**C.      The Existing State Law Administrative Appeals Process Could Resolve Disenfranchisement Disputes In The First Instance**

To the extent that any disputes remain, under current Virginia law, the Commonwealth's courts can adjudicate in the first instance any disputes about whether a particular conviction is a lawful basis for disenfranchisement under the Court's remedial order. Should a prospective voter believe that a registrar wrongfully denied or canceled his or her registration, the Virginia elections code provides the voter with "the right to appeal … to the circuit court of the county or city in which he offers to register by filing … a petition in writing to have his right to register determined." Va. Code § 24.2-422(B); *see also id.* § 24.2-430 (providing "[a]ny person whose registration was canceled … the right of appeal, as provided in §24.2-422"); List Maintenance at ELECT_0022. Voters whose denial or cancellation of registration is affirmed have an appeal as of right to the Commonwealth's Court of Appeals. Va. Code §§24.2-422(B), 24.2-433.

This appellate process guarantees voters immediate recourse to state courts that can faithfully apply this Court's remedial order even to new Virginia offenses and convictions from out-of-state and federal courts. State courts already apply Virginia law to out-of-state convictions in other contexts. The Commissioner of Motor Vehicles for example, is authorized to revoke a driver's license upon conviction of one of seven categories of crimes, and the statute authorizes revocation upon conviction under a "law of the United States, or a law of any other state, substantially paralleling and substantially conforming to a like state law." Va. Code §46.2-389(A). When a driver petitions a license revocation for a federal or other foreign conviction to a state circuit court, the circuit courts simply "compare the elements of" the foreign statute of conviction to the parallel Virginia statute to determine whether the revocation was proper. *Robertshaw v. Commonwealth*, 86 Va. Cir. 426, 429 (Cir. Ct. 2013). That is precisely the analysis Plaintiffs ask the Court to require here. *See supra* p.15.

23

**CONCLUSION**

Plaintiffs respectfully request that the Court grant its pending motions for summary judgment and class certification and deny Defendants' pending *Daubert* motions, and accordingly: (1) enter Plaintiffs' proposed order granting declaratory and injunctive relief and (2) adopt Exhibit A to the proposed order as the exclusive list of disqualifying Virginia offenses.

Dated: November 6, 2025

Vishal Agraharkar (VSB No. 93265)
Eden Heilman (VSB No. 93554)
ACLU FOUNDATION OF VIRGINIA
P.O. Box 26464
Richmond, VA 23261
(804) 523-2151
vagraharkar@acluva.org
eheilman@acluva.org

Jared Fletcher Davidson*
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
jared.davidson@protectdemocracy.org

Benjamin L. Berwick*
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Beau C. Tremitiere*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW, Suite 153
Washington, DC 20006
(202) 579-4582
beau.tremitiere@protectdemocracy.org

Respectfully submitted,

*/s/ Brittany Blueitt Amadi*
Brittany Blueitt Amadi (VSB No. 80078)
Medha Gargeya*
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
(202) 663-6000
brittany.amadi@wilmerhale.com

Robert Kingsley Smith*
Jason H. Liss*
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
robert.smith@wilmerhale.com

Nicholas Werle*
Brandon Roul*
Dylan S. Reichman*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
nick.werle@wilmerhale.com

Nitisha Baronia*
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, St # 3600
San Francisco, CA 94111
(202) 718-6494
nitisha.baronia@wilmerhale.com

*Counsel for Plaintiffs*
**admitted pro hac vice*

25

**<u>CERTIFICATE OF SERVICE</u>**

THIS IS TO CERTIFY that on November 6, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically e-mail notification of such filing to all counsel of record.

<div style="margin-left: 40%;">

*<u>/s/ Brittany Blueitt Amadi</u>*
Brittany Blueitt Amadi (VSB No. 80078)
*Counsel for Plaintiffs*

</div>