IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TATI ABU KING, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-408-JAG |
| ) | |
| JOHN O'BANNON, in his official capacity as ) | |
| Chairman of the State Board of Elections for ) | |
| the Commonwealth of Virginia, et al., ) | |
| ) | |
| Defendants. | |

**DEFENDANTS' MOTION FOR CLARIFICATION
AND/OR TO ALTER OR AMEND FINAL ORDER**

Defendants respectfully move for clarification and/or to alter or amend the Court's January 22, 2026 Final Order pursuant to Federal Rule of Civil Procedure 59(e). In that order, the Court entered prospective injunctive relief governing Virginia's felony-based voter eligibility framework and certified a class of affected individuals. Defendants seek clarification regarding discrete aspects of the Final Order to ensure the Court's remedial directives can be implemented in an orderly, uniform, and administrable manner. Defendants sought Plaintiffs' consent this morning and have not received a response as of the time of this filing.

Specifically, clarification or modification is warranted regarding the operative scope of the duties of the Commonwealth relative to registration and voting. Additionally, clarification and modification are warranted regarding the Court's common-law felony classifications, the treatment of offenses that cannot be definitively classified under that framework, and how those determinations govern class membership and the administration of prospective relief. Resolving these issues will ensure that the Court's injunction can be administered faithfully and consistently with governing procedural requirements.

1

## BACKGROUND

Plaintiffs filed this lawsuit challenging Virginia's felony-based voter eligibility framework on multiple statutory and constitutional grounds, including under the Virginia Readmission Act. As relevant here, Plaintiffs alleged that Virginia's felony-based eligibility restrictions unlawfully disqualifies individuals convicted of offenses that were not "felonies at common law" at the time of the Readmission Act's enactment in 1870. See First Amend. Compl. (ECF No. 58).

Following cross-motions for summary judgment, the Court directed supplemental briefing addressing the scope and form of equitable relief, including which crimes qualify as common-law felonies and how any injunction should be structured and implemented. See Order at 1 (ECF No. 182). The parties submitted supplemental briefing addressing those issues, including historical analysis, offense classifications, and proposed remedial frameworks. See Pls.' Supp. Br. (ECF No. 186); Defs.' Supp. Br. (ECF No. 199).

The Court ultimately granted summary judgment to Plaintiffs, certified a class of affected individuals, and imposed prospective injunctive relief governing felony-based voter eligibility determinations. See Mem. Op. (ECF No. 222). As part of that relief, the Court enjoined Defendants from denying or canceling voter registration based on felony convictions except for convictions of eleven offenses the Court identified as common-law felonies: arson, burglary, escape or rescue, larceny, manslaughter, mayhem, murder, rape, robbery, sodomy, and suicide. See Final Order (ECF No. 223).

The Court's injunction therefore requires election officials to administer voter eligibility determinations under a historically derived classification framework tied to common-law felony categories. Defendants now seek clarification and, to the extent necessary, modification of the injunction to facilitate orderly and consistent implementation of the Court's remedial directives.

## ARGUMENT

Federal Rule of Civil Procedure 59(e) allows a party to move to alter or amend a judgment within twenty-eight days of its entry. Fed. R. Civ. P. 59(e). The Fourth Circuit has recognized that relief under Rule 59(e) is appropriate in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) also permits a district court to clarify the scope of its judgment or injunction where necessary to facilitate implementation. Courts routinely entertain post-judgment motions seeking clarification regarding the meaning or reach of injunctive relief. See, *e.g.*, *Brown v. Hovatter*, 525 F. Supp. 2d 754, 757 (D. Md. 2007) (collecting cases). Such clarification serves the rule's core purpose of allowing district courts to resolve ambiguities or "correct its own errors, 'sparing the parties and appellate courts the burden of unnecessary appellate proceedings.'" *Pacific*, 148 F.3d at 403 (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)).

Clarification is particularly appropriate when necessary to ensure that injunctive relief can be implemented consistent with Federal Rule of Civil Procedure 65(d). Rule 65(d) requires that every injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). When questions arise regarding the scope or operation of an injunction, courts may clarify their orders to ensure that affected parties can comply fully and consistently with the relief imposed. See *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945) ("While such relief would be in the sound discretion of the court, we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court.").

**I.   Clarification and limited modification are warranted to define the operative scope of the duties the injunction imposes on the Commonwealth.**

The Court's Final Order grants the plaintiffs' motion for summary judgment and permanent injunctive relief and denies the defendants' motion for summary judgment, but the stated injunction awards only partial relief to the plaintiffs. Therefore, Defendants respectfully seek clarification and amendment of the judgment to state that the plaintiffs' motion is granted in part and denied to the extent it seeks imposition of an injunction requiring the Commonwealth of Virginia to facilitate casting of ballots by class members while incarcerated.

