**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| TATI ABU KING *and* TONI HEATH JOHNSON,<br><br>    *Plaintiffs,*<br><br>    *v.*<br><br>JOHN O'BANNON, *in his official capacity as Chairman of the State Board of Elections for the Commonwealth of Virginia*; ROSALYN R. DANCE, *in her official capacity as Vice Chair of the State Board of Elections for the Commonwealth of Virginia*; GEORGIA ALVIS-LONG, *in her official capacity as Secretary of the State Board of Elections for the Commonwealth of Virginia*; DONALD W. MERRICKS, *in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia*; MATTHEW WEINSTEIN, *in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia*; SUSAN BEALS, *in her official capacity as Commissioner of the Department of Elections for the Commonwealth of Virginia*; ERIC SPICER, *in his official capacity as the General Registrar of Fairfax County, Virginia*; and SANDY C. ELSWICK, *in her official capacity as the General Registrar of Smyth County, Virginia*,<br><br>    Defendants. | Case No. 3:23-cv-00408 (JAG) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
RULE 59(E) MOTION TO AMEND THE JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT........................................................................................................................2

I.     DEFENDANTS' PREFERENCE FOR A NARROWER INJUNCTION IS NOT A BASIS TO AMEND
       THE JUDGMENT..........................................................................................................2

II.    DEFENDANTS' REQUEST TO ENLARGE THE SET OF DISQUALIFYING OFFENSES IS
       PROCEDURALLY IMPROPER, WAIVED, AND MERITLESS .......................................................9

CONCLUSION....................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brown v. Hovatter*, 525 F. Supp. 2d 754 (D. Md. 2007) ...................................................3

*Kelly Toys Holdings, LLC v. 19885566 Store*, No. 22-CV-9384 (JMF), 2023 WL 4865938 (S.D.N.Y. Jul. 31, 2023) ...............................................................................4

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) ............................................11

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396 (4th Cir. 1998)..................2, 3

*Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945) ......................................................3

*Reynolds v. Sims*, 377 U.S. 533 (1964)........................................................................5

*United States v. Day*, No. 3:07cr154-JAG-3, 2016 WL 3570832 (E.D. Va. Feb. 19, 2016) ...............................................................................................................2, 3

*United States v. Rahimi*, 602 U.S. 680 (2024) .............................................................11

*Wakley v. Nat'l Credit Union Admin.*, No. 07-1649, 2007 WL 2932015 (7th Cir. Oct. 9, 2007) ..........................................................................................................9

*Westport Ins. Corp. v. Albert*, 208 Fed. App'x 222 (4th Cir. 2006) ...............................9

*Zinkand v. Brown*, 478 F.3d 634 (4th Cir. 2007).........................................................2, 9

## STATUTES, RULES, AND REGULATIONS

52 U.S.C. § 10307(a) ....................................................................................................6

52 U.S.C. § 10101(a)(1) ...............................................................................................5

Act of Jan. 26, 1870, ch. 10, 16 Stat. 62 (1870) .............................................................4

Ala. Code §17-3-30.1......................................................................................................8, 12

Ala. Code §17-11-3(a) ...................................................................................................8

Ala. Const. art. VIII, § 177(b).......................................................................................8

Alaska Stat. §15.80.010(10)...........................................................................................12

Enforcement Act of 1870, ch. 114, § 1, 16 Stat. 140 (1870) ...........................................5

Fed. R. Civ. P. 65(d)(1)(B) ..................................................................................................3

Miss. Code § 23-15-715(b) .................................................................................................8

Miss. Const. art. XII, § 241 .................................................................................................8

Va. Code § 24.2-400 ............................................................................................................5

Va. Code § 24.2-665(A).......................................................................................................6

Va. Code § 24.2-700 ............................................................................................................5

Va. Code § 24.2-700.1 .........................................................................................................6

## OTHER AUTHORITIES

*Disenfranchise*, Merriam-Webster Dictionary....................................................................6

Matthew Peljovich, *Can People Vote in Jail?*, *Yes, But It's Very Challenging*,
        CAMPAIGN LEGAL CTR. (Aug. 1, 2022) ..............................................................8

