

# COMMONWEALTH *of* VIRGINIA
### *Office of the Attorney General*

**Jay Jones**
**Attorney General**

**202 North 9th Street**
**Richmond, Virginia 23219**
**804-786-2071**
**FAX 804-786-1991**
**Virginia Relay Services**
**800-828-1120**

July 16, 2026

The Honorable John A. Gibney, Jr
U.S. District Court for the Eastern District of Virginia
701 East Broad Street
Richmond, Virginia 23219

Re:   ***King v. O'Bannon***, No. 3:23-cv-00408-JAG

Dear Judge Gibney:

Defendants respectfully submit this letter, the accompanying Declaration of Ashley Coles, Deputy Commissioner of the Virginia Department of Elections ("ELECT"), and the attached exhibits in response to the Court's July 9, 2026 Order. The Coles Declaration provides the sworn factual information requested by the Court concerning the Commonwealth's current felony-eligibility lists, voter-registration forms, written instructions to registrars, current review process, and the steps and time required to revise the Virginia voter-registration application.

## 1. Current lists of disqualifying and offenses requiring additional evaluation

The current list of Virginia offenses identified as corresponding to the common-law felonies specified in the Court's injunction is attached to the Coles Declaration as Exhibit A. The current list of offenses flagged for additional evaluation is attached as Exhibit B. Both lists are also publicly available on ELECT's website, a copy of which is attached as Exhibit C. Coles Decl. ¶ 4.

The secondary list is not a list of automatically disqualifying offenses. It identifies offenses for which the information initially available to ELECT may be insufficient to determine whether the conviction corresponds to one of the common-law felony

categories identified by the Court.  Applicants are not denied registration merely because an offense appears on the secondary list.  Instead, additional information is requested and reviewed before ELECT instructs the registrar whether the application should be accepted or denied.

### 2.  Current voter-registration forms

The current paper Virginia Voter Registration Application is attached as Exhibit D. Screenshots of questions from the online application available through ELECT's Citizen Portal are attached as Exhibit E.  The questions presented through DMV's in-person credit-card terminals are attached as Exhibit F, and the questions presented through DMV's website are attached as Exhibit G.  The current July 2026 version of the supplemental Voter Registration Eligibility Form is attached as Exhibit H.  Coles Decl. ¶ 5

The supplemental form requests factual information about the applicant and the conviction.  It does not require an applicant to determine whether the conviction qualifies as an 1870 common-law felony.  As the Court observed at the July 9 hearing, applicants generally cannot be expected to make that legal determination themselves.  The current process therefore centralizes the legal and record-based evaluation within ELECT and the Office of the Attorney General.

### 3.  Written instructions provided to registrars

The written instructions and training materials ELECT has provided to registrars are attached as Exhibits I through Q.  They include the May 15 Advisory, Exhibit I; the June 1 Advisory, Exhibit J; the June 17 Advisory and accompanying process materials, Exhibits K through O; June 22 email guidance, Exhibit P; and the May 27 PowerPoint presentation, Exhibit Q.  The slides in Exhibit Q specifically addressing this litigation are pages 66 through 69.  Coles Decl. ¶ 6.

Exhibits I through P concern felony-conviction processing throughout and are therefore provided in full.  Exhibit O is the June 17 version of the supplemental form circulated with that guidance; Exhibit H is the current July 2026 version of that form.

Those materials establish a centralized process intended to promote consistent application of the Court's injunction and reduce the likelihood that local registrars will make differing legal determinations concerning the same offense.  Under that process:

    i.   When an applicant reports a felony conviction, the registrar first determines through the voter-registration system whether the applicant appears on the Agency Felony Prohibited Table.  The centralized process

2

does not require the registrar to determine independently whether the applicant's offense corresponds to an 1870 common-law felony.

ii.  If the applicant appears on the Prohibited Table, the table reflects a confirmed disqualifying felony conviction, and the application is denied unless the applicant's rights have been restored.

iii.  If the applicant does not appear on the Prohibited Table, the application is placed in incomplete status and transmitted to ELECT for centralized review.

iv.  ELECT compares the applicant's information against criminal-history information supplied by the Virginia State Police and incarceration information supplied by the Virginia Department of Corrections.

v.  If the available information establishes that the applicant is not presently incarcerated and has only convictions that do not correspond to the common-law felonies identified in the injunction, ELECT informs the registrar that the applicant is eligible and that the application should be accepted if the applicant satisfies all other eligibility requirements.

vi.  If the available records are insufficient—such as where an offense citation requires further evaluation or an applicant has an out-of-state or federal conviction—ELECT instructs the registrar to send the applicant the supplemental form.

vii.  If the Department of Corrections confirms that an applicant is currently incarcerated for a felony, the application remains in incomplete status until the applicant is released from incarceration.

viii.  After ELECT receives a completed supplemental form, it coordinates any necessary legal evaluation with the Office of the Attorney General and instructs the registrar whether to accept or deny the application.

