# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| TATI ABU KING, *et al.*,<br><br>　　　*Plaintiffs*,<br><br>　　　v.<br><br>JOHN O'BANNON, in his official capacity as<br>Chairman of the State Board of Elections for<br>the Commonwealth of Virginia, *et al.*,<br><br>　　　*Defendants*. | Case No. 3:23-CV-00408 (JAG) |

**[PROPOSED] BRIEF OF *AMICUS CURIAE* BRIDGING THE GAP IN VIRGINIA AND LEAGUE OF WOMEN VOTERS OF VIRGINIA IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTERESTS OF AMICI .............................................................................................1

SUMMARY OF THE ARGUMENT ...........................................................................3

ARGUMENT ...............................................................................................................7

    I.    Federal Law independently requires the Virginia Voter Registration Application to be informative and accurate ..........................................................7

    II.    Federal law requires Virginia to process voter registration forms—including those from Virginians with felony convictions—in a way that minimizes the burden on applicants. ..8

    III.    Federal law requires that Virginia accept and process voter registrations from qualified voters, even if they are incarcerated .......................................................14

CONCLUSION .........................................................................................................17

CERTIFICATE OF SERVICE .................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)..............................................10

*Burdick v. Takushi*, 504 U.S. 428 (1992) ............................................................................11

*Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980).......................................16

*Descamps v. United States*, 570 U.S. 254 (2013) ...............................................................9

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016)................................................................10

*Gaskin v. Collins*, 661 S.W.2d 865 (Tenn. 1983)..............................................................16

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993)........................................................12

*Johnson v. United States*, 559 U.S. 133 (2010)...................................................................9

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ..............................................11

*Middleton v. Evers*, 515 So. 2d 940 (Miss. 1987)............................................................16

*Moncrieffe v. Holder*, 569 U.S. 184 (2013) ........................................................................9

*Montgomery v. Whidbee*, No. 3:19-cv-00747, 2021 WL 780730 (M.D. Tenn. Mar. 1, 2021).......15

*Nijhawan v. Holder*, 557 U.S. 29 (2009) .............................................................................9

*O'Brien v. Skinner*, 414 U.S. 524 (1974)..........................................................................15

*Shepard v. United States*, 544 U.S. 13 (2005)......................................................................9

*Taylor v. United States*, 495 U.S. 575 (1990)......................................................................9

*Tennessee Conference of the NAACP v. Lee*, 730 F. Supp. 3d 705 (M.D. Tenn. 2024)...................7

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012)....................................11

*Voto Latino v. Hirsch*, 712 F. Supp. 3d 637 (M.D.N.C. 2024)........................................12

**Statutes and Codes**

52 U.S.C. § 20501....................................................................................................................5

52 U.S.C. § 20504....................................................................................................................7

52 U.S.C. § 20505............................................................................................................5, 7, 9

52 U.S.C. § 20506....................................................................................................................7

52 U.S.C. § 20507........................................................................................................6-11, 16

52 U.S.C. § 20508 .................................................................................. 5, 7-9, 11

52 U.S.C. § 21083 ...................................................................................... 10

Miss. Code § 23-15-713 .............................................................................. 16

Tenn. Code § 2-19-143(b) ........................................................................... 16

Va. Code § 24.2-409 ................................................................................... 10

Va. Code § 24.2-1016 ................................................................................. 13

**Constitutional Provisions**

Ala. Const. art. VIII, § 177 ......................................................................... 16

Alaska Const. art. V, § 2 ............................................................................. 16

Miss. Const. art. 12, § 241 .......................................................................... 16

Va. Const. art. II, § 1 .................................................................................. 15

Va. Const. art. II, § 2 .................................................................................. 15

**Other Authorities**

Virginia Department of Elections, National Voter Registration Act (NRVA) Designated State Agency Training & Reference Manual (updated July 2025), https://perma.cc/V76H-S35J .....7

**INTERESTS OF AMICI[1]**

Bridging The Gap In Virginia ("Bridging the Gap")[2] is a 501(c)(3) organization dedicated to empowering formerly incarcerated people by supporting their full reintegration into society. As part of its core mission, Bridging the Gap encourages formerly incarcerated people to exercise their right to vote. The organization hosts regular community events for Virginians with felony convictions where they hand out brochures about voter eligibility requirements and rights restoration. It also helps formerly incarcerated Virginians research whether their rights might have already been restored, apply to restore their rights, and complete a voter registration application, if eligible. Bridging the Gap estimates that it has assisted over 10,000 formerly incarcerated individuals to restore their voting rights. Since this Court's Order six months ago, Bridging the Gap has worked to educate and register newly re-enfranchised Virginians.

