# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

TATI ABU KING, *et al.*,                    )
                                            )
      Plaintiffs,                      )
                                            )
v.                                          )    Civil Action No. 3:23-cv-408-JAG
                                            )
JOHN O'BANNON, in his official capacity as  )
Chairman of the State Board of Elections for )
the Commonwealth of Virginia, *et al.*,     )
                                            )
      Defendants.                      )

### DEFENDANTS' RESPONSE TO AMICI CURIAE BRIEF

Despite Bridging the Gap's dismissal from this case for lack of standing more than two years ago, it now returns as amicus, seeking a party-like role and asking the Court to expand the Final Order to encompass relief it could not pursue as a plaintiff. Amici do not merely offer legal perspective on the dispute before the Court. They advance new NVRA and constitutional claims, mischaracterize the record, and ask the Court to impose obligations the injunction nowhere contains. They then fault Defendants for not performing duties the injunction never imposed, on a timetable the injunction never set, in the midst of an active statewide election cycle. That is not enforcement of the Court's Order but rather an attempt to rewrite it.

Amici's requested relief demonstrates an effort to litigate a new case inside this one. They ask for "a new order" granting "specific relief" not only to enforce the Final Order, but also to make Virginia's implementation purportedly comply with the National Voter Registration Act ("NVRA") and other federal law. Dkt. 259-1 at 7. The brief advances multiple non-pleaded NVRA theories, a First and Fourteenth Amendment theory, a new categorical methodology drawn from federal sentencing and immigration cases, and a renewed demand concerning incarcerated voters that this Court has repeatedly rejected. It also relies on alleged injuries to non-party organizations

1

and uses unsworn advocacy letters as evidentiary support. It then asks the Court to impose relief those new claims supposedly require in the middle of the 2026 midterm election cycle while disclaiming any request for adjudication "on the merits." *Id.* at 8–9. That is not a meaningful distinction. Amici are asking for merits relief without pleadings, a party with standing to seek relief, evidence, discovery, or the adversarial process that merits adjudication requires.

The effort is especially improper because this Court has already rejected it. The Final Order resolved one claim under the Virginia Readmission Act and imposed one operative command: Defendants may not deny registration or cancel an existing registration except for convictions of the eleven enumerated common-law felonies. Dkt. 223 at 2. When the Plaintiffs later attempted to enlarge that judgment, the Court stated that they were "jockeying for relief not granted earlier," held that the injunction "does not address how prisoners register or vote, and imposes no duties on the defendants in that regard," and declined to direct state election officials how to implement the clear injunction. Dkt. 235 at 2–5. At the March hearing, the Court was even more direct in stating that the incarceration issue "wasn't part of the relief [Plaintiffs] requested," was "not even on anybody's radar," and "is just not going to be part of the relief anybody gets in this case." Dkt. 236 at 9, 12. Amici nevertheless ask for that same relief under a new statutory label.

The Court should reject this attempted end-run around the pleadings, standing, the judgment, and its prior rulings. It should decline to adjudicate amici's independent NVRA and constitutional theories, re-visit incarcerated voter relief, or treat their unsworn factual assertions as evidence. Nor should it dictate statewide election-administration changes while election officials are administering the August 4 primary and preparing for the November general election. The Court should decide Plaintiffs' motion under the Final Order actually entered and the sworn record before it. On that record, the motion to enforce should be denied.

2

## ARGUMENT

**I.    Amici cannot use a purported "enforcement" proceeding to litigate a new case.**

### A. Bridging the Gap cannot use amicus status to obtain the party-like role it was denied for lack of standing.

Bridging the Gap is not a stranger offering a neutral perspective on this litigation. It was a named plaintiff, and the Court dismissed it for lack of standing in March 2024, leaving only King and Johnson's equitable Virginia Readmission Act claim. Dkt. 222 at 8; *see* Dkts. 88-89. Amici acknowledge that dismissal but attempt to turn it into a credential. They say that Bridging the Gap's interests were "not sufficient to allow [it] to serve as [a] plaintiff," yet make it "well positioned" to return as amicus on the NVRA. Dkt. 259-1 at 6 n.2.

An amicus need not independently establish Article III standing merely to offer legal views. But that principle does not permit a dismissed plaintiff to return through the side door, re-assert its own purported organizational injuries, and obtain relief on claims it lacked standing to pursue. The brief relies repeatedly on alleged harm to Bridging the Gap and the League. They claim that their work is supposedly "chilled"; they cannot advise voters; their programs are burdened; and their members and volunteers fear giving incorrect advice or causing applicants to make mistakes. *Id.* at 7-8. Those are party-like injury allegations offered to justify party-like relief, not neutral amicus expertise.

