IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TATI ABU KING, *et al.*,
Plaintiffs,

v. Civil Action No. 3:23cv408

JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections for the Commonwealth of Virginia, *et al.*,
Defendants.

**OPINION**

In 1870, Congress passed a clear rule to protect formerly enslaved people: Virginia cannot change its state constitution to deprive any citizen of the right to vote, "except as punishment for such crimes as are now felonies at common law." Act of Jan. 26, 1870, ch. 10, 16 Stat. 62, 63 (1870). For many years, Virginia ignored that rule and disenfranchised *all* felons. In January 2026, this Court directed the defendants, a group of Virginia election officials ("the defendants" or "the Commonwealth"),[1] to finally adhere to that rule. Under this Court's injunction, Virginia may only disenfranchise people convicted of common-law arson, burglary, prison escape or rescue, larceny, manslaughter, mayhem, murder, rape, robbery, sodomy, or suicide. Disenfranchisement for other crimes contravenes Congress's rule.

Since the injunction issued, however, the parties and others have tried to complicate matters. First, the Commonwealth has taken this rule to a ridiculous extreme. In implementing the injunction, the defendants have decided that a litany of statutory offenses with no common law equivalents can support disenfranchisement. Second, the named plaintiffs—Tati Abu King and

[1] For a complete list of defendants, see ECF No. 222, at 2 n.2

Toni Heath Johnson—and two *amici curiae* have asked the Court to allow incarcerated individuals to vote, a question not discussed during the merits of this case. Despite a prior order in this case dealing with both issues, the parties press on.

Now, King and Johnson have moved to enforce the Court's final order and injunction. (ECF No. 239.) They believe the Commonwealth failed to expeditiously register the named plaintiffs and update its registration forms, election websites, or guidance to local registrars. Crucially, the plaintiffs and defendants still dispute what statutory felonies would count as felonies at common law in 1870. Finally, the plaintiffs' *amici* again raise the issue of voting from prison, among other problems.

The Court will deny in part and grant in part the plaintiffs' motion. To the extent the plaintiffs ask it to re-write the Commonwealth's election forms, website, notices, or guidance, the Court will decline at this time to meddle in the internal election processes of a state. The Court, however, will explain again why the Virginia Readmission Act permits Virginia to disenfranchise *only* for common law felonies. Given that most statutory felonies contain elements not found in common-law crimes, the Act and injunction permit disenfranchisement for a narrow list of eleven common-law felonies. Accordingly, the Court will grant the motion to the extent that it asks the Court to confirm the scope of its injunction.

## I. BACKGROUND

### *A. Relevant Procedural Background*

The named plaintiffs[2] filed this class action on June 23, 2023. (ECF No. 1.) They claimed that a federal law prevents Virginia from disenfranchising all felons under Article II, § 1 of the

---

[2] This suit initially involved two other plaintiffs. For various reasons, these plaintiffs are no longer parties to the case. The Court, however, recently permitted one of these previous plaintiffs, Bridging the Gap in Virginia, to file an *amicus curiae* brief.

Virginia Constitution. (*See generally* ECF No. 96.) Section 1 disenfranchised any person "convicted of a felony," unless the "Governor or other appropriate authority" restored his or her right to vote. Va. Const. art. II, § 1.

King and Johnson ultimately prevailed. On January 22, 2026, the Court certified a proposed class and granted summary judgment for the plaintiffs. Under the Readmission Act, Virginia can disenfranchise only for convictions of eleven common-law felonies. (ECF No. 222, at 33–37.) King and Johnson's prior drug crimes, for which they lost the right to vote, did not number among those eleven felonies. Accordingly, the Court entered an injunction, which reads in relevant part:

> The Court DECLARES that the defendants have violated the Virginia Readmission Act. Accordingly, the Court PERMANENTLY ENJOINS the defendants from using Article II, § 1 of the Virginia Constitution to violate the Virginia Readmission Act. Consequently, by May 1, 2026, the defendants SHALL not deny a person attempting to register to vote or cancel a person's existing registration except for convictions of the following common-law felonies: (1) arson; (2) burglary; (3) escape and rescue from a prison or jail; (4) larceny; (5) manslaughter; (6) mayhem; (7) murder; (8) rape; (9) robbery; (10) sodomy; and (11) suicide.

(ECF No. 223, at 2.)