The injunction entered by this Court on January 22, 2026 states that "defendants SHALL not deny a person attempting to register to vote or cancel a person's existing registration except for convictions of" stated common law felonies. (ECF No. 223). Presumably, this would then facilitate people convicted of non-common law felonies having the opportunity to vote upon release. But in light of the relief requested by the plaintiffs, some may interpret the relief granted as broader than registration. In their motion, plaintiffs vaguely requested that the Court "permanently enjoin Defendants or those acting in concert with them from disenfranchising Plaintiffs . . . ." (ECF No. 152 at 30). But their proposed order added a definition that "disenfranchising" a voter includes (i) informing that voter that he or she is ineligible to register to vote *or to cast a ballot* . . . or . . . taking any action or maintaining a record in any voter registration system that has the effect of preventing that voter from registering to vote, *casting a ballot, or having a ballot counted* in any local, state, or federal election." (ECF No. 151-1 at 2) (emphasis added). Thus, despite the plain language of the injunctive relief entered, it may appear to some that the Court implied entry of an injunction providing all of the relief plaintiffs suggested in their proposed order. To avoid any confusion or any manifest injustice resulting from any party

4

relying on a misinterpretation of the Court's order, the Commonwealth respectfully requests amendment of the judgment.

## II. Clarification and limited modification are warranted to define the operative scope of the Court's common-law felony framework.

Additionally, the Court's Final Order identifies eleven offenses as common-law felonies for purposes of the injunction and prohibits Defendants from denying or canceling voter registration based on felony convictions except for convictions of those offenses. Final Order (ECF No. 223). Defendants respectfully seek clarification and amendment to identify the statutory felony offenses that correlate to common law felonies that existed in 1870.

Neither party advanced a remedial approach that treated a fixed list of eleven offenses as an exclusive historical taxonomy that would fully resolve the question of which modern felonies qualify as "felonies at common law" in 1870. Plaintiffs' expert framework, for example, contemplated an analogical, offense-by-offense inquiry extending beyond any closed list. See Hessick Report ¶¶ 12, 39–41 (ECF No. 148-2). Plaintiffs' supplemental briefing likewise discussed additional offenses and historical categories beyond the eleven enumerated crimes. See Pls.' Supp. Br. at 14–16 (ECF No. 186). And the plaintiffs' expert identified 238 statutory felonies that might or might not qualify as 1870 common law felonies. Hessick Report ¶ 41 & Exh. F (ECF No. 148-2).

Against that record, the injunction's scope is unclear—even assuming the Court intends for the plaintiffs' expert's classifications (the only evidence in the record on the issue) to apply, how does it apply as to the crimes for which the plaintiffs' expert was unable to "give a definitive classification?" Hessick Report ¶ 41 (ECF No. 148-2). This question carries immediate practical significance because modern felony offenses do not uniformly map onto the enumerated list. Plaintiffs' expert, Professor Hessick, expressly acknowledged that her methodology produces a

5

substantial indeterminate set of modern Virginia felonies. She identifies 96 offenses she classifies as common-law felonies, 858 she classifies as non-common-law felonies, and 238 felonies she was "unable to definitively classify." Hessick Report ¶¶ 39–41 (ECF No. 148-2). In her deposition, Professor Hessick also confirmed that her approach requires discretionary interpretive judgment and offense-by-offense determinations. See Hessick Dep. Tr. 40:1–2 (describing offenses falling within a "maybe category"); 42:6–14 ("[T]hey need to find an expert in the common law."); 52:21–22 ("I think there is a lack of certainty sort of objectively that exists.") (ECF 148-3). The indeterminate category underscores that the injunction does not presently supply a self-executing classification rule capable of uniform administrative application without further judicial guidance.

Without additional guidance, election officials lack a uniform rule governing how to treat such offenses when administering voter eligibility determinations statewide. To the extent the Court intended the enumerated list to function as an exclusive remedial rule—or alternatively contemplated further classification—the judgment would benefit from clarification or limited modification to ensure administrable implementation.

For these reasons, Defendants respectfully request clarification as to which statutory crimes meet the definition of an 1870 common law felony. In light of the fact that the plaintiffs bear the burden of supporting their injunction. The failure of evidence would suggest that the 238 felonies on which the plaintiffs' expert could not give a "definitive classification" should be included among the 96 she could definitively conclude were 1870 common law crimes.

Accordingly, Defendants respectfully seek clarification and amendment of the judgment to indicate that (1) the plaintiff's motion for summary judgment and for a permanent injunction is denied in part insofar as it requests that the Court place a duty on the Commonwealth to allow class members—or anyone—to vote while incarcerated, and (2) the statutory felonies correlated

to the 1870 common law felonies that are not subject to the injunction include both the 96 statutory felonies that plaintiffs' expert Hessick says "would have been understood as constituting 'felonies at common law'" and the 238 felonies for which plaintiffs' expert Hessick could not definitively classify as 1870 common law felonies or not.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for clarification and to amend the Final Order to provide the guidance necessary to ensure uniform and administrable implementation of the Court's injunctive relief.

Dated: February 19, 2026

Respectfully submitted,

JOHN O'BANNON
ROSALYN R. DANCE
GEORGIA ALVIS-LONG
DONALD W. MERRICKS
MATTHEW WEINSTEIN
SUSAN BEALS
ERIC SPICER
SHANNON WILLIAMS
SANDY C. ELSWICK

By:    */s/ Tillman J. Breckenridge*

Jay Jones
   *Attorney General*
Travis G. Hill
   *Chief Deputy Attorney General*

Tillman J. Breckenridge (VSB #84657)
   *Solicitor General*
Triston Chase O'Savio (VSB #100111)
   *Assistant Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on February 19, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

                                */s/ Tillman J. Breckenridge*
                                Tillman J. Breckenridge (VSB #84657)
                                *Solicitor General*