Tony Vick, *In Tennessee, a Dwindling Group of People Can Vote While Still in
        Prison*, FILTER MAG. (June 9, 2025)....................................................................8

**INTRODUCTION**

On January 22, 2026, the Court entered a straightforward injunction: "the Court PERMANENTLY ENJOINS the defendants from using Article II, § 1 of the Virginia Constitution to violate the Virginia Readmission Act"; accordingly, election officials "SHALL not deny a person attempting to register to vote or cancel a person's existing registration except for convictions of" eleven enumerated common-law felonies. Dkt. 223 ¶ 4 (the "Injunction"). The Court ordered this relief after receiving extensive briefing and oral argument, including supplemental briefing on the appropriate remedy. Defendants' attempt to relitigate settled issues has no merit.

Instead of engaging constructively with Plaintiffs to implement the Injunction, Defendants belatedly ask the Court to carve out incarcerated Virginians from the Injunction. In no prejudgment briefing or argument did Defendants ever suggest the Court could or should enter an injunction that would exclude Virginians who are incarcerated for convictions that would not have been recognized as felonies at common law in 1870. To the contrary, Defendants' remedies submission acknowledged that granting Plaintiffs' requested injunction ***would*** result in certain Virginians convicted of non-disqualifying felonies being able to vote while incarcerated, *see* Dkt. 199 at 17—the very issue that Defendants' motion now asserts is the source of their "confusion," Dkt. 228 ("Mot.") at 4. Not only have Defendants waived their argument to limit the scope of the Injunction, Defendants' request has no basis in either Virginia or federal law.

Defendants' separate request that the Court "clarify" which current statutory offenses are encompassed by the eleven felonies at common law enumerated in the Injunction not only comes far too late, but is a thinly-veiled attempt to expand the list of convictions for which disenfranchisement is permissible. Granting Defendants' request after Defendants refused to

1

engage on this issue for *years*—even after this Court ordered supplemental briefing specific to remedies—would only reward Defendants' dilatory tactics.

Plaintiffs remain eager to engage constructively with Defendants regarding timely and efficient implementation of the Injunction. But Defendants' motion to relitigate this case should be denied.[1]

## ARGUMENT

### I. DEFENDANTS' PREFERENCE FOR A NARROWER INJUNCTION IS NOT A BASIS TO AMEND THE JUDGMENT

Amendment of a judgment under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).[2] "[S]uch relief is appropriate only to '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *United States v. Day*, No. 3:07cr154-JAG-3, 2016 WL 3570832, at *1 (E.D. Va. Feb. 19, 2016) (Gibney, J.) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). "Rule 59(e) is not a vehicle for a petitioner to merely relitigate the previously decided issues," so a motion to clarify should be denied where it "does not meet any of the three possible rationales under *Zinkand* for a proper Rule 59(e) motion." *Id.*; *see also Pacific Ins. Co.*, 148 F.3d at 403 ("Rule 59(e) motions may not be used … to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue … a novel legal theory that the party had the ability to address in the first instance.").

---

[1] Defendants "sought Plaintiffs' consent" (Mot. at 1) without identifying any alleged ambiguity in the judgment or providing Plaintiffs with a proposed amended judgment; Defendants then filed the instant motion without awaiting Plaintiffs' substantive response.

[2] Emphases added and internal quotation marks, citations, and alterations omitted except where noted.

Defendants do not attempt to meet Rule 59(e)'s demanding standard; the motion identifies no alleged "intervening change in controlling law," no alleged "new evidence," nor any alleged "clear error of law."  Instead, Defendants incorrectly suggest (at 3) that "[c]ourts routinely entertain" such motions.  But, as Defendants' own cases confirm, the only "routine[]" aspect of Rule 59(e) practice is the denial of such motions in circumstances just like these.  *See, e.g.*, *Brown v. Hovatter*, 525 F. Supp. 2d 754, 757, 759 (D. Md. 2007) (cited at 3) (denying Rule 59(e) motion that did "not cite[] to an intervening change in controlling law, nor … [present] any new evidence, … clear error of law[,] or … manifest injustice"); *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945) (cited at 3) (declining to clarify order where parties were not "in the dark as to their duty").  Defendants cite only one case that granted a motion to clarify, and there the district court found that "it had made … a clear error of law"; that is, one of the permissible bases for amending a judgment.  *Pacific Ins. Co.*, 148 F.3d at 402.  Defendants' failure to satisfy any of Rule 59(e)'s requirements precludes their request to relitigate this case on a new and undeveloped legal theory under the auspices of a "clarification."  *Day*, No. 3:07cr154-JAG-3, 2016 WL 3570832, at *1.  For these reasons alone, Defendants' motion should be denied.