Based on current practice, ELECT generally expects review of an application, in consultation with the Office of the Attorney General, to take approximately two weeks from receipt of a completed supplemental form.  That timeframe may vary depending on the completeness of the information provided and whether additional records must be obtained.  Coles Decl. ¶¶ 7–10.

ELECT's Elections and Registration Specialists also regularly field questions from registrars, provide technical instructions, and take corrective action when issues are identified in the field.  Coles Decl. ¶ 11.

This centralized process was adopted so local registrars do not have to undertake independent analysis of 19th century common-law felony doctrine. The process assigns offense classification and any necessary legal review to ELECT and, where legal analysis is necessary, the Office of the Attorney General.

### 4. Time and steps required to revise the voter-registration application.

Changing the voter-registration application involves more than editing and reprinting the paper form. The voter-registration application is used in several formats and systems, including:

- the statewide paper application;
- ELECT's Citizen Portal;
- DMV's electronic and in-person systems;
- provisional ballot envelopes used by same-day registrants; and
- VERIS, which receives and processes voter-registration information.

Coles Decl. ¶¶ 19–33. The State Board of Elections is responsible under Virginia law for prescribing the voter-registration application. A proposed revision therefore must be developed and presented to the State Board for approval at a public meeting. Once approved, the revised form must be translated, printed, distributed to registrars and designated voter-registration agencies, incorporated into provisional ballot materials, and coordinated with corresponding electronic changes at ELECT and DMV. Coles Decl. ¶¶ 34–46.

For a relatively minor modification that changes existing language or instructions without adding, removing, or separating questions or response options, ELECT estimates that implementation generally requires approximately four to six weeks. Additional time may be necessary to print and distribute replacement provisional ballot envelopes. Coles Decl. ¶¶ 34–46.

Changes to the substance or structure of the questions—including adding or removing a question, separating the existing felony and mental-incapacity question, or changing the available response options—are more complex. Those changes require modifications to VERIS fields, coding, validation rules, routing logic, reporting functions, DMV systems, registrar workflows, and related election materials. They also require design, testing, and implementation intended to prevent unintended effects elsewhere in the statewide election system. ELECT estimates that changes of that nature generally require approximately three to four months to implement fully. Coles Decl. ¶¶ 47–59.

The precise timeline also depends on the election calendar. ELECT limits significant non-emergency changes to VERIS during active statewide elections to reduce the risk of system errors, outages, reporting problems, or disruptions to voter-registration and

absentee-ballot processing.  The current primary-election change freeze runs from June 18 through August 14, and the general-election change freeze is scheduled to run from September 18 through November 13.  Coles Decl. ¶¶ 60–71.  The same technical and administrative staff are also administering the current elections and implementing 157 tasks arising from legislation enacted during the 2026 General Assembly Session, at least 115 of which remain in progress.  Coles Decl. ¶¶ 72–82.

Defendants understand the Court's concern that the existing rights-restoration question may confuse or discourage some applicants whose eligibility no longer depends upon gubernatorial restoration under the injunction.  Defendants also agree with the Court that applicants should not be required to determine for themselves whether their conviction corresponds to an 1870 common-law felony.  The Coles Declaration explains the practical and technical considerations ELECT must account for in evaluating possible revisions, as well as ELECT's use of interim written and public-facing guidance during an active election cycle.  *See* Coles Decl. ¶¶ 54–71.

### 5.  Time required to update and circulate new registrar instructions

Once the substance of a new policy or process has been finalized, ELECT generally can draft and issue an advisory to registrars within approximately two to three days. Coles Decl. ¶ 14.

That estimate concerns the drafting and circulation of an advisory after the underlying policy or process has been finalized.  Developing the policy or process itself may require additional time depending on its complexity, the need to consult relevant stakeholders, the need to test process changes, and whether technical changes to the voter-registration system are required.  Those considerations can increase the development period by months, depending on the change under consideration. Coles Decl. ¶ 14.