The League of Women Voters is a 501(c)(4) membership organization that promotes informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education and advocacy. The League of Women Voters of Virginia ("the League") is a state affiliate of the national League of Women Voters organization. The League has nearly 2,100 members across the Commonwealth, including people with felony convictions. As part of its core work, the League regularly trains its members and third parties to assist Virginians—including those with prior felony convictions—in

---

[1] Plaintiffs have consented to filing this brief. Defendants take no position. This brief was not authored in whole or in part by counsel for any party, and no person or entity other than *amici* or their counsel has made monetary contributions to its preparation and submission.

[2] Bridging the Gap was a named plaintiff in this case and was dismissed for lack of standing. While this Court found their organizational interests were not sufficient to allow them to serve as plaintiffs in this case, as discussed below, they do have significant interests as a civic engagement organization in Virginia's compliance with the National Voter Registration Act, which makes them well positioned to serve as *amicus* on this narrow issue.

registering, confirming their registration status, and voting. The League also runs voter registration drives, where its dues-paying members assist people with felony convictions to restore their voting rights and register to vote. Since at least 2020, the League has conducted registration drives at, among other places, jails and expungement ceremonies.

*Amici* submit this brief to inform the Court that a new order granting Plaintiffs' Motion to Enforce and providing for specific relief is both necessary to enforce this Court's Final Order and to further ensure that Virginia's chosen remedial scheme complies with federal law—in particular the National Voter Registration Act ("NVRA"). In response to this Court's injunction, Virginia has erected unnecessary barriers to registration by failing to update its voter registration form, requiring some people with felony convictions to fill out burdensome and unnecessary supplemental forms, and prohibiting the registration of otherwise eligible voters who are incarcerated for non-common-law felony convictions. Those barriers prevent *amici* from educating and helping currently and formerly incarcerated people to register to vote and run afoul of federal law.

Since this Court's Order in January, Bridging the Gap and the League have worked to educate and register re-enfranchised Virginians. But because the State has failed to update its voter registration form or build a workable system for registering voters with felony convictions in response to this Court's injunction, *amici* have been unable to help newly eligible Virginians register to vote. Both groups' efforts are chilled by the lack of instructions on the voter registration form itself, and by the lack of clear guidance from the state. The organizations fear that their members and volunteers could unintentionally encourage voters who are not qualified to attempt to register and/or make a mistake on the registration form. Moreover, their work to register voters

2

with felony convictions may be stymied by the burdensome supplemental form process if the people they assist are unable to timely complete and mail back that form.

The stale voter registration form and supplemental procedures for applicants with certain felony convictions violate federal law. So, on June 3, 2026, *amici* sent a notice letter to John O'Bannon, Chairman of the Virginia Department of Elections ("ELECT") and other parties in the Commonwealth outlining Virginia's noncompliance with the NVRA. *See* Ex. B, June 3 Notice Letter. Afterwards, Virginia continued to make changes to the voter registration process. On June 17, 2026, ELECT sent an "official ELECT advisory" explaining the process changes for voter registration applications for Virginians with felony convictions. Dkt. 258-11. On June 22, 2026, ELECT issued further guidance which stated that applications from people who "[a]re physically incarcerated and therefore not yet eligible to vote under the Court's orders in *King v. O'Bannon* . . . must remain in the incomplete hopper until their release from incarceration." Dkt. 258-16 at 3. These changes also violated the NVRA and the First and Fourteenth Amendments in old and new ways. So, *amici* sent another notice letter to Attorney General Jones and ELECT on June 26, 2026, raising their continuing NVRA and Constitutional violations and suggesting ways to remedy those violations. *See* Ex. C, June 26 Notice Letter. *Amici* have met with the Attorney General's office twice in the last month and appreciate the Commonwealth's willingness to discuss and hear concerns on these issues. While the conversations have been positive, they have not yet effectively resolved these defects. These issues could be efficiently resolved, however, by this Court granting relief that preempts additional violations of federal law.