The League is in no better position to obtain relief. It has not intervened, filed a complaint, established organizational or associational standing, or subjected its allegations to evidentiary testing. Yet amici ask the Court to alter Virginia's forms, procedures, offense-classification methodology, and treatment of incarcerated applicants to redress the organizations' asserted injuries. Article III standing is not dispensed in gross. At least one plaintiff must have standing to seek each distinct form of relief requested. *See, e.g.*, *Town of Chester v. Laroe Estates, Inc.*, 581

U.S. 433, 439–40 (2017).  Amici may assist the Court with a dispute properly before it, but they cannot supply a new plaintiff, a new injury, a new cause of action, and a new remedy.

**B. The amicus brief introduces independent claims that were never pleaded or adjudicated.**

The only merits claim adjudicated in this case was King and Johnson's equitable claim under the Virginia Readmission Act.  Dkt. 222 at 8; Dkt. 223 at 2.  The operative complaint did not assert, and the judgment did not adjudicate, liability under the NVRA, the First Amendment, or the Fourteenth Amendment.  Amici also invoke the Help America Vote Act as statutory support and attach a separate NVRA public-disclosure dispute, but neither is part of the judgment.  Yet amici's three argument sections are expressly framed as independent federal law commands.  They argue that the voter-registration application allegedly violates federal law, that the supplemental process allegedly violates federal law and the Constitution, and that federal law allegedly requires registration of incarcerated applicants.  Dkt. 259-1 at 12–22.

Those theories are not incidental background.  Amici invoke numerous distinct provisions of the NVRA governing motor-vehicle applications, designated public agencies, the Federal Form, state forms, acceptance and use of applications, uniform and non-discriminatory administration, and disposition notices.  Their attached notice letters add a separate public-disclosure dispute.  They also add a First and Fourteenth Amendment challenge under *Burdick v. Takushi*, 504 U.S. 428 (1992).  They propose an elements-only categorical approach based on federal criminal and immigration decisions.  And they seek relief for incarcerated people whose registration and voting were never litigated in this case.  Each theory presents distinct questions of standing, notice, statutory interpretation, evidence, defenses, and remedy.  None can be adjudicated by injecting it through an amicus brief into a post-judgment proceeding to enforce a judgment on a different claim.

Amici's own notice letters expose the attempted shortcut.  The June 3 letter invokes the NVRA's private-enforcement notice provision, gives the Commonwealth a cure period, demands records, and threatens separate litigation.  Dkt. 259-2 at 2-10.  The June 26 letter repeats those allegations, asserts continuing NVRA violations, adds a public-disclosure dispute, and proposes remedies.  Dkt. 259-3 at 2-8.  Amici plainly understand that these are independent claims governed by Congress's prescribed process.  They cannot treat the theories as separate causes of action when serving statutory notice, then re-label them as "implementation" concerns when asking this Court to impose immediate relief without a complaint or merits record.

Their disclaimer confirms rather than cures the defect.  Amici say they raise these issues "not for adjudication on the merits in this venue at this stage," but ask the Court to craft "supplementary Orders" that provide "legally compliant relief" and "preempt[] additional violations of federal law."  Dkt. 259-1 at 8–9.  Elsewhere they ask for "a new order" granting "specific relief" to ensure NVRA compliance.  *Id.* at 7.  A non-party cannot avoid the requirements for adjudicating a claim by disclaiming "merits" adjudication while demanding the precise relief that the alleged claim supposedly requires.

**C.  The Court should not allow amici to displace the parties and re-define the case.**

Federal courts follow the principle of party presentation.  Parties represented by competent counsel frame the issues for decision and courts ordinarily serve as neutral arbiters of the matters the parties present.  *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-76, 379 (2020).  That principle is especially important here.  Plaintiffs are represented by multiple sophisticated legal organizations.  They fully briefed the motion to enforce and argued it at a hearing.  To the extent amici repeat Plaintiffs' arguments about forms, supplemental review, offense lists, and registrar

5

guidance, the brief is cumulative.  To the extent amici add NVRA claims, constitutional claims, prison-registration relief, or a new categorical methodology, the brief changes the case.