The defendants did not appeal. Instead, on February 19, 2026, the defendants asked the Court to clarify (1) whether the injunction required Virginia to allow incarcerated individuals to vote and (2) what modern felonies counted as felonies at common law in 1870. (ECF No. 228.) After a hearing, the Court found that neither question needed clarification. First, the injunction did not "address how prisoners register or vote" because the parties "neglected to articulate fully any argument concerning the propriety of incarcerated individuals' voting" during the merits of the case. (ECF No. 235, at 4.) Second, the Court "entered a clear injunction from which the defendants can discern a rule" to determine what statutes, if any, count. (*Id.* at 4–5.)

On April 28, 2026—just three days before the injunction's compliance date—the parties jointly moved to extend the implementation deadline by a month. (ECF No. 237.) The Court extended it to June 1, 2026. (ECF No. 238.)

***B. The Commonwealth's Attempts at Implementation***

Problems began just after the compliance deadline. For one, Virginia's voter registration form remained unchanged. (*See* ECF No. 258-4.) Prior to the Court's injunction, the form asked whether an applicant had been convicted of a felony and whether the Governor had restored the applicant's rights. Now, after the implementation deadline, the form still asks these questions. (*Id.*) Further, the plaintiffs received word that the Commonwealth had yet to update its official list of ineligible felons to account for the Court's order. (ECF No. 241 ¶ 7.) Finally, several official voting webpages, such as the Virginia Department of Election's "Frequently Asked Questions" page, continued to state that all felons could not register without permission from the Governor. (*See* ECF Nos. 240-6, 240-7.)

More troublingly, the named plaintiffs themselves struggled to register. On June 2, 2026, King went to register at the Fairfax County Elections Office. (ECF No. 241 ¶ 3.) When he filled out the unchanged registration form, an office worker initially explained that his felony status would void the application and that he needed to request restoration from the Governor. (*Id.* ¶ 6.) After much back and forth, workers placed King's application on hold. (*Id.* ¶ 8.) Three weeks later, on June 29, 2026, King saw that his "registration portal became active," but he had not received official notice from the Commonwealth. (ECF No. 248, at 2 n.3.) Johnson faced similar troubles. Despite an Opinion and Order explaining that she had the right to vote, the Commonwealth also placed her application on indefinite hold. (ECF No. 242 ¶ 6.) Throughout

both registration attempts, election workers told King and Johnson that the workers still needed guidance from the Commonwealth. (*See id.*; ECF No. 241 ¶ 7.)

Other class members also met registration challenges in June 2026. For example, the online voting form prevented at least two class members[3] from registering. (ECF No. 244 ¶ 13; ECF No. 245 ¶ 7.) These class members answered that they were felons whose rights the Governor had not restored, and the online form would not allow them to proceed.

Further, the plaintiffs believe the Commonwealth has adopted a set of rules that fail the Court's injunction. When a person with a statutory felony conviction applies to vote, the Commonwealth slots his or her conviction into one of three categories: convictions for (1) crimes inapplicable to common-law felonies in 1870; (2) crimes applicable to common-law felonies in 1870, (ECF No. 240-11); and (3) crimes that require an individual evaluation, (ECF No. 240-12). As the Commonwealth sees it, the Court's injunction protects people in the first group but does not protect people in the second. The Commonwealth believes only individual evaluation will tell whether people in the third group can register.

To accomplish this individual evaluation, the Commonwealth provides registrants with a form to supplement their applications so they can provide further information about their convictions. The defendants, however, have not articulated what criteria would allow some people in the third category to vote.

All told, the Commonwealth believes 181 Virginia statutory felonies automatically disqualify voters and 103 might disenfranchise them. (*See* ECF Nos. 240-11; 240-12.)

[3] One member purports to have a conviction for sexual battery under Virginia Code § 18.2-67.1, and the other says he was convicted of several drug crimes. Accordingly, they would fall into the class.

### *C. The Instant Motion*

On June 18, 2026, the plaintiffs filed the instant motion. (ECF No. 239.) They ask the Court to require the Commonwealth to revise the registration form, fix its websites, correct its list of disqualifying felonies, issue instructions to registrars, prevent misinformation, provide affirmative notice to potential class members, and take other steps to comply with the Court's order. (*See* ECF No. 239-1.)

The Commonwealth filed a reply in which it explained that many of the problems have been corrected. Websites no longer show incorrect information, and the online form no longer automatically stops felons from registering. (ECF No. 247, at 4–5.) The Commonwealth also indicated that it has updated its list of prohibited voters. (*Id.*) Still, the Commonwealth refuses to update the registration forms to prevent ordinary voters from having to guess whether they were convicted of a common-law felony. (*Id.* at 6.) It also declined to update its list of what statutory felonies count as common-law felonies. (*Id.* at 7–8.) Finally, the Commonwealth noted that Virginians would soon vote on a constitutional amendment to allow all non-incarcerated felons to vote, which they believe would moot the injunction. (*Id.* at 9.)