Defendants allude (at 3) to the general requirement that an "order granting an injunction … state its terms specifically," Fed. R. Civ. P. 65(d)(1)(B), but they never contend that the Injunction violates Rule 65(d)(1).  And for good reason.  An injunction is not vague simply because the enjoined party disagrees with the injunction or manufactures "questions … regarding the scope or operation of [the] injunction." Mot. at 3.  That standard would allow a losing party to endlessly relitigate the merits merely by concocting questions about how they should fulfill a Court's mandate.  As with many Rule 59(e) motions, Defendants' "request for 'clarification' … is, at bottom, a belated request to narrow the Court's prior Orders granting injunctive relief" because

3

they do not like the result. *Kelly Toys Holdings, LLC v. 19885566 Store*, No. 22-CV-9384 (JMF), 2023 WL 4865938, at *2 (S.D.N.Y. Jul. 31, 2023). This situation does not permit amendment under Rule 59(e).

Moreover, the Injunction fully satisfies the requirements of Rule 65(d)(1) to "state its terms specifically" and to "describe in reasonable detail … the acts restrained or required." The Court's lengthy and detailed opinion expressly addressed Rule 65(d)(1), and its order was attentive to these requirements. Dkt. 222 at 18. That opinion granted Plaintiffs' request "to permanently enjoin the defendants 'from disenfranchising … any otherwise eligible Virginia voter under color of the Felony Disenfranchisement Provision, except for conviction for an offense that would have been a felony at common law in 1870.'" *Id.* at 37; Dkt. 223 ¶ 3. The Court's order also unambiguously and "PERMANENTLY ENJOINS the defendants from using Article II, § 1 of the Virginia Constitution to violate the Virginia Readmission Act," including by barring Defendants from "deny[ing] a person attempting to register to vote or cancel[ing] a person's existing registration except for convictions" of one of the eleven enumerated offenses that was recognized in 1870 as a felony at common law. Dkt. 223 ¶ 4. This specific prohibition against unlawful denial and cancellation of registration makes good sense: The Court found that Defendants "accomplish" disenfranchisement through denial and cancellation of voter registrations. Dkt. 222 at 6. But, as the Court's Opinion explains, the "relevant condition" of the Virginia Readmission Act prohibits "depriv[ing] any citizen … ***of the right to vote*** who [was] entitled to vote by the Constitution [of 1869], except as a punishment for such crimes as [were then] felonies at common law." *Id.* at 5 (quoting Act of Jan. 26, 1870, ch. 10, 16 Stat. 62, 63 (1870)); *see also, e.g.*, *id.* at 32 (describing the "central congressional purpose" of the Act as "[g]uaranteeing … the right to vote, and limiting

4

the state's ability to deprive them of that right"). The Court's ruling therefore prohibits Defendants from "depriv[ing] any citizen … of the right to vote" for a non-disqualifying felony conviction.

Defendants' motion is predicated on purported "confusion" about whether "the relief granted [i]s broader than [protecting] registration," because the Court did not incorporate the definition of "disenfranchising" proposed by Plaintiffs in Plaintiffs' proposed order. Mot. at 4 (discussing Dkt. 151-1 at 2). But there is no such ambiguity in the Injunction.

*First*, Defendants tellingly *omit* (at 4) the broad aspect of the Court's order "ENJOIN[ING] defendants from … violat[ing] the Virginia Readmission Act," which prohibits "depriv[ing] any citizen … the right to vote"—not merely the right to register. *See supra* p.4. The Injunction presents absolutely no ambiguity as to its scope: Defendants may not deprive Virginians of their right to vote for conviction of crimes that were not felonies at common law in 1870.