Interim advisories can be issued more quickly than changes to the statewide voter-registration form because they do not require State Board approval, translation and printing of hundreds of thousands of forms, replacement provisional ballot envelopes, DMV system changes, or technical modifications to VERIS.

More formal revisions to the General Registrar and Electoral Board Handbook and election-official training materials occur on a longer schedule.  ELECT currently anticipates revising the handbook in September 2026 and updating formal training materials in December 2026, after the current election cycle.  Coles Decl. ¶ 15.

### 6.  Remaining State Board of Elections meetings

As of July 16, 2026, the State Board of Elections is tentatively scheduled to meet on the following dates during the remainder of 2026:

- August 4, 2026 (Primary Election Day);
- August 18, 2026;
- September 15, 2026;
- November 3, 2026;
- November 16, 2026; and
- December 1, 2026.

Coles Decl. ¶ 16.   These dates are subject to change, and the State Board may schedule additional meetings as necessary, including during an election period.

### 7.  Smyth County website

On July 10, 2026, ELECT contacted the Smyth County Registrar, identified the erroneous felony-eligibility information on the County's website, and asked the Registrar to correct it.   Counsel followed up on July 14, 2026, again identifying the inaccurate information and requesting an update.   The Smyth County Registrar's website has now been updated.   Coles Decl. ¶ 11.

### 8.  Additional questions raised at the July 9 hearing

At the hearing, the Court asked whether ELECT could print revised voter-registration forms itself.

ELECT does not operate an in-house process for printing and distributing statewide voter-registration applications.   After the State Board approves a revised form and the form is translated, ELECT sends it to a third-party vendor for printing and direct shipment to registrars and designated voter-registration agencies.   That process generally takes approximately three to four weeks.   A form revision also requires replacement provisional-ballot envelopes, which are obtained, printed, and distributed through an external vendor and may take up to seven weeks.   Coles Decl. ¶¶ 39–44.   Thus, revising the statewide application involves more than editing an electronic document and printing copies within ELECT's offices.

The Court also asked about the proposed constitutional amendment that HB 963 places on the November 3, 2026 ballot.

The proposed amendment would revise Art. II, § 1 of the Constitution of Virginia in three principal respects.   *First*, it would state expressly that every person satisfying Virginia's voter qualifications has a fundamental right to vote.   *Second*, a person convicted of a felony would not be entitled to vote during a period of incarceration for that felony conviction, but, upon release and without further action, would be invested with all political rights, including the right to vote.   *Third*, it would replace the current reference to persons adjudicated mentally incompetent with a standard

applying to persons adjudicated to lack the capacity to understand the act of voting. Coles Decl. ¶ 18 & Ex. R.

If approved by a majority of voters, the amendment would take effect on January 1, 2027. HB 964 contains the corresponding changes to the Election Code that would take effect on the same date. Among other things, HB 964 defines "incarceration" to exclude probation, parole, post-release supervision, and confinement in a community correctional facility. It also provides that the voter-registration application would ask whether the applicant is incarcerated when completing the application and whether the applicant has been adjudicated to lack the capacity to understand the act of voting. Neither HB 963 nor HB 964 conditions restoration of voting rights on payment of fines or fees or on an individualized gubernatorial restoration decision. Coles Decl. ¶ 18 & Exs. R–S.

## Conclusion

The materials submitted with this letter provide the current lists, forms, written registrar instructions, implementation process, form-revision timeline, registrar-guidance timeline, State Board meeting dates, and Smyth County information requested by the Court. They also clarify that ELECT has centralized the review of felony-related applications so that local registrars do not independently determine whether individual convictions correspond to the common-law felony categories identified in the injunction.

Defendants respectfully submit that these materials demonstrate the Commonwealth's continuing efforts to implement the injunction through a centralized statewide process designed to promote consistency, while protecting eligible applicants from automatic denial and avoiding the risks associated with significant changes to the statewide voter-registration system during an active election cycle.

8

Respectfully submitted,

/s/ *Ethan P. Fallon*

Ethan P. Fallon
  *Deputy Solicitor General*

  Office of the Attorney General
  202 North Ninth Street
  Richmond, Virginia 23219
  (804) 786-9527 (telephone)
  (804) 786-1991 (facsimile)
  SolicitorGeneral@oag.state.va.us

Enclosures

8