## SUMMARY OF THE ARGUMENT

Despite having nearly six months to prepare for implementation, Virginia failed to update its voter registration materials to comply with this Court's Order. As a result, potentially hundreds of thousands of eligible voters may be prevented or discouraged from registering to vote. These

3

implementation issues raise concerns about the Commonwealth's compliance not only with this Court's Order, but also with federal law governing voter registration. *Amici* raise these federal law issues not for adjudication on the merits in this venue at this stage, but in hopes this analysis will assist the Court in crafting supplementary Orders that afford Plaintiffs with effective, legally compliant relief.

On January 20, 2026, this Court ordered that Defendants "shall not deny a person attempting to register to vote or cancel a person's existing registration except for convictions of the following common-law felonies: (1) arson; (2) burglary; (3) escape and rescue from a prison or jail; (4) larceny; (5) manslaughter; (6) mayhem; (7) murder; (8) rape; (9) robbery; (10) sodomy; and (11) suicide." Dkt. 223 at 2. When Defendants asked the Court to amend its Order a month later, the Court declined to do so, noting that it gave the Commonwealth nearly four months to "issue operating guidelines or regulations to local electoral officials." Dkt. 235 at 4-5. In its joint stipulations to extend that deadline by yet another month, the Commonwealth agreed, *inter alia*, to "updat[e] voter-registration forms and voter education materials"; "prepare and distribute guidance for election officials, potentially-impacted voters, and the public"; and otherwise "complete implementation of the Final Order in a manner that minimizes confusion among voters and election officials and ensures accurate administration consistent with federal law." Dkt. 238 at 2-3. Unfortunately, the Commonwealth has not updated its voter registration form. And where the Commonwealth has updated its procedures and issued guidance to local officials, it has done so in ways that violate this Court's Order, raise serious concerns under federal law, and unnecessarily burden voters.

An updated voter registration form and clarity on processing voter registration applications for people with felony convictions will ensure Virginia's compliance with this Court's Order and

4

federal law, and ensure that voters are properly informed of their rights. Congress enacted the NVRA in 1993 after it found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3). Congress thus tailored the law's provisions to "increase the number of eligible citizens who register to vote" and "enhance[] the participation of eligible citizens as voters" while "protect[ing] the integrity of the electoral process" and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

Currently, the Virginia voter registration form fails to meet the requirements of the NVRA. *See infra* Part I.B. Consistent with the goals articulated above, under the NVRA, state voter registration forms need to include an accurate statement of the state's eligibility criteria to inform registrants of applicable voter qualifications. *See* 52 U.S.C. §§ 20508(b)(2), 20505(a)(2). But Virginia's form provides no information to registrants about the potential impact of a felony conviction on voter eligibility that reflects the changes in the law consistent with this Court's Order. Moreover, it asks misleading questions that suggest the old legal regime is still operative.

Additionally, Virginia's requirement that individuals with out-of-state felony convictions or in-state convictions on Virginia's "additional evaluation" list fill out a supplemental registration form runs afoul not only of this Court's Order, but also of the NVRA and other federal law requirements designed to prevent unnecessary, discriminatory, and overly burdensome registration barriers. First, the NVRA's Accept and Use Provisions (Sections 6 and 9) require Virginia to accept and use a valid Federal Voter Registration Application or a state equivalent as sufficient for voter registration, meaning the Commonwealth cannot require supplementary submissions beyond those forms as a prerequisite for registration. 52 U.S.C. § 20505(a). The NVRA's Uniform and

Nondiscriminatory Provision also prohibits states from imposing burdensome requirements on voter registrants in a non-uniform or discriminatory manner. Moreover, the supplemental form process raises constitutional problems under the First and Fourteenth Amendments because it requests information that is not necessary to determine a voter's eligibility and is difficult to obtain; and includes a misleading warning that will deter people with prior felony convictions from registering to vote.