The Court has already recognized that danger.  In denying post-judgment clarification, it explained that Rule 59(e) cannot be used "to raise arguments which could have been raised prior to the issuance of the judgment" or "to argue a case under a novel legal theory that the party had the ability to address in the first instance."  Dkt. 235 at 3 (quoting *Pac. Ins. Co. v. American National Fire Insurance Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).  The same defect does not disappear because the novel theories now come from amici rather than Plaintiffs.  Amicus status is not a procedural laundering device for claims that no party pleaded and the Court did not adjudicate.

## II.    Amici ask the Court to enforce duties the judgment does not contain and that the Court has already declined to add.

### A.  Amici's "nearly six months" accusation re-writes the judgment.

Amici's central accusation is that, "[d]espite having nearly six months to prepare for implementation," Virginia failed to update its voter-registration materials "to comply with this Court's Order."  Dkt. 259-1 at 8.  The accusation depends on silently inserting amici's preferred duties into the Order.  The Court's Order did not prescribe particular form language, require changes to Federal Form instructions, adopt a single statutory list, prohibit supplemental review, require an ACCA-style categorical approach, mandate public disclosures to advocacy organizations, or establish registration and voting procedures for incarcerated people.  It ordered that Defendants not deny or cancel registration except for convictions of the eleven identified common-law felonies.  Dkt. 223 at 2.

The April stipulation does not say otherwise.  It indicated that Defendants were undertaking review of potential implementation steps, including updating voter-registration forms and voter-

6

education materials, re-building the prohibited table, modifying VERIS, and preparing guidance. Dkt. 238 at 2-3. It did not convert those descriptions into a consent decree prescribing amici's preferred language, methodology, or timetable. The stipulated extension moved the implementation deadline. It did not amend Dkt. 223 to add the detailed commands amici now claim Defendants had six months to perform.

This Court has already distinguished the injunction from amici's preferred administrative code. In March, it held that the injunction stated a clear rule and declined to "pore over the entirety of the Virginia Code." Dkt. 235 at 4-5. It explained that the implementation period allows ELECT to issue operating guidelines or regulations, but that, "[a]bsent a more concrete dispute," the Court would not tell state election officials "how to most efficiently implement the clear injunction." *Id.* at 5. At the July hearing, the Court again stated that it "didn't tell the State Board how to deal with local registrars," "didn't tell the local registrar how to deal with people, [or] what forms to use," because election administration is "the State's business." July 9, 2026 Tr. 51:3-10.

Defendants, meanwhile, have spent months developing a statewide process designed to implement the Final Order consistently with state and federal law. Even while administering active statewide elections, ELECT has centralized review of felony-related applications, coordinated the use of VSP criminal-history and DOC incarceration information, established workflows for unresolved applications, issued written and public-facing guidance, and supported all 133 local registrars through regional Elections and Registration Specialists. Dkt. 258 ¶¶ 6–12, 23. The sworn record also explains that significant changes to statewide election systems and forms require months of design, interagency coordination, testing, and implementation, particularly during active elections. *Id.* ¶¶ 34–82.

7

Amici's brief treats those operational realities as beside the point and asks the Court to displace the Commonwealth's statewide process with their own preferred system during active elections.    But amici offer no sworn evidence addressing the technical consequences, implementation time, or election-administration risks associated with the changes they demand. Their policy disagreement does not authorize the Court to assume control over election administration or convert their preferred process into a command of the Final Order.

**B. The incarcerated voter request directly contradicts the Court's prior rulings.**

The clearest example is amici's demand that the Court order registration of incarcerated applicants.  This is not an issue the Court left open for amici to complete.  The Court considered and rejected Plaintiffs' attempt to add it after judgment.

The March Memorandum Order began by observing that "[i]t is apparent that the parties are jockeying for relief not granted earlier."  Dkt. 235 at 2.  It explained that Plaintiffs were asking the Court "to tell the electoral officials how and when to allow prisoners to vote," although "during the litigation of the merits of this case, they sought only an end to automatic disenfranchisement." *Id.*  Because the parties had not developed the issue, the Court declined to address a question that had not been squarely presented before judgment.  *Id.* at 3.  It then removed any possible doubt: "To be clear, the injunction does not address how prisoners register or vote, and imposes no duties on the defendants in that regard."  *Id.* at 4.

The hearing transcript is more explicit still.  When Plaintiffs insisted that the requested injunction had been broad enough to include incarcerated voting, the Court responded: "You didn't ask, you didn't ask that.  It wasn't part of the relief you requested."  Dkt. 236 at 9:2-3.  The Court explained that the mechanics and security of prison voting "was just not even on anybody's radar when this case was brought."  *Id.* at 9:9-14.  The Court then held that its Order "just doesn't"

8

address voting while in custody because "it wasn't an issue that was litigated." *Id.* at 12:10-16. It refused to issue an advisory opinion without evidence and ruled that incarcerated voting "is just not going to be part of the relief anybody gets in this case." *Id.* at 12:17-23. The Court concluded by warning Plaintiffs not to "stretch" their victory "into something that [they] didn't ask for before." *Id.* at 16:19-22.