The Court held a hearing on the instant motion on July 9, 2026. At the hearing, the plaintiffs' counsel informed the Court that the Commonwealth had finally permitted both King and Johnson to register to vote.

About a week after the hearing, two voting rights groups—Bridging the Gap in Virginia and the League of Women Voters of Virginia—filed an *amici* brief. (ECF No. 259-1.) They offer additional legal argument explaining why Virginia's unchanged registration form violates federal law independent of the Court's injunction or the Virginia Readmission Act. (*Id.* at 12–19.) They also argue federal law permits otherwise eligible voters to vote in jail or prison. (*Id.* at 19–22.)

## II. DISCUSSION

The parties and *amici* have identified three types of trouble. First, the parties quibble over practical problems associated with forms drafted and procedures executed by state election officials. Second, the plaintiffs and *amici* contend that the Commonwealth has independently violated federal law while implementing the injunction by providing insufficient means of registration and failing to allow the registration of incarcerated individuals. Third, and most importantly, the parties continue to contest what modern statutory felonies constitute felonies at common law in 1870.

Out of deference to states' powers over elections, the Court will not now grant the requested relief regarding the first set of problems. Further, the Court will not opine on theories of law and causes of action not brought earlier in this case. The Court, however, will explain again why Virginia may disenfranchise *only* for convictions of common-law felonies.

### *A. Practical Problems*

If the Court granted the plaintiffs' requested relief on the practical problems, the federal judiciary would commandeer a process that principles of federalism and practical wisdom usually leave to states. Accordingly, the Court will decline at this time to direct the requested changes.

When considering whether to direct a state's election processes, courts should begin by noting that states enjoy considerable power in directing elections. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (allowing states authority in setting time, manner, and place of elections). This power ensures that elections "are operated equitably and efficiently." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Accordingly, courts must carefully assess whether the law truly requires federal courts to strike down or materially change a state's internal elections processes. *See id.* (explaining simply a barrier to voting "does not itself compel close scrutiny" absent large burdens (citation omitted)).

Here, the Court finds no reason to substitute Virginia's judgment for its own. True, the Commonwealth lagged—sometimes egregiously so—in implementation. They failed to register the named plaintiffs, left misinformation on their webpages, and prevented class members from registering online. But the parties agree the Commonwealth fixed these failures. Further, for reasons of comity and practicality, the Court will not often direct the wording of state forms, websites, notices, or guidance. Accordingly, the Court will not grant such relief at this time.

No one can ignore, however, the implicit messages in the Commonwealth's registration forms and processes. They discourage felons from participating in the electoral system by suggesting to registrants that any felony conviction is relevant to a person's ability to vote and by holding up the registration process for further examination of felony records. The Commonwealth has represented that it is working to remedy these issues. Continued discouragement of registration by felons may eventually justify judicial intervention.

***B. Alleged Violations of Federal Law***

The plaintiffs and their *amici* claim that the Commonwealth's registration process violates the National Voter Registration Act, among other federal laws. (ECF No. 248, at 12 n.7; *see generally* ECF No. 259-1.) Further, the *amici* contend federal law requires the Commonwealth to register incarcerated individuals. (ECF No. 259-1, at 19–22.)

Again, little reason exists to discuss the issue of incarcerated voting. As stated in a previous order, "the Court declines to elaborate on a question not squarely brought prior in the litigation." (ECF No. 235, at 4 (citing *Westport Ins. Co. v. Albert*, 208 F. App'x 222, 227 (4th Cir. 2006).) The Court is now less inclined to elaborate when two non-parties to the case resurrect an issue already ruled on. But, for the sake of clarity, the Court reiterates only that "the injunction does not

address how prisoners register or vote, and imposes no duties on the defendants in that regard." (*Id.*)

As for the other alleged violations of federal law, the Court again will not provide a remedy for "legal issues [a party] has never actively argued, pursued, or briefed before in th[e] case." *Landfall Trust LLC v. Fidelity Nat'l Title, Ins. Co.*, No. 3:23cv194, 2023 WL 8374731, at *2 (E.D. Va. Dec. 4, 2023). Here, the plaintiffs' complaint only asked the Court to assess whether Virginia complied with the Virginia Readmission Act. The Court answered that question. Even when the plaintiffs moved to enforce the injunction, they did not ask whether Virginia independently violated federal law. In fact, they did not raise that possibility until their response brief on the instant motion. Accordingly, the Court will not now answer a question untimely raised before it.