*Second*, even if the Injunction could be read to directly address only voter registration, Defendants would have no lawful basis to deny lawfully registered incarcerated people from casting a ballot. Virginia law has long provided that "[*a*]*ny* person who is *registered* to vote and is a qualified voter *shall be entitled to vote* in the precinct where he resides." Va. Code § 24.2-400; *see also* Va. Code § 24.2-700 ("Any registered voter may vote by absentee ballot in accordance with the provisions of this chapter in any election in which he is qualified to vote.").[3] There is no basis in Virginia (or federal) law to deny registered voters the right to cast a ballot simply because they are incarcerated at the time of the election. In fact, Virginia *already* permits many incarcerated individuals to vote from jail and prison—*e.g.*, pretrial detainees, people

---

[3] Likewise, federal law has long provided that "all qualified voters have a constitutionally protected right to vote, and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964); *accord* Enforcement Act of 1870, ch. 114, § 1, 16 Stat. 140 (1870) (later reenacted at 52 U.S.C. § 10101(a)(1)) ("all citizens of the United States who are or shall be otherwise qualified by law to vote … shall be entitled and allowed to vote at all such elections").

sentenced for misdemeanors, and people sentenced for felonies whose rights are restored upon release from incarceration but who are thereafter reincarcerated on technical probation violations—reflecting the Commonwealth's longstanding recognition that qualified voters remain "entitled" to cast ballots, notwithstanding their incarceration.[4] Defendants' motion amounts to asking the Court to grant them a new *ultra vires* authority to **prevent** a subset of qualified voters from voting solely on the basis of incarceration. The Court's opinion obviously does not grant Defendants such a new and expansive authority to suppress the vote.

*Third*, Defendants are wrong (at 4) that the Court's decision not to import verbatim Plaintiffs' proposed definition of "disenfranchising" (which referred to "preventing [a] voter from … *casting a ballot*[] or *having a ballot counted,*" Mot. at 4 (quoting Dkt. 151-1 at 2) (emphasis in motion)) creates ambiguity about the scope of injunctive relief.[5] The plain meaning of "disenfranchise" is "to deprive of the right to vote." *Disenfranchise*, Merriam-Webster Dictionary. The Court's description of Plaintiffs' claim and the Virginia Readmission Act's function confirms that the Court did not intend to permit alternative mechanisms of disenfranchisement simply because they do not disrupt the registration process, *per se*. *See, e.g.*,

---

[4] Today, as is common across the country, *infra* note 6, incarcerated Virginians typically vote by absentee ballot, disproving any suggestion that voting while incarcerated is impracticable. *See* Va. Code § 24.2-700.1 ("Any registered voter who is confined while awaiting trial or for having been convicted of a misdemeanor may vote by absentee ballot," requiring the confining "institution or facility" to provide the means and opportunity to apply for, mark, and return an absentee ballot).

[5] To the extent Defendants' emphasis (at 4) on "having a ballot counted" in their quotation from Plaintiffs' proposed order is meant to suggest that Defendants could continue to disenfranchise registered voters in prison by declining to "count[]" their ballots, that argument too should be rejected. Refusing to canvass lawfully cast ballots would obviously violate state and federal law. *See, e.g.*, Va. Code § 24.2-665(A) ("The votes on all ballots for all offices and questions shall be counted."); 52 U.S.C. § 10307(a) ("No person acting under color of law shall … willfully fail or refuse to tabulate, count, and report [a qualified] person's vote."). There can be no ambiguity whether the Injunction condones illegal voter suppression, which Defendants' motion apparently seeks to accomplish.

Dkt. 222 at 13 ("[Plaintiffs'] core claim concerns their inability to *vote*"); *Id.* at 44 ("a class of would-be voters [asks] for true emancipation *at the Commonwealth's ballot boxes*").

*Fourth*, there cannot be any genuine confusion about the Injunction's scope when no one—not Defendants, Plaintiffs, the Court, or any amicus—has ever suggested that the Virginia Readmission Act's express *prohibition* against deprivations of the right to vote except as punishment for common law felonies would nevertheless *permit* such deprivations during periods of incarceration. This case has already been litigated at every level of the federal judiciary, and Defendants have *never* suggested an interpretation of the Virginia Readmission Act that would permit disenfranchisement for crimes that were not felonies at common law in 1870 simply because a protected citizen is incarcerated. And Defendants' motion nowhere attempts to (and cannot) reconcile their requested carveout for people incarcerated for non-disqualifying convictions with the text, structure, or history of the Virginia Readmission Act. This absence of any corresponding merits position reinforces the absence of confusion here.

*Finally*, Defendants' purported confusion (at 3-4) about whether the order prohibits disenfranchisement of incarcerated people is not credible in light of their repeated pre-judgment advocacy highlighting that the proposed class definition, combined with the requested injunction, would necessarily extend relief to incarcerated Virginians. For instance, Defendants raised this issue on the first page of their remedies brief, arguing that the injunction should be denied because "[o]n Plaintiffs' theory, some lucky category of convicted felons are entitled to vote *in prison* because (Plaintiffs say) they were never lawfully disenfranchised in the first place." Dkt. 199 at 1 (emphasis in original). Defendants sought to portray this "result[]" as creating "a bizarre world," where people convicted of non-disqualifying convictions would be "entitled to vote *while*

*imprisoned.*"  *Id.* at 17 (emphasis in original).[6]  Defendants' counsel also raised the same concern at the hearing on the cross motions for summary judgment.  Dkt. 183 at 53:18–24 ("[U]nder [Plaintiffs'] theory if you are a felon but not at common law, you can never be disenfranchised. The Virginia Readmission Act prevents being disenfranchised at all.  So … ***people can vote the second they step into jail.***").  Defendants' repeated advocacy on this point proves that the Court did not overlook this issue or misunderstand the implications of its Injunction; and despite that advocacy, Defendants never argued on the merits that the Readmission Act carves out incarcerated people—an argument now barred by waiver.

Defendants first sought to use the specter of ballots behind bars to dissuade the Court from granting the Injunction; now they wield it to suggest the Court did not mean what it said.  That is not an acceptable basis of a Rule 59(e) motion.  The Court should decline to clarify the judgment because no clarification is necessary.

---

[6] There is nothing "bizarre" or unusual about limiting the number and types of convictions that result in disenfranchisement, and retaining voting eligibility while incarcerated is common across the United States, even beyond the subset of jurisdictions that bar all forms of felony disenfranchisement.  *See, e.g.*, Matthew Peljovich, *Can People Vote in Jail?, Yes, But It's Very Challenging*, CAMPAIGN LEGAL CTR. (Aug. 1, 2022), https://campaignlegal.org/update/can-people-vote-jail-yes-its-very-challenging (people jailed "for a minor misdemeanor offense … can still vote in 44 states and the District of Columbia").  For example, Alabama disenfranchises voters convicted of a crime involving moral turpitude, *see* Ala. Const. art. VIII, § 177(b); Ala. Code § 17-3-30.1, while permitting "any qualified elector" to vote by absentee ballot, including incarcerated voters convicted of felonies not involving moral turpitude, *see* Ala. Code § 17-11-3(a), (a)(8).  Mississippi likewise authorizes absentee voting by incarcerated individuals who have not been convicted of a disenfranchising crime.  *See* Miss. Const. art. XII, § 241; *see also* Miss. Code § 23-15-715(b) (authorizing absentee voting where "any person who is incarcerated in prison or jail … and has not been convicted of a disenfranchising crime" may apply for an absentee ballot).  *See also* Tony Vick, *In Tennessee, a Dwindling Group of People Can Vote While Still in Prison*, FILTER MAG. (June 9, 2025), https://filtermag.org/tennessee-voting-rights-in-prison/ (noting that people serving time in Tennessee for convictions before May 17, 1981, retain the right to vote while in prison).

## II.    DEFENDANTS' REQUEST TO ENLARGE THE SET OF DISQUALIFYING OFFENSES IS PROCEDURALLY IMPROPER, WAIVED, AND MERITLESS

The Court's Injunction expressly identifies the eleven offenses that were recognized as felonies at common law in 1870 and therefore may lawfully trigger disenfranchisement.  Dkt. 223 ¶ 4.  Contrary to Defendants' assertion (at 4), that is precisely the relief Plaintiffs requested.  *See* Dkt. 186 [Plaintiffs' Opening Remedies Brief] at 13 (requesting an order "that the full set of offenses that were felonies at common law in 1870 are the discrete set of [eleven] crimes"); *see also id.* at 10-14.  To be sure, Plaintiffs suggested that "[a]lthough it need not do so …, the Court *could*" enter a list of present-day statutory offenses that could be disqualifying because they correspond to the eleven felonies at common law.  *Id.* at 14.  At the time, Defendants opposed that request (while insisting that they should be allowed to continue permanently disenfranchising voters for any conviction that could be punished by a prison sentence—*i.e.*, for any felony).  *See* Dkt. 199 [Defendants' Remedies Response] at 16-19.

Now, however, Defendants ask the Court to enter such a list—just the longest one they can muster, given their refusal to engage on this critical issue through more than two years of litigation.  Again, Defendants identify none of the recognized grounds for modifying a judgment under Rule 59(e), and this alone justifies denying their motion.  *See Zinkand*, 478 F.3d at 637.

But Defendants' steadfast refusal to address this question independently precludes their post-judgment change in position.  Arguments not raised when an issue is presented—particularly where a party affirmatively declines to take a position—are waived and cannot be revived through post-judgment motions.  *See Westport Ins. Corp. v. Albert*, 208 Fed. App'x 222, 227 (4th Cir. 2006) (affirming district court's rejection of post-judgment motions made "as an attempt to raise a new argument"); *see also Wakley v. Nat'l Credit Union Admin.*, No. 07-1649, 2007 WL 2932015,

9

at *2 (7th Cir. Oct. 9, 2007) ("[P]arties cannot file post-judgment motions to advance new legal arguments that could have been made before the district court rendered its judgment.").

Specifically, Defendants have persistently refused to (a) offer a list of which present-day Virginia statutory offenses they contend would have constituted felonies at common law in 1870 or (b) identify any present-day Virginia statutory offense that should be added or removed from the list of 96 present-day Virginia offenses Professor Hessick identified as criminalizing conduct that would have constituted a felony at common law in 1870. *See* Dkt. 173 [Plaintiffs' Opposition to Defendants' MSJ] at 17-18; Dkt. 186 [Plaintiffs' Opening Remedies Brief] at 8-9, 14-15; Dkt. 206 [Plaintiffs' Remedies Reply] at 6, 13 (recounting Defendants' waiver). At the hearing on the cross motions for summary judgment, Defendants conceded that they did not retain any historian or other expert to analyze or rebut Professor Hessick's methodology or conclusions. Dkt. 183 at 8:21–9:22. And when the Court expressly directed supplemental briefing on this issue— ordering the parties to "offer a list of disqualifying modern felonies," Dkt. 182 at 1—Defendants again declined to do so. *See* Dkt. 199 [Defendants' Remedies Brief] at 3 (acknowledging the Court's briefing order to propose a list of disqualifying modern felonies), 14-19 (advancing a punishment-based approach to disenfranchisement in lieu of identifying any such list).[7] Defendants now concede (at 5), as they must, that Professor Hessick's analysis is "the only evidence in the record on the issue."[8]

---

[7] Defendants refused to offer a list of disqualifying modern felonies even under their own proposed approach, Dkt. 199 at 16 n.11—an approach the Court expressly rejected. *See* Dkt. 222 at 34-35.

[8] Professor Hessick undertook the historical analysis Defendants declined to provide, analyzing the sources defining felonies at common law in 1870 and applying that framework to Virginia's modern criminal code. *See* Dkt. 153-3 ¶¶ 31–41. Defendants' same criticisms of Professor Hessick's methodology (at 6) were definitively rejected at the *Daubert* stage, because Professor "Hessick offers a reliable analysis generated largely by traditional, primary-source historical research." Dkt. 222 at 23.

Even apart from the procedural bars on their requested modification of the judgment, the fact that state election administrators need to exercise some judgment in implementing the injunction does not require the Court to modify the judgment. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (enforcing a decree that "enjoined any practices which were violations of … statutory provisions" because "[d]ecrees of that generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown").

Having declined to engage with Professor Hessick's analysis on the merits, Defendants may not now invoke it selectively to justify expanding disenfranchisement beyond what the Court ordered, especially given that the Court "reached its own conclusion about the law" independent of Professor Hessick's conclusions. Dkt. 222 at 23. As Plaintiffs explained at summary judgment, Professor Hessick's decision not to definitively classify an additional 238 Virginia statutory offenses was merely the result of her careful and independent analysis: those offenses do not clearly correspond to any felony at common law in 1870 and—contrary to Defendants' suggestion (at 6)—were not identified to enlarge the category of disqualifying crimes. Dkt. 152 [Plaintiffs' MSJ] at 9; Dkt. 173 [Plaintiffs' Opposition to Defendants' MSJ] at 17. As Plaintiffs have consistently explained, those identified offenses ***do not*** qualify as lawful bases for disenfranchisement under the Virginia Readmission Act. *See* Dkt. 152 at 10 n.4; Dkt. 173 at 17.

Defendants' Rule 59 motion inverts both the Virginia Readmission Act and the Injunction, which prohibit felony disenfranchisement except for the discrete set of eleven common-law felonies the Court identified. Dkt. 223 at 2. Any residual uncertainty operates in favor of enfranchisement, not continued disenfranchisement. *See United States v. Rahimi*, 602 U.S. 680, 691 (2024) ("when the government regulates … constitutional rights," "it bears the burden to justify its regulation.").

11

The Injunction provides a clear, workable rule for election officials. As Plaintiffs explained in remedies briefing, at least eleven other states similarly require election officials to determine disenfranchisement based on the nature of the offense of conviction. *See* Dkt. 186 at 17. Alabama and Alaska, for example, disenfranchise only for convictions of crimes of "moral turpitude." *Id.*; Ala. Code §17-3-30.1; Alaska Stat. §15.80.010(10). This reference to "moral turpitude," like felonies at common law in 1870, constrains disenfranchisement to a defined set of offenses, even as it requires election administrators to exercise some judgment in applying the law to the situations of particular voters. Plaintiffs remain ready and willing to work with Defendants to implement the Injunction and have twice provided detailed analyses to facilitate compliance. *See* Dkt. 153-3; Dkt. 187. Defendants' failure to engage during the merits and remedies proceedings or since the Court entered its Injunction does not warrant post-judgment amendment of the Court's well-founded opinion and order.

## CONCLUSION

Defendants' motion to amend the judgment (Dkt. 228) should be denied in full and the Injunction allowed to take effect as written.

Dated: March 5, 2026

Respectfully submitted,

/s/ Brittany Blueitt Amadi

Brittany Blueitt Amadi (VSB No. 80078)

Vishal Agraharkar (VSB No. 93265)
Eden Heilman (VSB No. 93554)
ACLU FOUNDATION OF VIRGINIA
P.O. Box 26464
Richmond, VA 23261
(804) 523-2151
vagraharkar@acluva.org
eheilman@acluva.org

Jared Fletcher Davidson*
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
jared.davidson@protectdemocracy.org

Benjamin L. Berwick*
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Beau C. Tremitiere*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW, Suite 153
Washington, DC 20006
(202) 579-4582
beau.tremitiere@protectdemocracy.org

Medha Gargeya*
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
(202) 663-6000
brittany.amadi@wilmerhale.com

Robert Kingsley Smith*
Jason H. Liss*
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
robert.smith@wilmerhale.com

Nicholas Werle*
Brandon Roul*
Dylan S. Reichman*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
nick.werle@wilmerhale.com

Nitisha Baronia*
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, St # 3600
San Francisco, CA 94111
(202) 718-6494
nitisha.baronia@wilmerhale.com

*Counsel for Plaintiffs*
*admitted pro hac vice*

13

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on March 5, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically e-mail notification of such

filing to all counsel of record.

*/s/ Brittany Blueitt Amadi*
Brittany Blueitt Amadi (VSB No. 80078)
*Counsel for Plaintiffs*