Lastly, Virginia has directed localities to deny registration to otherwise eligible applicants who have been convicted of non-common-law felonies—*i.e.* non-disqualifying offenses—solely because they are incarcerated, which is inconsistent with the clear directives of both this Court's Order and federal law. Virginia's prohibition on voter registration for incarcerated people with non-disqualifying felony convictions violates this Court's Order that the "defendants SHALL not deny a person attempting to register to vote . . . except for convictions of the [listed] common-law felonies[.]" Dkt. 223 at 2; *see* Dkt. 235 at 3 (noting Plaintiffs sought "an end to automatic disenfranchisement" during litigation). The NVRA also requires states to register eligible applicants who submit timely and valid voter registration forms. *See* 52 U.S.C. § 20507(a)(1). Unfortunately, Virginia's policy runs afoul of both requirements.

*Amici* raise these issues to bring awareness to the Court about the larger implications of the Commonwealth's failure to appropriately implement the Court's Order. In totality, these problems leave many newly enfranchised voters with the impression that little about their disenfranchisement has changed. *Amici* are working in Virginia to ensure that impression is not a reality. While *amici* remain committed to working productively with the Commonwealth, this Court can preempt the legal issues raised by Virginia's failure to provide adequate voter registration for eligible applicants by granting Plaintiffs' Motion to Enforce the Court's Order.

6

## ARGUMENT

**I.    Federal Law independently requires the Virginia Voter Registration Application to be informative and accurate.**

In the six months since this Court's Order, Virginia has refused to update its voter registration form to reflect the new eligibility criteria. Without an update, the form contains misleading questions that imply that to be eligible to vote, an applicant must never have been convicted of a felony or must have had their rights restored by the Governor. This outdated form not only contravenes this Court's Order by deterring newly eligible voters from registering to vote, but it also violates the NVRA.

The NVRA requires voter registration forms to include "a statement that . . . specifies each eligibility requirement (including citizenship)." 52 U.S.C. § 20508(b)(2); *see also* 52 U.S.C. § 20505(a)(2) (requiring state voter registration forms to "meet[] all of the criteria stated in [Section 9] for the registration of voters in elections for Federal office"). The eligibility criteria must be specified in a way that would fully "inform applicants . . . of . . . voter eligibility requirements." *Id.* § 20507(a)(5). "[V]oter applicants are not 'informed' of the voter eligibility requirements unless the information presented on the form is accurate and not misleading." *Tennessee Conf. of the NAACP v. Lee*, 730 F. Supp. 3d 705, 736 (M.D. Tenn. 2024), *vacated on other grounds*, No. 3:20-cv-01039, 2025 WL 4684743 (M.D. Tenn. Aug. 5, 2025). These requirements apply not only to the federal voter registration form, but also to state created forms when states—like Virginia—elect to use these forms for registration for federal elections, as well as to meet their obligations under the NVRA to register citizens at the Department of Motor Vehicles or other designated "public assistance agencies." *See* 52 U.S.C. §§ 20504, 20505, 20506; *see also* Va. Dep't of Elections, National Voter Registration Act

7

(NRVA) Designated State Agency Training & Reference Manual at 8-10 (updated July 2025), https://perma.cc/V76H-S35J.

Currently, Virginia's voter registration form does not specify *any* eligibility criteria for voter registration in clear contravention of federal law. *See* Dkt. 240-8. Even worse, the form only asks applicants two questions about past felony convictions: (1) "Have you ever been convicted of a felony?" and (2) "If yes, has your right to vote been restored?" *Id.* at 2. These questions inaccurately imply that to be eligible to vote in Virginia, a person must never have been convicted of a felony or must have had their right to vote restored. But under this Court's Order, people with non-common-law felony convictions never lose their right to vote. Dkt. 235 at 2. And neither these two questions, nor any other information provided on the form, inform registrants that they may be eligible to register to vote even if they have been convicted of a felony and have not had their rights restored. Virginia's form therefore fails to accurately "inform applicants . . . of . . . voter eligibility requirements." 52 U.S.C. §§ 20508(a)-(b)(2), 20507(a)(5). To the contrary, it runs the risk of deterring potential voters from registering because they wrongly, but reasonably, will assume they are ineligible.

Failure to update its voter registration form leaves the Commonwealth out of compliance with this Court's Order. *See* Dkt. 239 at 19-21. As *amici* have discussed with Defendants, these defects in the form also violate the NVRA. By ordering Virginia to update its voter registration form, this Court can enforce its Order while also curing a series of separate federal law violations.

**II.    Federal law requires Virginia to process voter registration forms—including those from Virginians with felony convictions—in a way that minimizes the burden on applicants.**

Under Virginia's current procedures developed in response to this Court's injunction, the Commonwealth categorically requests supplemental information from voter registration applicants

in two categories: (1) people who have out-of-jurisdiction convictions, and (2) people who have Virginia convictions on the "additional evaluation" list.[3] *See* Dkt. 257 at 3; Dkt. 240-12; Dkt. 240-5 at 3. When these applicants submit a voter registration form, they then receive a "supplemental form" from their registrar requesting additional information about their felony conviction. *See* Dkt. 249-1; Dkt. 258-11. And while the applications of other voters are processed promptly, these individuals' applications are held in indefinite limbo while the Commonwealth conducts additional evaluation to determine whether they are eligible to vote. *See* Ex. C, June 26 Notice Letter; Dkt. 239 at 17; Dkt. 248 at 6-7, 9-10, 17. If an applicant fails to return the supplemental form within 30 days, their application is denied. *See* Dkt. 249-1; Dkt. 258-12 at 6.

The NVRA requires states to "accept and use" the federal voter registration form as sufficient for registration. 52 U.S.C. § 20505(a). Further, states "may require only such identifying information . . . and other information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1). And election officials must ensure that any eligible voter who timely submits a valid voter registration form is registered to vote. 52 U.S.C. §

---

[3] *Amici* do not endorse a policy of inquiring into the facts underlying a voter registrant's felony conviction to determine whether or not the conviction is analogous to a felony at common law. There is a long line of well-established precedent arising out of federal criminal and immigration statutes that addresses how to fit specific state-level statutory felonies into criminal categories. Those determinations should be made based on analysis of the elements of the crime *alone*. To the extent the elements of a modern conviction do not match or sweep more broadly than the elements of a felony at common law, the conviction should not be deemed disqualifying. *See, e.g., Moncrieffe v. Holder*, 569 U.S. 184 (2013); *Descamps v. United States*, 570 U.S. 254 (2013); *Johnson v. United States*, 559 U.S. 133 (2010); *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009); *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Taylor v. United States*, 495 U.S. 575, 577 (1990) (applying the categorical approach to comparing convictions across jurisdictions because it avoids the inevitable problems of a fact-based approach: unfairness, practical difficulties, and due process violations). To the extent that the Commonwealth will be making these determinations regardless, this section addresses the guardrails mandated by federal law.

9

20507(a)(1). Only if the State has information establishing ineligibility may the burden shift to the voter to provide supplemental information demonstrating eligibility. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 2 (2013); *see also Fish v. Kobach*, 840 F.3d 710, 738-39 (10th Cir. 2016).

The current voter registration form does not collect enough information from applicants with felony convictions to determine eligibility from the face of the form in all cases, but Virginia has access to records sufficient to verify eligibility for the vast majority of applicants with felony convictions. Both federal and Virginia law require coordination of records between law enforcement and election agencies to ensure that election officials can determine whether a Virginian has been disqualified from voting by a felony conviction. *See* Help America Vote Act, 52 U.S.C. § 21083(a)(1)(A)(iv) (requiring that every state maintain databases and information flows sufficient to allow elections officials to verify eligibility); 52 U.S.C. § 21083(a)(2)(A)(ii)(I) (requiring states to coordinate computerized voter registration lists with state agency records on felony convictions); § Va. Code § 24.2-409 (requiring the Central Criminal Records Exchange to transmit lists of felony convictions to the Department of Elections for purposes of assessing eligibility to vote). Because ELECT receives felony conviction information from Virginia State Police, it should already have access to the information it needs to evaluate the applications of individuals with Virginia convictions on the "additional evaluation" list. Moreover, the NVRA ensures that the Commonwealth has access to federal felony data through the United States attorneys' offices. 52 U.S.C. § 20507(g). The Commonwealth should also have access to some amount of information about out-of-state and federal convictions through, for instance, interstate criminal databases and federal court records. This information should suffice to verify the eligibility of many applicants with out-of-jurisdiction convictions. In either event, therefore,

10

supplemental information is not "necessary . . . to assess the eligibility" of most applicants. *See* 52 U.S.C. § 20508(b)(1). And where supplemental information is not necessary, the NVRA forbids the Commonwealth from requiring it.

Moreover, Section 8 of the NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . be uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b). This provision prohibits states from singling out a group of voters and imposing discriminatory hurdles—including requiring additional documentation—from this group alone. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 720 (9th Cir. 2025); *see also United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) ("A state cannot properly impose burdensome demands in a discriminatory manner."). Virginia thus violates the uniform and nondiscriminatory requirements by singling out individuals with felony convictions, requiring them alone to provide additional, burdensome, and unnecessary verification documentation.

Finally, eliminating the supplemental form is necessary to prevent an unconstitutional burden on the voting rights of people who have a prior felony conviction by requiring unnecessary and difficult-to-obtain information for a subset of voters to register and disseminating an inaccurate warning of criminal liability to a vulnerable group of voters. "It is beyond cavil that voting is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 432-33 (1992). At the same time, states "must play an active role in structuring elections . . . 'if they are to be fair and honest[.]'" *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). For that reason, courts balance an election law's burden on voters against the state's articulated interests to determine whether the law violates the right to vote under the First and Fourteenth Amendments. *Burdick*, 504 U.S. at 434.

11

Virginia's supplemental form requires information that is difficult for voters to obtain and irrelevant to their eligibility. In *Voto Latino v. Hirsch*, plaintiffs challenged a North Carolina law directing poll workers to mail "address verification cards" to same day registrants and discard their ballots if the verification card was returned undeliverable. 712 F. Supp. 3d 637, 670 (M.D.N.C. 2024). The Court held that North Carolina's law "impose[d] a substantial burden on [same day registration voters]" because same day registrants did not receive notice or an opportunity to be heard and correct the error before poll workers threw out their ballots, even if the verification cards were returned undeliverable due to governmental error and no fault of the voter. *Id.* at 670. In other words, North Carolina's law imposed a severe burden on same day registrants because it was too hard (and sometimes impossible) for those registrants to comply with the State's address verification requirement, and failure to comply resulted in vote denial.

Likewise, the supplemental form is too difficult for would-be registrants to complete. The form requires applicants to provide information that most people do not have readily available. That includes the legal citation to their felony conviction(s), the date of their conviction(s), and whether each conviction was by plea or verdict. Dkt. 249-1 at 3. Without this information, people required to complete the supplemental form due to a prior felony or felonies are improperly prevented from registering to vote or casting a ballot. Further, this requirement is not narrowly tailored, as the required information is not necessary to determine whether a person with a prior felony conviction is eligible to vote. *See supra*, Section II.

Moreover, the supplemental form contains an inaccurate warning statement that substantially burdens the rights of voters who have been convicted of a felony. An election policy severely burdens the right to vote if it would deter reasonable voters from registering. *See Greidinger v. Davis*, 988 F.2d 1344, 1354 (4th Cir. 1993) (holding state law requiring registrants

12

to include their social security numbers on registration applications subject to public inspection imposed substantial burden because "potential harm that the dissemination of an individual's SSN can inflict" would deter reasonable voters from registering). The supplemental form warning states: "MAKING A MATERIALLY FALSE STATEMENT ON THIS FORM CONSTITUTES THE CRIME OF ELECTION FRAUD, WHICH IS PUNISHABLE UNDER VIRGINIA LAW AS A FELONY. VIOLATORS MAY BE SENTENCED UP TO 10 YEARS IN PRISON, OR UP TO 12 MONTHS IN JAIL AND/OR FINED UP TO $2,500." Dkt. 249-1 at 3. Faced with this all-capitalized threat of criminal penalty, voters with a prior felony conviction may reasonably be deterred out of fear that they may be criminally prosecuted for making a mistake in reporting highly technical information.

Worse still, Virginia's warning is inaccurate. The supplemental form currently indicates that *any* materially false statement constitutes election fraud. But Virginia criminalizes only *willfully* making false material statements. *See* Va. Code § 24.2-1016. This misleading language is likely a mistake. It appears Virginia may have adapted this warning from a similar, though accurate, warning on its voter registration form. Dkt. 240-8 at 2.[4] When the Commonwealth deleted language about "intentionally voting more than once in an election" from that warning, it missed that "intentionally" also modified "making a materially false statement." While Virginia may have good reasons to inform registration applicants of their legal risks, it does not have a

---

[4] The relevant portion of the voter registration form warning reads: "INTENTIONALLY VOTING MORE THAN ONCE IN AN ELECTION OR MAKING A MATERIALLY FALSE STATEMENT ON THIS FORM CONSTITUTES THE CRIME OF ELECTION FRAUD, WHICH IS PUNISHABLE UNDER VIRGINIA LAW AS A FELONY." Dkt. 240-8 at 3 (emphasis added). The Commonwealth appears to have dropped the underlined portion of the warning in its supplemental form.

13

compelling interest in disseminating an inaccurate and intimidating warning about criminal liability to voters who are uniquely vulnerable to the threat of a felony conviction.

This convoluted process is unnecessary. As Plaintiffs' briefing makes clear, Defendants' list of disqualifying felonies is overbroad. *See* Dkt. 239 at 22-24; Dkt. 248 at 16-18. In addition to contravening this Court's Order, this unwieldly list—combined with Defendants' failure to update Virginia's voter registration form—has led Defendants to create the burdensome supplemental form procedure to process individuals on the "additional evaluation" list. By resolving the underlying problem with the lists of disqualifying crimes and requiring an accurate initial voter registration form, this Court may eliminate the need for the supplemental form altogether, bringing the Commonwealth into compliance with the NVRA and the Constitution.

III.    **Federal law requires that Virginia accept and process voter registrations from qualified voters, even if they are incarcerated.**

Under the Commonwealth's newly enacted procedures implementing this Court's Order, Virginia denies registration to otherwise eligible registrants who have not been convicted of disqualifying felonies simply because they are incarcerated. According to this policy, although these voters may submit registration forms, localities must hold their applications in the "incomplete hopper until their release from incarceration" because they "[a]re physically incarcerated and therefore not yet eligible to vote under the Court's orders in *King v. O'Bannon*." Dkt. 258-16; *see also* Dkt. 257 at 3. But this not only misrepresents the scope of this Court's Order, *see* Dkt. 236 at 12:22-23 ("I have ruled that you can't disenfranchise them. That is the rule."), it also runs afoul of the NVRA. Those who are incarcerated for non-common-law felonies, like any

14

other individual with a non-common-law felony, meet Virginia's voter qualifications—because they cannot be and have not been lawfully disenfranchised—and are thus eligible to register.[5]

Certain incarcerated individuals are qualified to vote, both under longstanding Virginia law and as modified by this Court's Order. Virginia voters must be citizens of the United States, eighteen years of age or older, meet residency requirements, and cannot be adjudicated incompetent. *See* Va. Const. art. II, § 1.[6] And Article II, Section 1 of the Virginia Constitution also previously held that "[n]o person who has been convicted of a felony shall be qualified to vote" unless their rights were restored. *See id.* Under this provision, Virginians who are incarcerated for something other than a felony conviction remain eligible to vote and do vote. This includes Virginians in pretrial detention, Virginians with misdemeanor convictions, and Virginians whose voting rights were restored by the Governor upon release from incarceration but who were subsequently reincarcerated for a technical probation violation rather than a new felony conviction.

Now, after this Court held that the felony disenfranchisement provision of Article II, Section 1 violated the Virginia Readmission Act, the population of eligible incarcerated voters in Virginia has grown. Accordingly, this Court ordered that "the defendants SHALL not deny a person attempting to register to vote . . . except for convictions of the following common-law

---

[5] It is well established that people who meet state voter qualifications do not become disqualified simply because they are incarcerated. *See O'Brien v. Skinner*, 414 U.S. 524, 530-31 (1974) (explaining that plaintiffs in pretrial detention had a right to vote even though they were jailed because they were "under no legal disability impeding their legal right to register or to vote"); *Montgomery v. Whidbee*, No. 3:19-cv-00747, 2021 WL 780730, at *3 (M.D. Tenn. Mar. 1, 2021) ("Individuals who are otherwise entitled to vote do not lose that right because they are subject to pretrial detention.").

[6] The Constitution of Virginia states that registration is a qualification of voting, *see* Va. Const. art. II, § 1, but it also holds that otherwise qualified voters must be afforded an opportunity to register, *see* Va. Const. art. II, § 2 ("The General Assembly shall provide by law for the registration of all persons otherwise qualified to vote who have met the residence requirements contained in this article, and shall ensure that the opportunity to register is made available.").

15

felonies . . . ." Dkt. 223. Thus, now, otherwise eligible Virginians who have been convicted of non-disqualifying, non-common-law felonies also remain qualified to vote because they have no disqualifying convictions on their record. That fact remains true even if they are serving a sentence—including probation, parole, or prison—for such a conviction.[7]

Indeed, federal law requires that otherwise eligible voters in jails and prisons be allowed to register to vote. Under the NVRA, states must register eligible applicants who submit timely and valid voter registration forms. *See* 52 U.S.C. § 20507(a)(1) (requiring state officials to ensure that "any eligible applicant is registered to vote in an election" if they submit a valid voter registration form "not later than the lesser of 30 days, or the period provided by State law, before the date of the election"). The NVRA also requires that election officials "send notice to each applicant of the disposition of the[ir] application[s.]" 52 U.S.C. § 20507(a)(2). Thus, applications must be processed, and voters must be informed of the outcome of their attempt to register. To comply with the NVRA, then, Virginia must register eligible applicants who do not have a disqualifying conviction—*i.e.* who have not been convicted of a common-law felony—even if the applicant is incarcerated for that conviction. And, if officials determine an applicant's conviction is disqualifying, they must inform the applicant of the reason their registration application has not been accepted.

---

[7] Viriginia is not the only state where some but not all felony convictions are disqualifying, and in each of those states people serving time for non-disqualifying convictions are eligible to register to vote. *See, e.g.*, Ala. Const. art. VIII, § 177 (only disqualifying voters convicted of crimes "involving moral turpitude"); Miss. Const. art. 12, § 241 (disqualifying voters only for specific listed felonies, not including federal and out-of-state convictions); Miss. Code § 23-15-713 (same); *Middleton v. Evers*, 515 So. 2d 940, 944 (Miss. 1987) (same); Tenn. Code § 2-19-143(b); *Gaskin v. Collins*, 661 S.W.2d 865 (Tenn. 1983); *Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980); Alaska Const. art. V, § 2 (limiting disenfranchisement to "felon[ies] involving moral turpitude").

16

While the Court initially found it appropriate to afford Defendants discretion to implement its Order as applied to incarcerated would-be voters, the Commonwealth's adoption of a policy that *prohibits* the registration of eligible voters in contravention of federal law suggests that further instruction from this Court is now not only appropriate but required. *Amici* do not ask this Court to specify how voting from prison should work or the Defendants' obligations to facilitate it. Rather, they respectfully request the Court's next order simply clarify that *all* otherwise eligible individuals without disqualifying felonies are eligible and should be allowed to register to vote in Virginia, regardless of their incarceration status.

## CONCLUSION

This Court should grant Plaintiffs' motion to enforce the Court's Order.

/s/ *Shanna Ports*
Shanna Ports (VSB No. 86094)
Blair Bowie*
Valencia Richardson*
Dana Paikowsky*
Arianna Khan*
Nithin Venkatraman*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
sports@campaignlegalcenter.org
bbowie@campaignlegalcenter.org
vrichardson@campaignlegalcenter.org
dpaikowsky@campaignlegalcenter.org
akhan@campaignlegalcent.org
nvenkatraman@campaignlegalcenter.org

*Counsel for proposed amicus curiae Bridging the Gap in Virginia and League of Women Voters of Virginia*

*Motion to proceed *Pro Hac Vice* forthcoming

17

**CERTIFICATE OF SERVICE**

I certify that on July 17, 2026, I filed the above document with the Clerk of Court via delivery to the Court.

/s/ *Shanna Ports*
Shanna Ports