Amici's brief materially misstates that history. It says the Court "initially found it appropriate to afford Defendants discretion to implement its Order as applied to incarcerated would-be voters." Dkt. 259-1 at 22. The Court found no such thing. It held that the Order did not address prisoner registration or voting, imposed no duties in that regard, and would not be enlarged to decide an issue that was never litigated. Dkt. 235 at 3-4; Dkt. 236 at 9-12. And at the July hearing, the Court reiterated that Plaintiffs had "tried to sneak in stuff, like how to conduct elections in prisons," and that it was "not part of the injunction." July 9, 2026 Tr. 51:15-20.

Amici cannot erase those rulings by asking the Court's next order to "simply clarify" the issue or by placing the request under an NVRA heading. Dkt. 259-1 at 22. It is the same demand for new relief, now re-packaged under a new statutory theory and supported by authorities no party previously litigated. The Court has already ruled that this issue does not belong in this case.

## C. Amici's remaining demands likewise modify rather than "enforce" the injunction.

The same problem infects amici's form, supplemental review, and offense classification theories. The injunction does not order Defendants to use amici's preferred voter-registration question, revise Election Assistance Commission instructions, eliminate follow-up requests, publish one conclusive list, or decide modern statutory offenses under the federal categorical approach. Those may be policy proposals or subjects for separate litigation. They are not terms of the Court's injunction order.

9

Amici's categorical theory is a clear attempt to add a new merits rule. In a footnote, they invoke *Moncrieffe*, *Descamps*, *Johnson*, *Nijhawan*, *Shepard*, and *Taylor* to argue that common-law correspondence must be decided from statutory elements alone and that any broader modern offense must be treated as non-disqualifying. Dkt. 259-1 at 14 n.4. Those cases interpret different federal statutes in sentencing and immigration contexts. The Final Order did not adopt their methodology, prohibit review of conviction information, or decide how each modern Virginia, federal, or out-of-state offense maps onto the eleven historical categories. Amici are not interpreting an existing command. They are proposing a new one.

The Court's prior rulings again confirm the boundary. It refused to adopt either Plaintiffs' list of ninety-six offenses or their expert's 238 uncertain offenses. Dkt. 236 at 16:9-18. It declined to pore over the Virginia Code and trusted state officials to align the registration system with the injunction. Dkt. 235 at 4-5. At the July hearing, the Court again acknowledged that its order did not specify the administrative details Plaintiffs sought, and Plaintiffs' counsel agreed that "the injunction itself does not command the state to take these specific steps." July 9, 2026 Tr. 40:23-41:6.

The Court may, of course, evaluate a concrete allegation that Defendants denied an eligible applicant in violation of Dkt. 223. But amici do not identify such a case as the basis for their new federal claims. They ask the Court to re-design the entire administrative process according to duties that the judgment never imposed. That is modification, not enforcement.

III.  **Amici's unsworn assertions are not evidence, and their factual presentation materially distorts the record.**

   A. **The brief and notice letters cannot substitute for evidence.**

The Court directed Defendants to submit sworn factual information and the operative lists, forms, instructions, and process documents. Defendants did so. Dkts. 257-58. Amici responded

10

with a brief containing unsworn assertions about organizational injury, voter deterrence, available government records, processing delays, prison administration, and the number of potentially affected voters. They attached their own demand letters, written by advocates to state officials, as support. Dkts. 259-2, 259-3.

An amicus brief is not evidence. Neither are counsel's notice letters. Amici submitted no declarations from the organizations, their members, incarcerated applicants, election administrators, criminal-record custodians, or anyone with personal knowledge of the facts they assert. The Court should not treat advocacy assertions as counterevidence to the sworn Coles Declaration and the actual operational materials filed. That is especially true where amici seek relief based on alleged injuries and factual propositions that have never been tested through pleading, discovery, or testimony.

### B. Amici materially distort the current record.

Several of amici's central factual assertions are unsupported, materially incomplete, or directly contradicted by the record.

*First*, amici describe the supplemental process without acknowledging the centralized screening that precedes it. ELECT first reviews incomplete applications against VSP criminal-history information and DOC incarceration information. If those records establish that an applicant has only non-common-law felony convictions and is otherwise eligible, ELECT directs the registrar to approve the application. A supplemental form is requested only when the available information remains inconclusive, including when an offense requires further evaluation or the applicant has a federal or out-of-state conviction. Dkt. 258 ¶¶ 8–10. Thus, the supplemental form is not the Commonwealth's first or automatic response to every applicant who reports a felony conviction.

11

*Second*, amici repeatedly describe the supplemental process as "indefinite limbo." Dkt. 259-1 at 14. That characterization omits the sworn estimate that review generally takes approximately two weeks after ELECT receives a completed supplemental form. The Coles Declaration states that, based on current practice, ELECT generally expects review, in consultation with OAG, to take approximately two weeks after receipt of a completed supplemental form, subject to the completeness of the submission and the need for additional records. Dkt. 258 ¶ 10. Amici may challenge that estimate in a proper case with evidence, but they cannot simply omit it and present the opposite assertion as fact.

*Third*, amici claim Virginia failed to build a "workable system." Dkt. 259-1 at 7. The record contains a centralized process, a prohibited-table screen, VSP and DOC cross-checks, written advisories, a detailed process document, a locality question-and-answer document, supplemental forms, OAG review, registrar specialists, public-facing guidance, and registrar support channels. Dkt. 258 ¶¶ 6–12 & Exs. I–Q. Amici may dislike the system, but saying there is no workable system is not a reasonable description of the record.

*Fourth*, amici assert that "potentially hundreds of thousands" of eligible voters may be prevented or discouraged from registering. Dkt. 259-1 at 8. Yet they identify no applicant and submit no declaration, dataset, or other evidence showing that anyone has actually been prevented or discouraged from registering to vote by any present feature of Virginia's registration process. Their assertion is unsupported speculation and should be disregarded.

*Finally*, amici's assertion that the Court previously afforded Defendants discretion to implement the Order "as applied to incarcerated would-be voters" is directly contradicted by the Court's written and oral rulings. Dkt. 259-1 at 22; Dkt. 235 at 3-4; Dkt. 236 at 9-12. That is not a

minor disagreement over characterization.  It is the premise for amici's request that the Court revisit an issue it already excluded from this case.

### C. The Court need not adjudicate amici's disputed substantive theories to reject their attempted expansion.

Defendants do not ask the Court to resolve the merits of amici's newly announced NVRA and constitutional theories in this response.  Those theories raise substantial, disputed questions, including whether the NVRA's "accept and use" provisions forbid every post-application request for information; whether an application disclosing a felony conviction but identifying no offense is complete for eligibility purposes; what information is genuinely necessary for federal and out-of-state convictions; whether the challenged process is a voter roll maintenance program under 52 U.S.C. § 20507(b); and whether any party before the Court has standing to obtain each requested remedy.  Those questions cannot responsibly be resolved through an amicus brief in a post-judgment enforcement proceeding.

Nor does Defendants' recognition that forms and procedures can be administratively refined concede an injunction violation or place new constitutional claims within the judgment. The Court can distinguish between operational improvement and judicial non-compliance. Amici's preferred administrative system is not part of the injunction simply because amici insist it would be better.

### CONCLUSION

For these reasons, the Court should reject amici's attempt to expand this case beyond the injunction entered.  It should decline to adjudicate amici's independent NVRA and constitutional claims, decline to revisit incarcerated-voter relief that the Court has already ruled is not part of this case, decline to treat the amicus brief and notice letters as evidence, and deny Plaintiffs' motion.

13

Dated: July 28, 2026

Respectfully submitted,

JOHN O'BANNON
ROSALYN R. DANCE
GEORGIA ALVIS-LONG
CHRISTOPHER P. STOLLE
SALLY HUDSON
STEVEN KOSKI
ERIC SPICER
SANDY C. ELSWICK

By: ___*/s/ Ethan P. Fallon*___

ETHAN P. FALLON (VSB No. 102491)
 *Deputy Solicitor General*

JAY JONES
 *Attorney General*

TRAVIS G. HILL
 *Chief Deputy Attorney General*

TILLMAN J. BRECKENRIDGE (VSB No. 84657)
 *Solicitor General*

TRISTON C. O'SAVIO (VSB No. 100111)
 *Assistant Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-9527 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on July 28, 2026, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notice of the filing (NEF) to all parties

of record.


                                          */s/ Ethan P. Fallon*
                                          Ethan P. Fallon (VSB No. 102491)
                                          *Deputy Solicitor General*