### *C. List of Felonies*

The parties still dispute what modern statutory felonies would have counted as common-law felonies in 1870. In some sense, this quarrel has led to the other delays and failures in implementation that trouble the plaintiffs. If the Commonwealth had a clearer understanding of what the Virginia Readmission Act allows, it could have offered clearer guidance to registrars and potentially avoided its problematic individual-evaluation scheme. Instead, the Commonwealth inexplicably believes it can disenfranchise citizens for convictions of up to 284 statutory felonies. This defies the Court's final order, which has clearly stated—since January 22, 2026—that the Commonwealth can only disenfranchise for "convictions of [eleven] common-law felonies." (ECF No. 223, at 2.)

Over the years since Congress enacted the Virginia Readmission Act, there have been various permutations of those eleven offenses—but that Act only deals with the eleven basic, unadorned common-law felonies, as defined in 1870. Again, those felonies are common-law

arson, burglary, escape or rescue from prison or jail, larceny, manslaughter, mayhem, murder, rape, robbery, sodomy, or suicide. Virginia can choose to make people convicted of those eleven crimes ineligible to vote.

People convicted of other crimes, however, are eligible to vote. For instance, the Virginia Code criminalizes the premeditated, willful killing of a "pregnant woman." Va. Code Ann. § 18.2-31(11). Common-law murder, however, requires only the killing of someone with malice aforethought. *Wooden v. Commonwealth*, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981). In other words, the statute requires an element—the pregnant victim—not present at common law. Thus, someone convicted under this statute can register to vote.[4] In another example, a Virginia statute outlaws the use of tear gas to injure someone else. Va. Code Ann. § 18.2-312. Perhaps a court *could* find someone guilty of common-law mayhem for using noxious gases to harm another, but a person found guilty of § 18.2-312 is not a person found guilty of common-law mayhem. That person can vote, too. As a final illustration, Virginia might wrongfully disenfranchise someone for the crime of participating in a violent criminal act of a street gang. *See* Va. Code Ann. § 18.2-46.2(A)(ii); ECF No. 258-2, at 5. No common-law felony requires as an element participation in a street gang, and the Readmission Act does not permit disenfranchisement for any factual circumstance that *might* have given rise to a common-law felony conviction. Accordingly, no person convicted of criminal participation in a street gang would lose the right to vote.

A strict construction of the Virginia Readmission Act requires this result. As the Court previously explained,

[4] This assumes that the registrant meets other valid criteria under state and federal law, such as age or residency. Nothing in this Opinion, or any proceeding Opinion or Order in this case, takes a position on the validity of means of disenfranchisement other than felony status under the Virginia Readmission Act.

> Congress's use of the phrase "as are *now* felonies *at common law*" confirms that this statute meant to place a ceiling on Virginia's authority over the franchise. First, Congress placed a temporal limitation on Virginia's authority, suggesting a curtailment on the Commonwealth's power to disenfranchise. Further, the text opts for a more restrictive number of felonies—those only at common law—for which Virginia may disenfranchise citizens.

(ECF No. 222, at 28 (internal citations omitted).) In short, the text of the Act substantially limits the number of crimes for which Virginia can disenfranchise its citizens. This limit also fulfills the clear congressional intent of preventing the Virginia legislature from creating new felonies with which it could rob freedmen of the right to vote. (*Id.* at 32.)

As long as the Virginia Readmission Act stays in force,[5] the Commonwealth can only deny or cancel a person's voting registration if that person has a conviction for a common-law felony. Disenfranchisement for any other sort of felony violates the Readmission Act.

## III. CONCLUSION

This case is simple. The Virginia Readmission Act gives a straightforward rule, and this Court's injunction reflects that rule. Virginia can freely choose to disenfranchise a person convicted of one of the eleven common-law felonies. But Virginia may not use any other felony conviction as a grounds for disenfranchisement.

For the reasons stated above, the Court will deny in part and grant in part the motion to enforce the injunction. (ECF No. 239.)

---

[5] The Commonwealth contends that the Court's injunction "will be moot" if registered voters approve a pending constitutional amendment. (ECF No. 247, at 9.) This sentiment misunderstands the force of the Virginia Readmission Act and the scope of the injunction. The Act says that the Virginia's constitution shall "*never* be so amended or changed as to deprive any citizen . . . of the right to vote," except for convictions of common-law felonies. Act of Jan. 26, 1870, ch. 10, 16 Stat. 62, 63 (1870) (emphasis added). The Court's injunction then permanently prevents Virginia from denying or cancelling an individual's registration, except as permitted by the Act. Accordingly, until Congress amends or repeals the Act, the Commonwealth cannot disenfranchise anyone contrary to the Act.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 19 August 2026
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge